Receipt # 0679823

ORIGINAL

FILED
APR 16 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE
UNITED STATES COURT OF FEDERAL CLAIMS

**BID PROTEST**

| | |
|---|---|
| **GREAT LAKES DREDGE & DOCK CO. LLC**<br>**2122 York Road**<br>**Oak Brook, Illinois 60523**<br><br>**Plaintiff,**<br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Civil Action No.** 08-282 C |

**COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY AND PREMANENT INJUNCTIVE RELIEF**

For its Complaint in the above-captioned matter, plaintiff Great Lakes Dredge & Dock Company LLC ("GLDD") states as follows:

## NATURE OF ACTION

1. This is a pre-award bid protest challenging the actions of the United States Army Corps of Engineers ("Corps"). The Memphis District of the Corps issued Solicitation Number W912EQ-08-B-0001 ("Solicitation" or "IFB") on January 17, 2008. The IFB seeks offers to perform maintenance dredging at various harbors in the Mississippi River and to perform construction, or new work, dredging at Northwest Harbor, Tennessee. Bids are currently scheduled to be opened on April 18, 2008.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(b).

## PARTIES

3. Plaintiff GLDD is a Delaware limited liability company with its principal place of business in Oak Brook, Illinois. GLDD is one of the largest dredging contractors in the United States and has successfully performed dredging in the Mississippi River and harbors under numerous prior contracts with the Memphis District, most recently in 2006.

4. Defendant is the United States, acting through its agency the U.S. Army Corps of Engineers.

## FACTUAL ALLEGATIONS

5. The Memphis District has awarded an annual contract to perform dredging in the Mississippi River and in harbors along the river for many years. These contracts have been structured as a lease of a cutter suction dredge (also called a cutterhead hydraulic pipeline dredge), under which the Corps pays for use of the dredge at hourly rates based on an hourly price bid by prospective contractors.

6. During the last ten years (1998-2007), these Memphis District cutter suction dredge rental contracts have been awarded to two companies, GLDD and Weeks Marine, Inc. ("Weeks"), and the work has been performed by two dredges -- GLDD's dredge Pontchartrain and Week's dredge Venture.

7. The original 2008 IFB, like the previous contracts, was structured as a rental contract and sought rental rates for both the maintenance dredging and construction dredging portions of the work. Unlike prior contracts, however, the original IFB's bid schedule

was broken down into two Lots. Lot 1 sought prices for a 27-inch pump discharge dredge, such as the Pontchartrain, while Lot 2 sought prices for a 29-inch pump discharge dredge, which GLDD believes will be used by the Venture. The contracts for each of the previous ten years were awarded based on a single bid schedule relating to a 27-inch pump discharge dredge. The IFB provided no explanation for this change.

8. Under the original 2008 IFB, bidders were invited to provide hourly prices for performing both the maintenance dredging and construction dredging portions of the work. For evaluation purposes in determining the low bidder, the bidder's hourly prices would be multiplied by an estimated number of dredging hours provided on the bidding schedule. The estimated number of hours was different for Lots 1 and 2 as follows:

| | Maintenance Dredging | Construction Dredging |
|---|---|---|
| Lot 1 (27-inch dredge) | 2,076.5 | 2,076.5 |
| Lot 2 (29-inch dredge) | 1,800 | 1,800 |

Thus, the original IFB assumed that it would take a 27-inch pump discharge dredge 15.4% hours more than a 29-inch pump discharge dredge to perform the same work.

9. The original IFB further assumed that a 29-inch pump discharge dredge would have a 15.4% production advantage over a 27-inch pump discharge dredge. Paragraph 2.1.1 of Section 02482 of the original IFB stated that a 29-inch pump discharge dredge had an estimated minimum production of 1,321 cubic yards ("cy") per pumping hour, while a 27-inch pump discharge dredge had an estimated minimum production of 1,145 cy per pumping hour. Paragraph 2.1.1 also stated that these production estimates would be used to evaluate bids. Prior Memphis District cutter suction dredge rental solicitations had used a single estimated minimum production of 1,100 cy per pumping hour for all dredges.

10. The original IFB did not provide any basis or justification for these estimated minimum production rates. However, the ratio of these estimated minimum production rates (and the Lot 1 and Lot 2 estimated hours) are the same as the ratio of the pump discharge area of two dredges:

| Dredge | Pump Discharge Area (Diameter Squared) | IFB Est. Production (cy/hour) | IFB Estimated Hours (Maintenance and New Work) |
|---|---|---|---|
| Venture (assumed 29-inch) | 841 sq. in. | 1,321 | 1,800 |
| Pontchartrain (27-inch) | 729 sq. in. | 1,145 | 2,076.5 |
| Ratio | 1.1536 | 1.1537 | 1.1536 |

The Corps, therefore, assigned a 15.4% production advantage to the Venture based solely on a mechanical comparison of the pump discharge areas of the Venture and the Pontchartrain.

11. Paragraph 2.1.1 of Section 02482 of the original IFB also stated that "[d]uring all times the dredge will be required to meet the specified minimum output" set forth in the estimated minimum production rates. Paragraph 2.1.1 further stated that failure to maintain this production rate will result in a reduction in payment in accordance with paragraph 00800 - SP 6.c unless the Contracting Officer determined that circumstances beyond the control and without the fault or negligence of the contractor caused the reduction in output. Section 00800 paragraph 6.c provided that the rate of payment would be "reduced in the ratio that the output falls short of that specified in" Section 02482.

12. These price adjustment provisions were modified by Amendment 0001 of the IFB (dated January 28, 2008). Paragraph 2.1.1 was modified to provide for a reduction in payments in accordance with a new paragraph 00800-SP. 18g, which stated that if dredging output fell short of that specified in Section 02482 "the total dredging hours for that location will

be reduced by the percentage that the output falls short of that specified. Payment for dredging operations, which fail to meet the specified minimum output, will be made by multiplying this reduced number of hours by the contract unit price per hour." Prior Memphis District rental contracts, including the contracts performed by Weeks and the Venture in 2004 and 2007, contained similar provisions relating to reduction of payment for failure to achieve the estimated minimum production rates.

13. The IFB's payment provision (Section 00800 paragraph SP 18) provides that the contractor will be paid for 100% of its effective hours, which the IFB defines as actual time the dredge is under operation (with the cutterhead moving material and material being passed through the pipeline) and time lost due to river traffic. The IFB provides that the contractor will be paid for 70% of its non effective hours (at the contract hourly price), with non effective hours defined to include time spent moving from one assignment to another (but not in excess of eight hours), time lost to move anchors and add pipe due to the progress of the work, time lost due to the failure of retaining dikes and spill boxes or fall outs through no fault of the contractor, and time lost due to certain other identified delays and repairs.

14. In three pre-bid letters dated February 8, February 14 and February 25, 2008, GLDD challenged the original IFB's use of a different bid schedule, different estimated dredging hours, and different minimum estimated productions for the Venture and the 27-inch pump discharge dredge (Pontchartrain).

15. In these letters, GLDD provided the Memphis District with actual production data for the last ten years of performance under the Memphis District's Mississippi River and harbors cutter suction dredge rental contracts. This data was set forth in the table attached as Exhibit 1 to this Complaint, which was attached to the February 25, 2008 letter.

16. As Exhibit 1 demonstrates, GLDD and the Pontchartrain have performed the rental contract during eight of the last ten years, while Weeks and the Venture performed the rental contract in 2004 and 2007. The Venture averaged 1,062 cy per effective hour in 2004. This figure excludes lost time due to river traffic because, even though the predecessor contracts defined traffic lost time as an effective hour, these hours are not pumping hours. In 2007, Weeks reported two dredging quantities for the Venture, a required, or dredging template, quantity and a gross quantity (including overdredging). The Venture's average cy gross per effective hour (excluding traffic) production in 2007 was 1,207. Its cy required production in 2007 was 1,044 cy per effective hour (excluding traffic) In neither year did the Venture come even close to the 1,321 cy per pumping hour estimated minimum production rate set forth in the original 2008 IFB for a 29-inch pump discharge dredge. On average, in 2004 and 2007, Weeks at best achieved a production rate of 1,116 cy per pumping hour, which is only 84.5% (1,116 ÷ 1,321) of the 2008 IFB estimated minimum production rate for a 29-inch pump discharge dredge.

17. As shown in Exhibit 1, during the eight years that GLDD performed the predecessor Memphis District rental contracts, the Pontchartrain achieved an average production rate of 1,111 cy per effective hour (excluding traffic) compared to a minimum estimated production rate of 1,100 per pumping hour. During this decade of work, the production rates actually achieved per pumping hour by the Pontchartrain and Venture while performing the predecessor contracts were virtually identical.

18. GLDD's February 2008 letters also pointed out that the Venture had considerably more non effective time during the years in which it performed the predecessor contracts than did GLDD. As shown in Exhibit 1, the Pontchartrain's non effective hours averaged approximately 8.5% of effective hours (1,729 non effective hours compared to 20,411

effective hours), while the Venture's non effective hours averaged almost 25% of its effective hours (621 hours ÷ 2,552 hours). On the predecessor Memphis District rental contracts, the Corps paid GLDD for a significantly smaller portion of non effective hours than it paid Weeks.

19. From 1998-2007, the Corps paid for 80% of non effective time at the contract hourly rental rate. Thus, as shown in Exhibit 1, when non effective pay hours are taken into account on the ten predecessor Memphis District rental contracts, the Pontchartrain actually was more productive than the Venture and had an almost 12% production advantage. (1,025 cy per effective and non effective pay hour compared to the Venture's 916 cy per effective and non effective pay hour).

20. Based on this actual, historical data regarding the productive capacity of the Pontchartrain and the Venture performing work under predecessor Memphis District rental contracts, GLDD asserted in its February 2008 letters that the IFB's estimated hours and estimated minimum production rates were defective and that the IFB was defective because Lots 1 and 2 did not fairly reflect the proven production capability of the dredges. GLDD asserted that the IFB prevented GLDD from competing for the work on a fair and equal basis because the IFB required GLDD to multiply the Pontchartrain's hourly rental rate by significantly more hours than the Venture, even though the Pontchartrain's actual, historical production performance has equaled or exceeded the Venture's production performance on the predecessor rental contracts.

21. On February 29, 2008, after receipt of GLDD's letters, the Memphis District issued Amendment 0003 to the IFB. This amendment deleted the Lot 2 bid schedule (based on a 29-inch pump discharge dredge) and provided for all bidders to submit bids using the same bid schedule, same estimated hours and same estimated minimum production per pumping

hour. This was the same approach used on the preceding ten rental contracts. As a result of these changes to the IFB, GLDD did not file a bid protest.

22. On March 4, 2008, however, Weeks filed a 2-page agency protest. Weeks asserted that the Venture is a 29-inch cutter suction dredge and stated that "[o]bviously, a larger dredge will be more productive than a smaller dredge and the bid schedule for the large dredge should include less hours than the smaller dredge." Weeks asked the Corps to reconsider its decision to eliminate the multiple equipment bidding schedule approach.

23. On April 7, 2008, the Corps issued Amendment 0005 to the IFB. This amendment changed the construction dredging portion of the IFB from a rental basis to a payment per cubic yard dredged basis. GLDD does not object to this change in this protest. However, Amendment 0005 reverted back to the approach taken in the original IFB for the maintenance dredging portion of the project. Amendment 0005 added the Lot 2 (29-inch pump discharge) bid schedule back into the IFB for the maintenance portion of the work and once again provides the Venture with a 15.4% advantage over the Pontchartrain in estimated hours (2,076.5 for the Pontchartrain in estimated hours versus 1,800 for the Venture) and minimum estimated production (1,321 cy per hour for the Venture versus 1,145 cy per hour for the Pontchartrain).

## FIRST CLAIM FOR RELIEF

24. GLDD repeats and realleges paragraphs 1-23 in its Complaint as if fully set forth herein.

25. The estimated minimum production rates and estimated hours used in the IFB for the maintenance dredging portion of the work for a 29-inch pump discharge dredge are defective. These estimates are not based on the best information available, which is the actual

production achieved on the predecessor Memphis District rental contracts. These estimates do not accurately reflect the agency's actual needs.

26. The estimated minimum production rates and estimated hours used in the IFB for the maintenance dredging portion of the work for the 29-inch pump discharge dredge deprive GLDD of the opportunity to compete for this work on a fair and equal basis and give Weeks an unfair competitive advantage.

27. The Memphis District's use of these estimates in the IFB is a clear and prejudicial violation of applicable procurement laws and regulations, including the requirement of 10 U.S.C. § 2304(a) (the Competition in Contracting Act) to provide for full and open competition. The Memphis District's use of these estimates lacks a rational basis, is arbitrary and capricious and an abuse of discretion, and is otherwise not in accordance with law, including the Administrative Procedure Act, 5 U.S.C. § 706.

28. GLDD is likely to prevail on the merits of this case and will suffer prejudice and irreparable harm if an injunction is not issued. The issuance of the injunctive relief requested by GLDD will not substantially harm the government or third parties and will serve the public interest.

**SECOND CLAIM FOR RELIEF**

29. GLDD repeats and realleges paragraphs 1-23 in its Complaint as if fully set forth herein.

30. The IFB's bid schedules and price evaluation scheme for the maintenance dredging portion of the work are irrational and defective because they do not consider non effective dredging, which is a significant portion of the actual work required and paid for under the IFB.

31. The IFB's bid schedules and price evaluation scheme for the maintenance dredging portion of the work are irrational and defective because they do not assure that award of a contract to the low evaluated bidder will result in the lowest cost to the government of the actual work performed.

32. The IFB's bid schedules and price evaluation scheme for the maintenance dredging portion of the work deprive GLDD of the opportunity to compete for the work on a fair and equal basis and give Weeks an unfair competitive advantage.

33. The Memphis District's use of the IFB's bid schedules and price evaluation scheme for the maintenance dredging portion of the work is a clear and prejudicial violation of applicable procurement laws and regulations, including the requirement of 10 U.S.C. § 2304(a) (the Competition in Contracting Act) to provide for full and open competition. The Memphis District's use of these bid schedules and price evaluation scheme lacks a rational basis, is arbitrary and capricious and an abuse of discretion, and is otherwise not in accordance with law, including the Administrative Procedure Act, 5 U.S.C. § 706.

34. GLDD is likely to prevail on the merits of this case and will suffer prejudice and irreparable harm if an injunction is not issued. The issuance of the injunctive relief requested by GLDD will not substantially harm the government or third parties and will serve the public interest.

## REQUEST FOR RELIEF

WHEREFORE, GLDD respectfully requests that the Court grant judgment in its favor and order the following relief:

1. A Temporary Restraining Order that prevents the Defendant from receiving bids under the IFB and proceeding with the IFB until GLDD's preliminary injunction motion can be heard;

2. A preliminary injunction that prevents the Defendant from receiving bids and proceeding with the IFB until a final ruling on the merits by the Court;

3. A permanent injunction that prevents Defendant from soliciting bids or awarding a contract for the maintenance dredging portion of the work under the IFB using a higher number of estimated hours or lower estimated minimum production rate for the Pontchartrain compared to the Venture and that prevents Defendant from using a bid schedule and price evaluation scheme that fails to consider significant portions of the work and that does not assure that award to the low bidder will result in the lowest cost to the government for the actual work performed;

4. An award to GLDD of its attorney's fees and costs in pursuing this action; and

5. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902
Email: dsauls@steptoe.com

**Attorney of Record for Great Lakes Dredge & Dock Company LLC**

Dated: April 16, 2008

# EXHIBIT 1

**Table 1.Memphis District Mississippi River Rental**
**Actual Achieved Production History**
**1998 to 2007**

| IFB No. | Year | Dredge | Dredged Quantity (CY) | 100% Pay Hours Effective | 100% Pay Hours Traffic | 100% Pay Hours Total | 80% Pay Hours | Total Pay Hours | Production Per Eff Hr (cy / eff hr) | Production Per Total Pay Hr (cy / pay hour) | Production Per Total Pay Hr (excluding traffic) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| W912EQ-07-B-0010 | 2007 | Venture | 1,120,599 | 928 | 23 | 951 | 358 | 1,238 | 1,207 | 905 | 922 |
| W912EQI-06-B-0009 | 2006 | Ponchartrain | 1,249,686 | 1,229 | 37 | 1,266 | 135 | 1,373 | 1,017 | 910 | 935 |
| W912EQ-05-B-0014 | 2005 | Ponchartrain | 1,800,141 | 1,690 | 35 | 1,725 | 182 | 1,871 | 1,065 | 962 | 980 |
| W912EQ-04-B-0019 | 2004 | Venture | 1,673,273 | 1,575 | 26 | 1,601 | 262 | 1,811 | 1,062 | 924 | 938 |
| DACW66-03-B-0005 | 2003 | Ponchartrain | 3,524,728 | 3,058 | 44 | 3,102 | 175 | 3,241 | 1,153 | 1,087 | 1,102 |
| DACW66-02-B-0014 | 2002 | Ponchartrain | 3,061,639 | 2,609 | 25 | 2,634 | 229 | 2,817 | 1,174 | 1,087 | 1,097 |
| DACW66-01-B-0005 | 2001 | Ponchartrain | 4,083,426 | 3,591 | 27 | 3,618 | 298 | 3,856 | 1,137 | 1,059 | 1,066 |
| DACW66-00-B-0017 | 2000 | Ponchartrain | 3,449,720 | 3,351 | 53 | 3,405 | 357 | 3,690 | 1,029 | 935 | 948 |
| DACW66-99-B-0006 | 1999 | Ponchartrain | 3,565,291 | 3,186 | 69 | 3,255 | 255 | 3,460 | 1,119 | 1,031 | 1,051 |
| DACW66-98-B-0014 | 1998 | Ponchartrain | 1,600,802 | 1,395 | 13 | 1,407 | 98 | 1,485 | 1,148 | 1,078 | 1,087 |

**"Ponchartrain" Actual Production Summary**
**1998 to 2007**

| IFB No. | Year | Dredge | Dredged Quantity (CY) | 100% Pay Hours Effective | 100% Pay Hours Traffic | 100% Pay Hours Total | 80% Pay Hours | Total Pay Hours | Production Per Eff Hr (cy / eff hr) | Production Per Total Pay Hr (cy / pay hour) | Production Per Total Pay Hr (excluding traffic) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ALL | ALL | Ponchartrain | 22,335,433 | 20,108 | 303 | 20,411 | 1,729 | 21,795 | 1,111 | 1,025 | 1,039 |

**"Venture" Actual Production Summary**
**1998 to 2007**

| IFB No. | Year | Dredge | Dredged Quantity (CY) | 100% Pay Hours Effective | 100% Pay Hours Traffic | 100% Pay Hours Total | 80% Pay Hours | Total Pay Hours | Production Per Eff Hr (cy / eff hr) | Production Per Total Pay Hr (cy / pay hour) | Production Per Total Pay Hr (excluding traffic) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ALL | ALL | Venture | 2,793,872 | 2,503 | 49 | 2,552 | 621 | 3,049 | 1,116 | 916 | 931 |