Please see attached Pre-Bid Letter No. 4.

Sincerely,

Andrew M. Funke
Cost Estimator

Great Lakes Dredge and Dock Company LLC
2122 York Road
Oak Brook, Illinois 60523-1981

Office: (630) 574-2946
Mobile: (630) 212-3919
Fax: (630) 574-2909
E-Mail: amfunke@gldd.com <mailto:amfunke@gldd.com>



US Army Corps of Engineers Memphis District
U.S. ARMY ENGINEER DISTRICT CORPS OF ENGINEERS MEMPHIS, TENNESSEE
MISSISSIPPI RIVER
CHANNEL IMPROVEMENT
NORTHWEST TENNESSEE REGIONAL HARBOR
SURVEYS - DISPOSAL AREA A
DRAWING
5 OF 25
PHOTO DATE: AUGUST 2005
topodata pdf attachment to email from Waller dated Feb 15 08
MISSISSIPPI RIVER
FLOW
900
899
EXISTING BELOW ISLAND NO.9 DIKE
EXISTING LEVEE DO NOT DISTURB
EMBANKMENT LEVEE A TO BE CONSTRUCTED, SEEDED, AND COVERED WITH EROSION CONTROL BLANKET (SEE SHEET 6)
CHECK DAM TO BE CONSTRUCTED SEE DETAIL B - B
CHECK DAM TO BE CONSTRUCTED
DISPOSAL AREA A
TENNESSEE
LAKE COUNTY
HIGHWAY 22
EMBANKMENT LEVEE B TO BE CONSTRUCTED (SEE SHEET 8)
DISPOSAL AREA B
DAY MARKER DO NOT DISTURB
RAMP TO BE CONSTRUCTED (SEE SHEET 15 FOR TYPICAL)
OUTFALL DITCH A RIPRAP PAVING (SEE SHEET 7)
GRAVEL SURFACING TO BE CONSTRUCTED (SEE SHEET 15)
OUTFALL STRUCTURE A TO BE CONSTRUCTED (SEE SHEET 7)
DESTROYED WITNESS POST
N
RIPRAP PAVING TO BE PLACED 2'THICK 21'WIDE EXTENDING FROM 2'UPSTREAM TO 20'DS OF TOE (50'LENGTH)
CHECK DAMS TO BE CONSTRUCTED 4' HIGHER THAN EXISTING NATURAL GROUND WITH 12' CROWN AND 1:2 SIDE SLOPES
EMBANKMENT LEVEE TO BE CONSTRUCTED
EXISTING LEVEE
EXISTING N.G.
RIPRAP PAVING
EL 310'
EL 307.3'
EL 298'
20'
FLOW
CHECK DAM DETAIL B-B NTS
ENTIRE LEVEE SURFACE TO BE SEEDED AND COVERED WITH TEMP. EROSION CONTROL BLANKET
SEMI-COMPACTED FILL
50'BUFFER STRIP (NOT TO BE DISTURBED)
SILT FENCE
EXISTING MS RIVER BANK PROTECTED WITH RIPRAP PAVING
EXISTING LEVEE NOT TO BE DISTURBED
BORROW AREA FOR LEVEE CONST. TO BE REPLACED WITH DREDGE FILL
25' MIN.
3' MAX
TYPICAL SECTION EMBANKMENT LEVEE A-A NTS
NOTES:
1. MAXIMUM DEPTH OF BORROW EXCAVATION IS 3'.
2. MINIMUM WIDTH FROM PROPOSED EMBANKMENT LEVEE A TOE TO BORROW EXCAVATION IS 25'.
3. ALL VEGETATION OVER 1" IN DIAMETER IS TO BE CLEARED WITHIN THE LIMITS OF DISPOSAL AREA A.
4. EXISTING CONTOURS REFERENCED TO NGVD 29.


topodata pdf attachment to email from Waller dated Feb 15 08 10:56:24 AM
US Army Corps of Engineers
Memphis District
U.S. ARMY ENGINEER DISTRICT
CORPS OF ENGINEERS
MEMPHIS, TENNESSEE
MISSISSIPPI RIVER
CHANNEL IMPROVEMENT
NORTHWEST TENNESSEE REGIONAL HARBOR
CONSTRUCTION
RIVER MILE 900L
SURVEYS - DISPOSAL AREA B
DRAWING
10 OF 25
TYPICAL SECTION
UNDER HIGHWAY 22
EMBANKMENT LEVEE TO BE CONSTRUCTED
20'
EL.301.4'
1
3.5
~EL.296'
TN. STATE HWY 22
~EL.310'
EXISTING LEVEE
BERM
N.G.
ROADSIDE DITCH
ROADSIDE DITCH
B - B'
NTS
MISSISSIPPI RIVER
FLOW
N
RAMP TO BE CONSTRUCTED (1 ON 7 SLOPE)
STATE HIGHWAY 22
12' WIDE GRAVEL ACCESS ROAD TO BE CONSTRUCTED FOR OUTLET CONTROL STRUCTURE MAINTENANCE (SEE SHEET 15)
DISPOSAL AREA B
2-48" CMP CULVERTS TO BE PLACED UNDER ROAD
TYPE 'E' END PROTECTION
RIPRAP TO BE PLACED
OUTFALL DITCH B TO BE ENLARGED (SEE SHEET 13)
OUTFALL STRUCTURE B TO BE CONSTRUCTED (SEE SHEET 15)
SILT FENCE TO BE PLACED ALONG ENTIRE SOUTH SIDE OF OUTLET DITCH
PEA RIDGE ROAD
EMBANKMENT LEVEE B TO BE CONSTRUCTED, SEEDED, AND COVERED WITH ECB.
CHECK DAM TO BE CONSTRUCTED (SEE SHEET 5)
DISPOSAL AREA A
ENTIRE LEVEE SURFACE TO BE SEEDED AND COVERED WITH TEMP. EROSION CONTROL BLANKET
BORROW AREA FOR LEVEE CONSTRUCTION TO BE REPLACED WITH DREDGE FILL
EL.301.4
20'
3.5
25' MIN. DIST.
SEMI-COMPACTED FILL
SILT FENCE
NG (approx. el. 297)
3' max.
TYPICAL SECTION
EMBANKMENT LEVEE B
A - A'
NTS
NOTE:
MAXIMUM DEPTH OF EXCAVATION IS 3 FEET.
NOTE:
CONTOURS ARE REFERENCED TO NGVD 29.

| | |
|---|---|
| **From:** | Atkins, Christopher L MVM |
| **To:** | Sweeney, Priscilla G MVM; Todd, Jean F MVM; Norman, Wendell N MVM; Clayton, Carlos E MVM; |
| **CC:** | Channell, Stephen W MVM; Donlon, William E MVM; Funderburk, Rodger M MVM; |
| **Subject:** | FW: 2008 Dredging Contract Revision |
| **Date:** | Tuesday, February 19, 2008 6:20:10 PM |
| **Attachments:** | |

---

Priscilla/Jean/Carlos,

Is there anything we can do to get this thing ready in Wendell's absence, or should we wait until his return? If at all possible, I'd like to have everything set to go by the end of the week. The milestone for award is 01 April.

Regards,

Chris Atkins, P.E.

Operations PM

-----Original Message-----
From: Atkins, Christopher L MVM
Sent: Tuesday, February 19, 2008 6:06 PM
To: Norman, Wendell N MVM
Cc: Channell, Stephen W MVM
Subject: 2008 Dredging Contract Revision
Importance: High

Wendell,

We need to get together ASAP to make the necessary changes. Let's not let the grass grow under us on this. I want to make our April 1st milestone!

Regards,

Chris Atkins, P.E.

Operations PM

| | |
|---|---|
| **From:** | Atkins, Christopher L MVM |
| **To:** | Clayton, Carlos E MVM; Sweeney, Priscilla G MVM; Todd, Jean F MVM; Norman, Wendell N MVM; |
| **CC:** | Channell, Stephen W MVM; Donlon, William E MVM; Funderburk, Rodger M MVM; |
| **Subject:** | RE: 2008 Dredging Contract Revision |
| **Date:** | Wednesday, February 20, 2008 9:54:01 AM |
| **Attachments:** | |

---

Thanks Carl.

Regards,

Chris Atkins, P.E.

Operations PM

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Wednesday, February 20, 2008 6:12 AM
To: Atkins, Christopher L MVM; Sweeney, Priscilla G MVM; Todd, Jean F MVM; Norman, Wendell N MVM
Cc: Channell, Stephen W MVM; Donlon, William E MVM; Funderburk, Rodger M MVM
Subject: RE: 2008 Dredging Contract Revision

I would suggest waiting on Wendell. One more day is not a show stopper. There is still time to make the April 1st award.

Carl Clayton

-----Original Message-----
From: Atkins, Christopher L MVM
Sent: Tuesday, February 19, 2008 6:20 PM
To: Sweeney, Priscilla G MVM; Todd, Jean F MVM; Norman, Wendell N MVM; Clayton, Carlos E MVM

Cc: Channell, Stephen W MVM; Donlon, William E MVM; Funderburk, Rodger M MVM
Subject: FW: 2008 Dredging Contract Revision
Importance: High

Priscilla/Jean/Carlos,

Is there anything we can do to get this thing ready in Wendell's absence, or should we wait until his return? If at all possible, I'd like to have everything set to go by the end of the week. The milestone for award is 01 April.

Regards,

Chris Atkins, P.E.

Operations PM

-----Original Message-----
From: Atkins, Christopher L MVM
Sent: Tuesday, February 19, 2008 6:06 PM
To: Norman, Wendell N MVM
Cc: Channell, Stephen W MVM
Subject: 2008 Dredging Contract Revision
Importance: High

Wendell,

We need to get together ASAP to make the necessary changes. Let's not let the grass grow under us on this. I want to make our April 1st milestone!

Regards,

Chris Atkins, P.E.

Operations PM

| | |
|---|---|
| **From:** | Clayton, Carlos E MVM |
| **To:** | Atkins, Christopher L MVM; Sweeney, Priscilla G MVM; Todd, Jean F MVM; Norman, Wendell N MVM; |
| **CC:** | Channell, Stephen W MVM; Donlon, William E MVM; Funderburk, Rodger M MVM; |
| **Subject:** | RE: 2008 Dredging Contract Revision |
| **Date:** | Wednesday, February 20, 2008 6:11:00 AM |
| **Attachments:** | |

---

I would suggest waiting on Wendell. One more day is not a show stopper. There is still time to make the April 1st award.

Carl Clayton

-----Original Message-----
From: Atkins, Christopher L MVM
Sent: Tuesday, February 19, 2008 6:20 PM
To: Sweeney, Priscilla G MVM; Todd, Jean F MVM; Norman, Wendell N MVM; Clayton, Carlos E MVM
Cc: Channell, Stephen W MVM; Donlon, William E MVM; Funderburk, Rodger M MVM
Subject: FW: 2008 Dredging Contract Revision
Importance: High

Priscilla/Jean/Carlos,

Is there anything we can do to get this thing ready in Wendell's absence, or should we wait until his return? If at all possible, I'd like to have everything set to go by the end of the week. The milestone for award is 01 April.

Regards,

Chris Atkins, P.E.

Operations PM

-----Original Message-----
From: Atkins, Christopher L MVM
Sent: Tuesday, February 19, 2008 6:06 PM
To: Norman, Wendell N MVM
Cc: Channell, Stephen W MVM
Subject: 2008 Dredging Contract Revision
Importance: High

Wendell,

We need to get together ASAP to make the necessary changes. Let's not let the grass grow under us on this. I want to make our April 1st milestone!

Regards,

Chris Atkins, P.E.

Operations PM

| | |
|---|---|
| **From:** | KDJohnson@gldd.com |
| **To:** | Norman, Wendell N MVM; Channell, Stephen W MVM; Clayton, Carlos E MVM; |
| **CC:** | JFKaras@gldd.com; SRAuernhamer@gldd.com; AMFunke@gldd.com; DSauls@steptoe.com; RLGuichet@gldd.com; |
| **Subject:** | W912EQ-08-B-0001 Pre Bid Letter No. 5 |
| **Date:** | Monday, February 25, 2008 10:01:24 AM |
| **Attachments:** | W912EQ-08-B-0001 - Pre Bid Letter No 5.pdf |

---

Please fine our Pre-bid letter no. 5 attached.

Sincerely,

Great Lakes Dredge & Dock Company, LLC

Kyle Johnson

Vice President / Chief Contract Manager

tel (630) 574 3465

fax (630) 574 2909

kdjohnson@gldd.com <mailto:kdjohnson@gldd.com>

W912EQ-08-B-0001- Pre Bid Letter No. 5 pdf attachment to email from KDJohnson@gldd.com dated Feb 25 08 10:10:24 AM
Subsequently REDACTED by Memphis District Corps per GLDD request

**Great Lakes Dredge & Dock Company, LLC**
2122 York Road
Oak Brook, Illinois 60523
630 574 3000
630 574 2909 (fax)

February 25, 2008

U.S. Army Engineer District, Memphis
167 North Main Street B202
Memphis, TN 38103-1894

Pre-Bid Letter No. 5

Attn: Mr. Wendell Norman, wendell.n.norman@usace.army.mil

Re: Mississippi River, Harbors and New Construction of Northwest Tennessee Harbor
Solicitation No. W912EQ-08-B-0001

Dear Mr. Norman:

We offer the following further to our previous correspondence regarding the defective specifications for this solicitation.

As described in our Pre-Bid letter No. 2, the IFB has two Lots for bidders to bid upon. Lot 1 is for a 27-inch dredge and Lot 2 is for a 29-inch dredge. Bidders may bid for either Lot. Each Lot provides estimated rental hours for the proposed dredge. The 27-inch dredge is assigned an estimated total duration for bid (including options) of 4,153 hours. The 29-inch dredge is assigned an estimated total duration for bid (including options) of only 3,600 hours. Bidders are to multiply the estimated hours provided in the respective Lot for their proposed dredge times the bidders' hourly rental prices to determine the bid price for dredging.

The only two dredges that have bid and performed this project over the past ten years are the dredge "Ponchartrain" and the dredge "Venture". The "Ponchartrain" is a 27-inch dredge and would thus be bid for Lot 1. It is our understanding that the District expects that the dredge "Venture" would be bid for Lot 2 as a 29-inch or larger dredge.

As demonstrated in detail below, the estimated hours in Lot 2 for the "Venture" are far too low and should in fact be greater than those hours estimated in Lot 1 for the "Ponchartrain" because the actual demonstrated and achieved production per pay hour on this project over the past decade for the "Ponchartrain" is greater than that actually achieved by the "Venture" over the same period. The IFB specifications are thus defective because the relative estimated hours for the Lots do not fairly reflect the relative production capabilities of the dredges designated for each Lot.

**I. <u>Of the only two dredges that have bid and performed this project over the past ten years, the dredge "Ponchartrain" is historically more productive than the dredge "Venture" and thus cannot be provided a less advantageous bid schedule.</u>**

As detailed in our Pre-Bid Letter No. 2, ***the actual achieved productions per effective hour for the two dredges that have historically bid and performed this project over each of the past ten years, the dredge "Ponchartrain" and the dredge "Venture", <u>are essentially identical</u>***. As shown in Table 1 attached[1], from 1998 through 2007, the "Ponchartrain" performed the project eight times and produced 22,335,433 cubic yards over 20,108 effective 100% pay hours (excluding traffic hours) for an average production of 1,111 cubic yards per effective hour. In the

[1] Table 1 is tabulated from both Government and Great Lakes' data.

W912EQ-08-B-0001- Pre Bid Letter No. 5 pdf attachment to email from KDJohnson@gldd.com dated Feb 25,08 10:10:24 AM
Subsequently REDACTED by Memphis District Corps per GLDD request

same period, the "Venture" performed the project two times and produced 2,793,872 cubic yards over 2,503 effective hours for an average production of 1,116 cubic yards per effective hour. Thus, the "Venture" has not been more productive, will achieve no shorter duration, and thus cannot be afforded a more advantageous bid schedule with fewer hours.

Further, when taking into account 80% pay time (70% pay time under the current solicitation), the "Ponchartrain" has actually achieved 12% greater production in cubic yards per total hours paid for effective and non-effective time. Again as shown in Table 1 attached, from 1998 through 2007, the "Ponchartrain" performed the project eight times and produced 22,335,433 cubic yards over 21,795 total pay hours for an average production of 1,025 cubic yards per pay hour. In the same period, the Venture performed the project two times and produced 2,793,872 cubic yards over 3,049 effective hours for an average production of 916 cubic yards per effective hour. ***It is clear that over the past ten years of performance on this project, the "Ponchartrain" is actually 12% more productive than the "Venture" per total hour paid by the Government.*** Even excluding traffic time, the "Ponchartrain" still remains 12% more productive (1039 cy / pay hour vs. 931 cy / pay hr) than the "Venture".

Thus, the dredge "Ponchartrain" is more productive, will achieve a shorter duration on the work to be performed, and should be afforded a more advantageous bid schedule with fewer hours than the dredge "Venture".

The lower estimated hours for the 29-inch dredge in Lot 2 under the solicitation render the IFB defective because it provides the "Venture" a more than 13% production and price advantage when in fact, of the only two dredges which have bid and performed this project over the past ten years, the 27-inch "Ponchartrain" is proven to be more productive than the "Venture" on this project. Even though actual, historical performance demonstrates that the "Ponchartrain" can complete the same amount of work in less time and for less pay hours, the defective IFB requires that we multiply the "Ponchartrain's" hourly dredging rates by more hours than those for the "Venture". This fundamental flaw in the IFB violates a bedrock principle of procurement law because it prevents bidders from competing for the work on a fair and equal basis.

**II. The "Venture" cannot achieve the required minimum production per effective hour and the Corps' expectations of 29-inch production are not supported by the actual performance history on this project.**

The solicitation also requires minimum production rates of 1,145 cy / effective hour and 1,321 cy per effective for 27-inch and 29-inch dredges respectively. As can be seen from Table 1 , the "Venture" has not even come close to achieving this mininum required production of 1,321 cy / eff hr over the two periods she has performed this project. In fact, the "Venture" has only achieved 84% of the required production over the two projects she has performed. Thus, the Corps expectations of 29-inch dredge production are not supported by the actual performance history of the dredge on this project.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

It is clear that the "Ponchartrain" has a demonstrated and proven 12% production advantage per total pay hours over the "Venture" on this project. The Lot 2 estimated hours thus should be raised to 12% more than the Lot 1 estimated hours in order to provide a fair and equal basis for bidding. Nonetheless, Great Lakes remains willing to accept that the Corps amend the solicitation to a single bid schedule with single bid hours for a minimum 27-inch dredge as has been the format for this IFB over the past decade.

Thank you for your continued consideration. We remain available to discuss this issue with you further. Please feel free to contact me directly at (630) 574-3465.

Sincerely,
**GREAT LAKES DREDGE & DOCK COMPANY, LLC**

Kyle D. Johnson
Vice President

cc: Mr. Stephen W. Channell, Stephen.w.channell@usace.army.mil
Mr. Carl E. Clayton, Carlos.e.clayton@usace.army.mil

W912EQ-08-B-0001- Pre Bid Letter No. 5 pdf attachment to email from KDJohnson@gldd.com dated Feb 25 08 10:10:24 AM
Subsequently REDACTED by Memphis District Corps per GLDD request

**Table 1.Memphis District Mississippi River Rental**
**Actual Achieved Production History**
**1998 to 2007**

| IFB No. | Year | Dredge | Dredged Quantity (CY) | 100% Pay Hours | | | 80% Pay Hours | Total Pay Hours | Production Per Eff Hr (cy / eff hr) | Production Per Total Pay Hr (cy / pay hour) | Production Per Total Pay Hr (excluding traffic) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Effective | Traffic | Total | | | | | |
| W912EQ-07-B-0010 | 2007 | Venture | 1,120,599 | 928 | 23 | 951 | 358 | 1,238 | 1,207 | 905 | 922 |
| W912EQI-06-B-0009 | 2006 | Ponchartrain | 1,249,686 | 1,229 | 37 | 1,266 | 135 | 1,373 | 1,017 | 910 | 935 |
| W912EQ-05-B-0014 | 2005 | Ponchartrain | 1,800,141 | 1,690 | 35 | 1,725 | 182 | 1,871 | 1,065 | 962 | 980 |
| W912EQ-04-B-0019 | 2004 | Venture | 1,673,273 | 1,575 | 26 | 1,601 | 262 | 1,811 | 1,062 | 924 | 938 |
| DACW66-03-B-0005 | 2003 | Ponchartrain | 3,524,728 | 3,058 | 44 | 3,102 | 175 | 3,241 | 1,153 | 1,087 | 1,102 |
| DACW66-02-B-0014 | 2002 | Ponchartrain | 3,061,639 | 2,609 | 25 | 2,634 | 229 | 2,817 | 1,174 | 1,087 | 1,097 |
| DACW66-01-B-0005 | 2001 | Ponchartrain | 4,083,426 | 3,591 | 27 | 3,618 | 298 | 3,856 | 1,137 | 1,059 | 1,066 |
| DACW66-00-B-0017 | 2000 | Ponchartrain | 3,449,720 | 3,351 | 53 | 3,405 | 357 | 3,690 | 1,029 | 935 | 948 |
| DACW66-99-B-0006 | 1999 | Ponchartrain | 3,565,291 | 3,186 | 69 | 3,255 | 255 | 3,460 | 1,119 | 1,031 | 1,051 |
| DACW66-98-B-0014 | 1998 | Ponchartrain | 1,600,802 | 1,395 | 13 | 1,407 | 98 | 1,485 | 1,148 | 1,078 | 1,087 |

**"Ponchartrain" Actual Production Summary**
**1998 to 2007**

| IFB No. | Year | Dredge | Dredged Quantity (CY) | 100% Pay Hours | | | 80% Pay Hours | Total Pay Hours | Production Per Eff Hr (cy / eff hr) | Production Per Total Pay Hr (cy / pay hour) | Production Per Total Pay Hr (excluding traffic) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Effective | Traffic | Total | | | | | |
| ALL | ALL | Ponchartrain | 22,335,433 | 20,108 | 303 | 20,411 | 1,729 | 21,795 | 1,111 | 1,025 | 1,039 |

**"Venture" Actual Production Summary**
**1998 to 2007**

| IFB No. | Year | Dredge | Dredged Quantity (CY) | 100% Pay Hours | | | 80% Pay Hours | Total Pay Hours | Production Per Eff Hr (cy / eff hr) | Production Per Total Pay Hr (cy / pay hour) | Production Per Total Pay Hr (excluding traffic) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Effective | Traffic | Total | | | | | |
| ALL | ALL | Venture | 2,793,872 | 2,503 | 49 | 2,552 | 621 | 3,049 | 1,116 | 916 | 931 |

**Norman, Wendell N MVM**

---

**From:** Mayer, Donald V MVM
**Sent:** Monday, February 25, 2008 3:58 PM
**To:** Norman, Wendell N MVM
**Cc:** Wilbanks, Curtis D MVM; Sullivan, Richard S MVM; Channell, Stephen W MVM
**Subject:** electronic copy of memo

**Attachments:** memo.doc

memo.doc (37 KB)

Attached is an electronic file for the memo we faxed this morning. Let us know if any revisions are required. We will route the hard copy after you give the OK. Wade is already working on the revised bid schedule and specifications. Thanks, Don

CEMVM-OD-PN 25 February 2008

MEMORANDUM THRU

CEMVM-OD-P

CEMVM-OD

FOR CEMVM-CT-C

SUBJECT: Revision of Specifications for IFB No. W912EQ-08-B-0001

1. I recommend that the subject IFB be revised to eliminate Lot 2 and require all prospective bidders (27-inch I.D. discharge dredges and larger) to bid on Lot 1.

2. The justification for this revision follows:

a. It was previously determined, through calculations and review of past performance, that a 27-inch dredge is the minimum required to meet the performance and schedule requirements of the work to be performed. It was also determined that 29-inch and larger dredges should be able to meet the performance requirements, but that dredges larger than 29-inch may have physical size constraints that would prevent them from performing the work. These determinations have been reviewed are still considered to be correct.

b. Under normal conditions, a 29-inch dredge will have higher production rates than a 27-inch dredge, but there are conditions present in this work which are expected to mitigate the production advantage of a larger dredge. During maintenance dredging of the harbors the limiting factor will be the depth of material to be removed from the cut. If there is a limited amount of material in the cut (less than full bank), the limiting factor becomes the speed with which the dredge can swing through the cut, not pump capacity. The swing rates for 27-inch and 29-inch dredges are practically equal. For the past several years, 27-inch and 29-inch dredges have competitively bid on an equal amount of hours for this work, based on the estimated production of a 27-inch dredge.

c. The constraints for the new construction dredging involve the narrow width of the cut and the dredged material disposal areas. The new harbor has an extremely narrow 130' bottom width (the other harbors range from 225' to 300'). Since cutterhead dredges advance by walking, or swinging back and forth through the cut, 27-inch and 29-inch dredges will both have great difficulty advancing through the work. It is expected that the dredge will have to take smaller than normal steps and/or actually swing and cut wider than 130' in order to construct the authorized 130' wide harbor. The rate of advance and extra cutting will limit the production capability of the dredges. Finally, the discharge areas for this work will be newly constructed and untested. There is a greater possibility of breaching a newly constructed levee, and they will have to be watched closely. It may be necessary to slow down dredge production from time to time to reduce strain on the levee, or stop dredging and put the dredge on standby for short periods to let water levels in the discharge areas fall, or the contractor may have to stop dredging to move the discharge pipeline from one disposal area to the other. Under any of these conditions the 29-inch dredge will not have any production advantage.

d. Based on the above, it is reasonable to expect that we will be unable to utilize the additional production capabilities of a larger 29-inch dredge. Dredges larger than 27-inch should be considered, but the estimated production should be based on the quantity shown for a 27-inch dredge.

3. If the IFB is to be revised per this recommendation, I can provide the revised specifications and bidding schedule within three days of notification.

WADE CHANNELL
Navigation Section

| | |
|---|---|
| **From:** | Channell, Stephen W MVM |
| **To:** | Clayton, Carlos E MVM; |
| **CC:** | |
| **Subject:** | Revised tech sections 800,02482 and bid sheet |
| **Date:** | Tuesday, February 26, 2008 10:39:10 AM |
| **Attachments:** | 02482 contents.doc<br>00800 contents.doc<br>bid.doc<br>02482.doc<br>00800.doc |

---

Carl,
I revised the sections to include all corrections in the first amendment and the change we discussed on the phone.

Thanks,
Wade Channell

DIVISION 2 - SITE WORK

SECTION 02482

DREDGING

TABLE OF CONTENTS

PART 1 GENERAL
- 1.1 SCOPE OF DREDGING

PART 2 PRODUCTS
- 2.1 DREDGE
  - 2.1.1 Size of Dredge
  - 2.1.2 Spare Cutters and Impellers
- 2.2 ATTENDANT PLANT
  - 2.2.1 General
  - 2.2.2 Anchor Barge
  - 2.2.3 Barge Mounted Crane
  - 2.2.4 Fuel Barge
  - 2.2.5 Landing Barge
  - 2.2.6 Pipelines
  - 2.2.7 Spill Barge
  - 2.2.8 Tenders
  - 2.2.9 Survey/Crew Boat
  - 2.2.10 Dozers
  - 2.2.11 Excavator
  - 2.2.12 All Terrain Vehicle
- 2.3 TECHNICAL EQUIPMENT
  - 2.3.1 Production Recording Equipment
  - 2.3.2 Differential Global Positioning System (DGPS)
  - 2.3.3 Depth Sounding Devices
  - 2.3.4 Hydrographic Survey Equipment
  - 2.3.5 Gyro Compass

PART 3 EXECUTION (Not Applicable)

-End of Section Table of Contents-

SECTION 00800

SPECIAL CONTRACT REQUIREMENTS

TABLE OF CONTENTS


| Paragraph No. | Paragraph Title | |
|---|---|---|
| SP.1 | Delivery, Prosecution and Completion of Work | 00800-1 |
| SP.2 | Physical Data | 00800-1 |
| SP.3 | Inspection | 00800-2 |
| SP.4 | Misplaced Material | 00800-2 |
| SP.5 | Signal Lights | 00800-3 |
| SP.6 | Plant | 00800-3 |
| SP.7 | Crew | 00800-4 |
| SP.8 | Office Accommodations | 00800-4 |
| SP.9 | Meals for Inspectors | 00800-5 |
| SP.10 | Layout of Work | 00800-5 |
| SP.11 | General Safety Requirements | 00800-5 |
| SP.12 | Working in the Vicinity of Structures And Utility Crossings | 00800-6 |
| SP.13 | Outboard Boats | 00800-6 |
| SP.14 | Fuel Consumption Reporting Requirements | 00800-7 |
| SP.15 | Performance Evaluation of the Contractor | 00800-7 |
| SP.16 | Project and Daily Production Reports | 00800-7 |
| SP.17 | Continuity of Work | 00800-7 |
| SP.18 | Payments – Designated Billing Office | 00800-7 |
| SP.19 | Environmental Litigation | 00800-9 |
| SP.20 | Contracting Officer Signature | 00800-10 |

Bid Data Sheet for Lease of One Cutterhead, Hydraulic, Pipeline Dredge, Fully Operated, with Attendant Plant - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor.

U.S. Army Corps of Engineers, Memphis District
167 North Main Street, B202
Memphis TN 38103-1894

In compliance with the above Invitation for Bids, the undersigned hereby proposes to furnish, deliver, and operate the following plant in strict accordance with the attached specifications:

One Cutterhead Hydraulic Pipeline Dredge and Attendant Plant with the following characteristics:

DREDGE NAME or NUMBER:__________________________________

a. Hull length __________________________________(feet)
b. Draft ______________________________________(feet)
c. Length of dredge spuds ____________________________(feet)
d. Maximum and Minimum dredging depth __________________(feet)
e. Maximum effective dredge swing ______________________(feet)
f. Ladder length __________________________________(feet)
g. Cutter motor, brake horsepower _______________________(feet)

<u>DISCHARGE SIZE</u>:

a. Discharge line, inside diameter _________(inches)
b. Pump discharge, inside diameter ________(inches)

<u>MAIN ENGINE</u>: Continuous brake horsepower applied to pump impeller ____________(hp)

<u>BOOSTER PUMP IF NEEDED</u>:
Continuous brake horsepower applied to pump impeller ____________(hp)

<u>ATTENDANT PLANT</u>:

Derrick Barge - Type __________________________________
Dimensions - length, width, draft __________________________(feet)
Boom length ____________________________________(feet)

Crane Barge - Type ___________________________________
Dimensions - length, width, draft __________________________(feet)
Boom length ____________________________________(feet)

Spill Barge Dimensions - length, width, draft ____________________(feet)

Fuel Barge Dimensions - length, width, draft ____________________(feet)

bid.doc attachment to email from Channell dated Feb 26 08 10:39:10 AM

BULLDOZERS(2) DOZER NO.1 DOZER NO.2

| | DOZER NO.1 | DOZER NO.2 |
|---|---|---|
| Make | ____________ | ____________ |
| Model | ____________ | ____________ |

Bid Data Sheet for Lease of One Cutterhead, Hydraulic, Pipeline Dredge, Fully Operated, with Attendant Plant - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor.

EXCAVATOR(1) EXCAV NO.1

Make ____________

Model ____________

TENDERS (3)

Tender No.1

| | | PROPELLING ENGINES: | PORT | STBD |
|---|---|---|---|---|
| Name | ____________ | Make | ____________ | ____________ |
| Year Built | ____________ | Model | ____________ | ____________ |
| HULL: | | Serial No | ____________ | ____________ |
| Length (feet) | ____________ | Brake HP | ____________ | ____________ |
| Molded Beam (feet) | ____________ | | | |
| Draft (feet) | ____________ | | | |

Tender No.2

| | | PROPELLING ENGINES: | PORT | STBD |
|---|---|---|---|---|
| Name | ____________ | Make | ____________ | ____________ |
| Year Built | ____________ | Model | ____________ | ____________ |
| HULL: | | Serial No | ____________ | ____________ |
| Length (feet) | ____________ | Brake HP | ____________ | ____________ |
| Molded Beam (feet) | ____________ | | | |
| Draft (feet) | ____________ | | | |

Tender No.3

| | | PROPELLING ENGINES: | PORT | STBD |
|---|---|---|---|---|
| Name | ____________ | Make | ____________ | ____________ |
| Year Built | ____________ | Model | ____________ | ____________ |
| HULL: | | Serial No | ____________ | ____________ |
| Length (feet) | ____________ | Brake HP | ____________ | ____________ |
| Molded Beam (feet) | ____________ | | | |
| Draft (feet) | ____________ | | | |

SURVEY/CREW BOAT (1)

bid.doc attachment to email from Channell dated Feb 26 08 10:39:10 AM

Model ______________________________
Dimensions - length, width, draft ____________________ (feet)

| OUTBOARD MOTORS (3) | Motor 1 | Motor 2 | Motor 3 |
|---|---|---|---|
| Model | __________ | __________ | __________ |
| Horsepower | __________ | __________ | __________ |

Bid Data Sheet for Lease of One Cutterhead, Hydraulic, Pipeline Dredge, Fully Operated, with Attendant Plant - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor.

The plant was last operated at ____________________(location), in __________(month/year).

The plant may be inspected at ______________________________________(location).

The plant offered is owned by ___________________________________________.

bid.doc attachment to email from Channell dated Feb 26 08 10:39:10 AM

BIDDING SCHEDULE - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor Dredge
(To be attached to Bid Form)

| Item No. | Lot One Bid Description | Estimated Quantity | Unit | Unit Price | Estimated Amount |
|---|---|---|---|---|---|
| 0001 | New construction dredging of the Northwest Tenn. Harbor at mile LMR 899.0 Rental of one fully operated hydraulic dredge with min. 27-inch ID pump discharge, booster pump if needed and attendant dredge plant including pipeline | | | | |
| 0001AA | First 1,200 hours | 1,200 | Hours | $__________ | $________________ |
| 0001AB | All over 1,200 hours | 600 | Hours | $__________ | $________________ |
| 0002 | All other Dredging: Rental of one fully operated hydraulic dredge with min. 27-inch ID pump discharge and attendant dredge plant including pipeline | | | | |
| 0002AA | First 1,600 hours | 1,600 | Hours | $__________ | $________________ |
| 0002AB | All over 1,600 hours | 800 | Hours | $__________ | $________________ |
| 0003 | Upstream Towing of dredge and attendant plant | | | | |
| 0003AA | First 200 miles | 200 | Miles | $__________ | $________________ |
| 0003AB | All over 200 miles | 200 | Miles | $__________ | $________________ |
| 0004 | Downstream Towing of dredge and attendant plant | | | | |
| 0004AA | First 200 miles | 200 | Miles | $__________ | $________________ |
| 0004AB | All over 200 miles | 200 | Miles | $__________ | $________________ |
| 0005 | Mobilization and demobilization | 1 | Job | Lump Sum | $________________ |

TOTAL LOT ONE BID $________________________

BIDDING SCHEDULE - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor Dredge
(To be attached to Bid Form)

NOTE: Bidders shall furnish unit prices for all items listed on the schedule of bid items which require unit prices. If the bidder fails to insert a unit price in the appropriate blank for required items, but does furnish an extended total or an estimated amount for such items, the Government will deem his unit price to be the quotient obtained by dividing the extended estimated amount for that line item by the quantity. IF THE BIDDER OMITS BOTH THE UNIT PRICE AND THE EXTENDED ESTIMATED AMOUNT FOR ANY ITEM, HIS BID WILL BE DECLARED NONRESPONSIVE.

Award will be made as a whole to one bidder.

All quantities are estimated except where unit is given as "job" or "each."

If a bid or modification to a bid based on unit prices is submitted and provides for a lump sum adjustment to the total estimated cost, the application of the lump sum adjustment to each unit price, including lump sum units, in bid schedule must be stated, or, if it is not stated, the bidder agrees that the lump sum adjustment shall be applied on a pro rata basis to every unit price in the bid schedule.

SECTION 02482 - DREDGING

PART 1 GENERAL

1.1 SCOPE OF DREDGING

The work consists of new construction dredging of North West Tennessee Harbor at LMR mile 899 and the maintenance dredging of the following harbors: Hickman, KY; New Madrid, MO; Caruthersville, MO; Osceola, AR; Memphis, TN; Wolf River, TN; Helena, AR; Phillips County, AR; or at any point on the Mississippi River between Cape Girardeau MO (Mile 48 UMR) and Greenville, Mississippi (Mile 537 AHP). The details of North West Tennessee Harbor can be seen on attached drawings. Material dredged from the North West Tennessee Harbor shall be discharged in Disposal A or Disposal B shown on attached drawings. Material dredged from the maintenance harbors shall be discharged into the river or be retained in disposal areas by retaining dikes and box-type spillways as directed.

PART 2 PRODUCTS

2.1 DREDGE

2.1.1 Size of Dredge

The dredge shall be not less than 27 inch I.D. discharge. The dredge shall have a minimum manufacturer's horse-power rating for continuous operation as specified in the table below for each respective size of dredge. The yardages in the table are estimates and will be used as the basis to evaluate bids. The dredge inspectors will monitor the actual dredge output, as determined by before and after dredging surveys performed by the Government, against the applicable quantity shown. Failure to maintain that quantity will result in a reduction in payments in accordance with paragraph 00800-SP.18.g, unless the Contracting Officer determines that circumstances beyond the control and without the fault or negligence of the Contractor caused the reduction in output. Dredging performed at Northwest Tenn. Harbor (item 0001 ) will require approximately 8,000 ft of discharge line with 53 ft. of static head. The suction head, head from friction of pipe, elbows and any other factors that effect pump production is not included in the 53 ft. of static head. During all times the dredge will be required to meet the specified minimum output in the table below. Plans with sections showing all elevations, borings and right of ways are provided. It will be the responsibility of the contractor to provide extra horsepower such as booster pump, larger horsepower dredge etc., if needed. If any of the following is needed the price should be included in bid item 0001's hourly rate. The discharge size will be considered to be the minimum diameter of either the pump discharge or discharge line, which-ever is less. Dredges larger than 27 inches will be considered but, the estimate output will be based on quantity shown for 27 inch dredge.

| Size of Dredge Pump Discharge (I.D.) | Minimum Continuous BHP Connected to Dredge Pump | Estimated Minimum Output Per Pumping Hour Cubic Yards |
|---|---|---|
| 27 inches | 3,900 | 1145 |

The dredge ladder and spuds shall be of such construction and configuration that the dredge will dig material to a depth of 50 ft below the water surface without exceeding a ladder angle of 45 degrees from horizontal, and will make a 250-ft bottom width cut at a depth of 50 ft without exceeding a swing angle of 45 degrees to either side of the cut centerline. Spuds shall be capable of holding the dredge in place under the dredging conditions above in currents up to 12 ft per second. The dredge shall be capable of starting work and working efficiently at a depth of 12 ft.

The draft of the dredge shall not exceed 9 ft. The dredge shall be of such design as to work efficiently and permit passage of other vessels while working in a 250-ft wide channel. A check (flap) valve will be located on the dredge near the discharge side of the pump. A flow meter and density meter shall be located on the dredge on the discharge side of the pump for the purpose of determining velocity and cubic yardage. The suction pipe shall have a device that will degas the dredged material. The sound level in the lever room shall not exceed 90 dB.

2.1.2 Spare Cutters and Impellers

The Contractor shall have available for use at all times, a minimum of three interchangeable pump impellers in the sizes that can be accommodated by the pump to permit the dredge to work under varying conditions of length of discharge line and lift. The Contractor shall have available at all times a minimum of two serviceable, basket-type 6 or 7 blade cutterheads.

2.2 ATTENDANT PLANT

2.2.1 General

Attendant plant shall include the following as minimum requirements and shall be composed of such fuel barges, tenders, floating discharge pipe, shore pipe, spill barge, derrick or anchor barges, landing barge, water barges, and other attendant or auxiliary plant as may be required for operations under these specifications, whether or not items are specifically mentioned. The auxiliary and attendant plant shall be in good condition and of sufficient size and capacity to efficiently serve the dredge. The dredge tenders and other attendant plant requiring internal combustion engines for propulsion or auxiliary power requirements, except outboard motors, shall not be equipped with a type of engine requiring gasoline or other highly volatile fuels for operations. No division in pay will be made for attendant plant. It will be considered as part of the dredging plant and shall be kept in operating condition at all times regardless of pay status of the dredge.

2.2.2 Anchor Barge

One derrick barge with not less than 30-ft boom length for moving and shifting anchors.

2.2.3 Barge Mounted Crane

One (1) barge mounted crane having a lifting capacity of at least 50 tons, with not less than 80-ft boom length.

2.2.4 Fuel Barge

One (1) fuel barge capable of servicing the dredge for 7 days.

2.2.5 Landing Barge

One (1) shallow draft barge with sufficient walkway and handrails shall be required for use as a landing barge.

2.2.6 Pipelines

The work involved will require pipelines ranging from 600 ft to 15,000 ft in length. The following minimum pipeline equipment shall be furnished: 8,500 ft of pontoon discharge line of not less than 27 in ID (1,000 ft of the line shall be in lengths of not more than 50 ft), two (2) stiff pontoon elbows and two (2) swivels, equipped with winches or skidder barge with power winch and adequate fairleads or chocks; and 7,000 ft of shore pipe with two sets of valves including wye branches. 1,500 ft. of polyethylene pipe required to be used for bid item 0001. The pontoon line shall be equipped with satisfactory pontoons, winches, and anchors to operate the pontoon line in 12 ft per second current. The contractor may be required to submerge short lengths of the pontoon line in harbors to allow for passage of small vessels.

2.2.7 Spill Barge

One (1) shallow draft spill barge (2 ft. maximum draft) designed to discharge 75 ft. from waters edge, equipped with power winches to be available if needed.

02482.doc attachment to email from Channell dated Feb 26, 08 10:39:10 AM

2.2.8 Tenders

Two (2) tenders for 24 hours operation per day of such size and design that either can adequately serve the dredge and attendant plant under any conditions to be encountered. The tenders shall be not less than 500 intermittent shaft horsepower and shall work in as little as 5 ft of water. In addition to the two tenders required above, one (1) additional tender of not less than 1,000 intermittent shaft horsepower is required for 24 Hr. operation. Each of the tenders shall be of steel construction, twin screw, with conventional shallow draft river workboat design and equipped with depth finder with transducer installed in hull. The minimum crew for each tender shall consist of one operator and one deckhand per shift.

2.2.9 Survey/Crew Boat

One (1) workboat, similar or equal to a 21-ft SeaArk Marine Utility Series Little Giant Model, with front and rear door, shall be required for crew transport, layout work, sounding, general inspection, and quality control surveying. Workboat shall be equipped with the following: three outboard motors, not less than 100 horsepower each (one will be used as a spare); complete hydraulic steering system including wheel; cables, throttle controls, and electric starter for dual motors; and single-beam DGPS hydrographic surveying equipment.

2.2.10 Dozers

Two (2) wide track bulldozers, one D-5 and one D-6 Caterpillar or equivalent, shall be furnished for work in and around upland disposal areas.

2.2.11 Excavator

One (1) excavator with amphibious under carriage equivalent to a 325 Caterpillar. To be used on bid item 0001.

2.2.12 All Terrain Vehicle (ATV)

One (1) ATV with two passenger capacity.

2.3 TECHNICAL EQUIPMENT

2.3.1 Production Recording Equipment

The dredge shall be equipped with automated production recording equipment, to continually record slurry density, slurry velocity, pipeline pressure, pump vacuum, pump RPM, and engine RPM. Data may be recorded mechanically (ink charts) or electronically. Data shall be furnished to the Government upon request, and at completion of the contract.

2.3.2 Differential Global Positioning System (DGPS)

The contractor shall furnish, operate and maintain a complete Differential Global Positioning System (DGPS) to provide dredge positioning and alignment in the various dredging assignments of this contract. The system shall utilize DGPS equipment in conjunction with Hypack Surveying Software and the U.S. Coast Guard Radio Beacon DGPS Network, to provide real time positioning using UTM Zone 15 or 16 coordinates. The contractor will be provided a diskette containing a Hypack file of the dredging cut layout for each individual assignment containing stationing, baseline information, and coordinates. The complete positioning system shall provide at a minimum the following features: (1) Complete real time display of the dredge in relation to the dredging cut, centerline ranges, and current 100-ft stationing shall be displayed on a VGA monitor located in the lever room of the dredge, so that the inspector can determine the current and previous location of the dredge as it advances. (2) Data logging and recording to diskette of positioning information during the dredging assignment, to be turned in to the Corps inspector at the end of each assignment. (3) Printouts of screen data for any time interval, reflecting the advance of the dredge and the arc of the swing within the channel, shall be available upon request.

2.3.3 Depth Sounding Devices

The Contractor shall provide a depth-sounding device capable of obtaining continuous depth-sounding measurements in the area of the forward hull of the dredge. The depth shall be displayed in the lever room of the dredge.

2.3.4 Hydrographic Survey Equipment

The survey/crew boat shall be equipped with single-beam DGPS hydrographic survey equipment. Contractor must be able to print small-scale cross-sections but not full surveys (large scale plotter not required); printer may be located on survey boat or dredge.

2.3.5 Gyro Compass

As a back-up for the DGPS system, the dredge shall be equipped with a gyro compass of such precision that dredging can be conducted using compass bearings if necessary.

PART 3 EXECUTION (Not Used)

-- End of Section --

SECTION 00800

NON-REGULATED SPECIAL CONTRACT REQUIREMENTS

**SP.1 DELIVERY, PROSECUTION AND COMPLETION OF WORK**

a. The Contractor is required to commence work under this contract within **10** calendar days after receipt of Notice to Proceed, to prosecute the work diligently, and to complete all work not later than 31 December 2008. The contract work period is expected to run from April through December. At the option of the Government, this contract, with all its terms and provisions, may be extended for such period and as often as the Government may elect, to permit continuous use of said plant or equipment, not extending beyond 31 December 2008. After that date the contract may be extended only by mutual agreement of the Contractor and the Government, not extending beyond May 31, 2009.

b. The Contractor shall deliver the dredge and attendant plant ready for operation in the vicinity of McKellar Lake Harbor, Memphis, TN (Mile 725 AHP), or to any other work site as may be directed. If delivery is required to a point that requires further towing from the location of the dredge just prior to beginning work under this contract, the Contractor will be paid for the distance between the first work site and Mile 725 AHP at the applicable contract unit price for towing. If delivery is required to a point that requires less towing, the distance between the first work site and Mile 725 AHP will be multiplied by the applicable contract unit price for towing and this amount will be deducted from the Contractor's earnings. The plant will be inspected and the Contractor notified of acceptance or rejection of the plant within 24 hours after delivery of plant to the Contracting Officer.

c. A pre-work conference will be held prior to commencement of work. The time and place of conference will be determined by mutual agreement between the Contracting Officer or his designated representative and the Contractor.

d. The Contractor shall prosecute the work assigned him to meet the schedule of dredging operations as determined by the Contracting Officer. The work will be conducted on a 7 days per week, 24 hours per day basis.

e. Upon completion of the contract, the dredge and attendant plant will be released to the Contractor at McKellar Lake Harbor, Memphis, TN.

**SP.2 PHYSICAL DATA**

a. Floating plant can reach the sites of work via the Mississippi River. Obtaining access through private lands to landings near the sites of work for land transportation is the responsibility of the Contractor.

b. The material to be dredged will consist of sand, gravel, silt, mud and clay; and in certain locations, stumps, roots, logs, riprap and/or pile or stone dikes and miscellaneous debris may be encountered. The dredge must be equipped with suitable pump impellers and cutters to efficiently handle these varying materials.

c. The work required consists of making or enlarging dredge cuts, construction of fills, construction of new harbor channels and dredging in various channels and harbors. The currents may vary from zero to fifteen feet per second.

d. The dredging operations contemplated are not all in or near cities. Floating plant may be necessary for the housing or boarding of the labor employed by the Contractor.

e. During the contract period, the Contractor may receive requests for dredging from private interests and local governments. Provided the work can be accomplished without detriment to the work for which the dredge is being leased, and subject to the prior approval of the Contracting Officer in each instance, the Contractor, upon request, may be temporarily released from this contract to perform dredging for others. In temporarily releasing the Contractor to perform work for others, the Government does not assume any responsibility for the work performed, or for the collection of any amounts earned by the Contractor.

d. Disposal areas will be furnished by the Government. Material shall be discharged into the river or be retained in disposal areas by retaining dikes and box-type spillways as directed. The Contractor shall use normal caution in pipeline operations when discharging in dike areas to prevent washing and failure of retaining dikes, and shall maintain a watch on the spillways and keep the spill boxes free of debris. Polyethylene may be required on

dike slopes during dredging operations to protect the retaining dikes. If so, the polyethylene will be furnished by others. The Contractor shall place the polyethylene on the dikes, when needed.

**SP.3 INSPECTION**

The presence of inspectors shall not relieve Contractor of responsibility for the proper execution of the work in accordance with the specifications. The Contractor shall furnish the use of boats, crew, and material forming a part of the ordinary and usual equipment and crew of the dredge plant, as may be reasonably necessary in inspecting and supervising the work. The Contractor shall furnish suitable transportation to and from the various pieces of plant, and to and from the disposal areas from all points on shore in the vicinity of the work. If the Contractor refuses, neglects, or delays compliance with these requirements, the specific facilities may be furnished by the Government, and the cost thereof will be deducted from the Contractor's earnings.

**SP.4 MISPLACED MATERIAL**

Should the Contractor, during the progress of the work, lose, dump, throw overboard, sink, or misplace any material, plant, machinery, or appliance, which in the opinion of the Contracting Officer may be dangerous to or obstruct navigation, the Contractor shall recover and remove the same with the utmost dispatch. The Contractor shall give immediate notice, with description and location of such obstructions, to the Contracting Officer or inspector, and when required shall mark or buoy such obstructions until the same are removed. Should the Contractor refuse, neglect, or delay compliance with the above requirements, such obstructions may be removed by the Contracting Officer, and the cost of such removal may be deducted from any money due or to become due the Contractor, or may be recovered under his bond. The liability of the Contractor for the removal of a vessel wrecked or sunk without fault or negligence shall be that provided in Sections 15, 19 and 20 of the River and Harbor Act of March 3, 1899. (33 U.S.C. 410 et seq.).

**SP.5 SIGNAL LIGHTS**

The Contractor shall display signal lights and conduct his operations in accordance with the General Regulations of the Department of the Army and of the Coast Guard governing lights and day signals as approved by the Secretary of the Army (33 C.F.R. 201.1 - 201.16 and the Commandant, U.S. Coast Guard per Instruction M16672.2, Navigation Rules: International - Inland (COMDTINST M16672.2), or 33 CFR 81 Appendix A (International) and 33 CFR 84 through 33 CFR 89 (Inland) as applicable.

**SP.6 PLANT**

a. General. The Contractor agrees to place plant on the job meeting the requirements herein specified. The plant shall be in satisfactory operating condition and capable of safely and efficiently performing the work specified. The plant shall be subject to inspection of the Contracting Officer at all times. Award of this contract shall not be construed as an agreement on the part of the Government that plant listed by the Contractor in his bid is adequate for the performance of the work. The measure of the "capacity of the plant" shall be its actual performance on the work to which these specifications apply.

b. Performance of Plant. By submitting a bid, the Contractor is giving assurance that the dredging plant furnished shall perform efficiently under the conditions described in these specifications. Government inspectors shall verify that the specified minimum requirements are met during performance of the contract by the contractor's before and after surveys and automated production reports.

c. Unserviceable Plant. If, at any time during the life of the contract, the Contracting Officer determines that any item of plant, or part thereof, is inadequate for the service required, is not being operated at full capacity, has become unserviceable or unsafe, is incapable of efficient work, or is not being efficiently operated because of reduced or incompetent crew; he will notify the Contractor in writing of his decision. The Contracting Officer will either suspend operations or direct that the item of plant, or part thereof, be removed from the work until the defects are corrected; and after giving such notice, the rate of payment for the entire plant will be reduced in the ratio that the output falls short of that specified in the Technical Specifications, with allowances for changes in dredging conditions, until the defects are corrected or incompetent crew is replaced, or crew is increased to the satisfaction of the Contracting Officer. The Contractor may substitute plant of similar capacity and power, satisfactory to the Contracting Officer, for any item of plant, or part thereof, condemned or ordered removed from the work.

d. Control. (1) The plant and its crew will work under the actual direct supervision of the Contractor. The Contracting Officer or his representative shall direct the time and location of the work to be accomplished under the

contract.

(2) The Contractor, or a representative with full authority to act for him with reference to care and operation of the plant, shall be on the site of the work at all times.

e. Movement of Plant. All moving and towing of the dredge and attendant plant will be done by the Contractor. The Contractor will be notified as early as possible in advance of movement of the dredge plant to permit assembly of the tow.

f. Operation and Repair. The Contractor shall furnish all labor, fuel, equipment for transportation of fuel to dredge, appliances, appurtenances, equipment, materials, subsistence, and supplies, and bear all expenses incident to the efficient operation of his plant in connection with the work of dredging under the contract. The Contractor shall also bear all direct overhead and collateral expenses incident to the operation, upkeep, and repair of all items of plant. He shall maintain the plant in a good state of repair; shall arrange for a supply of renewal parts to be on hand when needed for the dredge and each item of attendant plant; and shall provide and maintain the crews for each item of plant employed in connection with the work. All pipelines must be kept in good condition at all times, and any pipeline leaks, broken pipeline, and/or broken connections must be promptly and properly repaired.

**SP.7 Crew**

a. The Contractor shall furnish and pay all necessary crew and supervisory personnel required for safe and efficient 24 hour operation of the dredge and attendant plant and to handle floating and shore pipeline. If the Contracting Officer determines that staffing levels are such that there is a breach of the contract or a danger, all remedies under the contract are available, including, but not limited to suspension of work and termination for default. Additional crew will be necessary for shore operations at Northwest Tenn. Harbor.

b. Crew on the dredge shall be able to perform operations such as clearing pump and suction and adding or removing floating line simultaneously. Each crewmember shall be relieved by qualified personnel on his days off. The Contractor will remove from work under this contract any employee who, in the opinion of the Contracting Officer, is objectionable or incompetent. This requirement shall not be the basis of any claim for compensation or damages against the United States or any of its officers or agents.

c. Boat Operators. When operating in a towing status, all boat operators of boats 26 feet or longer shall possess a current operator's license issued by the U.S. Coast Guard. Vessels used at the jobsite for handling pontoon line, moving spill barges, etc., do not require a licensed operator.

d. Civil Engineering Technician. The Contractor's Civil Engineering Technician shall be capable of performing all survey work related to this dredging contract, which includes making reconnaissance surveys, preparing dredge layouts, setting gauges, computing yardage, and operating all electronic survey equipment, including the Differential Global Positioning System (DGPS) on the dredge and survey boat.

**SP.8 OFFICE ACCOMMODATIONS**

The Contractor shall provide an office for the dredge inspectors. The office shall be not less than 150 sq ft and shall be properly lighted, ventilated, heated, and cooled. The office shall be sound insulated such that the maximum sound level inside the office will not exceed 85 dB. All costs for office accommodations shall be included in the contract hourly rate. The office shall contain the following:

| | |
|---|---|
| 1 lockable desk | 1 3-drawer file cabinet |
| 2 chairs | 1 lockable equipment cabinet |

A photocopier, capable of making an 8-1/2" X 14" duplex copy on plain paper, and a plain paper fax machine shall be provided on the dredge or floating plant and shall be available for official use by Government inspectors.

**SP.9 MEALS FOR INSPECTORS**

If the Contractor maintains facilities on the dredge or attendant plant for the subsistence of his own employees, he shall furnish meals to Government inspectors assigned to the dredge, and to all Government agents who may visit the dredge on official business. All costs for meals shall be included in the contract hourly rate; no separate payment will be made.

**SP.10 LAYOUT OF WORK**

The Contractor shall furnish, operate and maintain a complete Differential Global Positioning System (DGPS) to provide dredge positioning and alignment in the various dredging assignments of this contract. The system shall utilize DGPS equipment in conjunction with the U.S. Coast Guard Radio Beacon DGPS Network, to provide real time positioning using UTM Zone 15 or 16 coordinates. The Contractor will be provided a diskette containing a Hypack file of the dredging cut layout for each individual assignment, containing stationing, baseline information, and coordinates.

**SP.11 GENERAL SAFETY REQUIREMENTS**

a. Accident Prevention Program. Refer to Contract Clause entitled "Accident Prevention (Nov 1991)--Alternate I (Nov 1991)". Prior to the prework conference, the Contractor shall prepare an accident prevention plan and submit four copies to the Contracting Officer for review and approval. The program shall include as a minimum the following:

(1) An executed LMV Form 358R, Administrative Plan.

(2) Executed LMV Form(s) 359R, Activity Hazard Analysis.

(3) A job specific safety plan per paragraph 01.A.07 and Appendix A of EM 385-1-1.

b. DCA/USACE Dredging Safety Management Plan. If the Contractor is a currently accepted participant in the Dredging Contractors of America (DCA)/United States Army Corps of Engineers (USACE) Dredging Safety Management Program (DSMP), as determined by the DA/USACE Joint Committee, and holds a valid Certificate of Compliance for both the Contractor Program and the Dredge to be used to perform the work under this contract, the Contractor may, in lieu of the submission of an Accident Prevention Plan (APP):

(1) Make available for review, upon request, the Contractor's current Safety Management System (SMS) documentation,

(2) Submit to the Contracting Officer the current valid Company Certificate of Compliance for its SMS.

(3) Submit the current dredge Certificate of Compliance based on third party audit.

(4) Submit for review and acceptance, site-specific addenda to the SMS as specified in the solicitation.

c. Daily Inspections. The Contractor shall institute a daily inspection program to assure all safety requirements are being met. Daily safety inspections shall be reported on the Contractor's daily Quality Control report. Each report will include, as a minimum, the following:

(1) Phase(s) of construction underway during inspection.

(2) Locations or areas inspections were made.

(3) Results of inspection, including nature of deficiencies observed and corrective actions taken, or to be taken, date, and signature of the person responsible for the report's contents.

d. Floating Plant. Floating plant and its operation shall comply with Section 19 of EM385-1-1.

e. Emergency Alarms and Signals. General alarm systems shall be installed and maintained in accordance with EM 385-1-1, 19.A.05.

f. Machinery and Mechanized Equipment. Machinery and mechanized equipment used under this contract shall comply with Section 16 of EM 385-1-1. When a rubber-tired front-end loader, bulldozer, etc., is operated on floating plant, either a bumper or curb with minimum height of one-third of the outside diameter of the largest tire on the equipment, a barge tied alongside, or other means approved in writing by the Contracting Officer shall be used to prevent equipment from moving or falling into the water.

g. Payment. No separate payment will be made for compliance with the safety require-ments and all costs thereof shall be considered incidental to the various bid items of the contract.

h. Accident Investigations and Reporting. Refer to EM 385-1-1, paragraph 01.D. Accidents shall be investigated by the immediate supervisor of the employee(s) involved and reported to the Contracting Officer or his representative within one working day after the accident occurs.

**SP.12 WORKING IN THE VICINITY OF STRUCTURES AND UTILITY CROSSINGS**

Where dredging to the required dimensions might endanger any Structure, the Contracting Officer may reduce the required excavation in the vicinity of such structure. The Contractor shall submit for approval by the Contracting Officer, a detailed plan of operation at each pipeline or utility crossing where construction surveys indicate project channel does not exist. The plan shall contain emergency measures to be taken in the event of an accident. The Contractor shall notify the owners of pipelines or utilities at least 3 days prior to operating within l50 feet of a pipeline or utility. The Government will not be responsible for any damage to structures or utilities due to the Contractor's deviation from the approved plan.

**SP.13 OUTBOARD BOATS**

All boats less than 26 feet in length shall meet either BIA Standards for minimum flotation and capacity, or the certification requirements of the U.S. Coast Guard. The Contractor shall be required to provide satisfactory evidence of compliance. Such evidence shall be a certification by the boat manufacturer, combined with an inspection, to insure that the boat had not been altered in a manner that reduced the safety features; or sufficient tests that indicate compliance with the BIA Standards.

**SP.14 FUEL CONSUMPTION REPORTING REQUIREMENTS**

The Contractor shall furnish to the Government a monthly report of the quantities of fuel consumed in execution of the work of the contract. The quantities reported shall include fuel consumed by the Contractor and all of his subcontractors, for the main plant and all support plant during the preceding month.

**SP.15 PERFORMANCE EVALUATION OF THE CONTRACTOR**

At a minimum, the Contractor's performance will be evaluated upon final acceptance of the work. However, interim evaluations may be prepared at any time during contract performance when determined to be in the best interest of the Government. The format for the evaluation will be SF 1420, and the Contractor will be rated outstanding, satisfactory, or unsatisfactory in the areas of Contractor Quality Control, Timely Performance, Effectiveness of Management, Compliance with Labor Standards, and Compliance with Safety Standards. The Contractor will be advised of any unsatisfactory rating, either in an individual element or in the overall rating, prior to completing the evaluation, and all Contractor comments will be made a part of the official record. Performance Evaluation Reports will be available to all DOD Contracting offices for their use in determining Contractor responsibility.

**SP.16 PROJECT AND DAILY PRODUCTION REPORTS**

The Contractor shall furnish computer-generated LMM-316a (electronic) July 91 daily reports complete. The Contractor shall also furnish a summary report for the total contract, broken down by project, monthly and fiscal year in spreadsheet form.

**SP.17 CONTINUITY OF WORK**

No payment will be made for work done in an area until the required depth is secured in the whole area, unless prevented by ledge rock. No payment will be made for dredging performed outside the directed dredging cut layout, except by decision of the Contracting Officer or his representative.

**SP.18 PAYMENTS - DESIGNATED BILLING OFFICE.**

a. The unit price or lump sum price or prices stated in the contract will be used in determining the amounts to be paid for work performed by the Contractor. The designated billing office for this contract is as follows:

Wade Channell
U.S. Army Corps of Engineers, Memphis District
Ensley Engineer Yard
2915 Riverport Rd
Memphis TN 38125-5026

b. Pay time shall begin on the date and hour of acceptance of the dredge and attendant plant by the Contracting Officer as provided in paragraph SP1. and shall end when the dredge and attendant plant are returned to the Contractor, as provided in paragraph SP1e. Pay time will be calculated to the nearest one-sixtieth (1/60) hour for payment.

c. The following will be considered effective time and will be paid for at the applicable contract unit price per hour:

(1) Actual time dredging when the dredge is under operation, with the cutterhead moving material, and such material is being passed through the pipeline.

(2) Time lost in making such openings in floating discharge pipelines or in swinging to one side of channel and slacking off of the swinging wires as may be necessary for the passage of vessels. The Contractor will be responsible for making such opening upon signal of any vessel or craft desiring to pass.

d. All cumulative non-effective hours will be reduced by 30 percent and the reduced cumulative hours paid for at the applicable contract unit price per hour. The following will be considered non-effective time:

(1) Actual time lost, but not in excess of eight hours, for each of the following; preparing to move from one job to another, preparing the dredge for pumping upon arrival at a new job.

(2) Actual time lost due to moving swing anchors; changing swinging wires to previously prepared pendants; making changes in discharge lines, such as adding pontoons or shore pipe, as may be necessary due to the progress of the work; and actual lost time due to failure of retaining dikes, spillboxes, or outfalls through no fault of the Contractor. In the latter case, the Contractor will be required to furnish all available equipment and personnel to assist in making repairs.

(3) Actual time lost due to removal of logs, driftwood, etc., from the pump, pipeline and cutterhead; removal of drift from the pontoon line; washing out pipeline before handling. Actual time lost, but not in excess of eight hours, due to dredge shutdowns authorized by the Contracting Officer for the purpose of replacing the pump impeller with either different diameter impeller or an impeller of different number of vanes than that of the impeller being used. Actual time lost, but not in excess of one hour, due to dredge shutdowns authorized by the Contracting Officer for the purpose of changing dredge cutterhead to cutter-head of a different type. The intent of payment for delays authorized by the Contracting Officer to permit the Contractor to change pump impellers and dredge cutterhead is to obtain the greatest efficiency of operations under changing conditions, such as varying material, length of line, etc. Payment will not be made under this subparagraph for replacing worn-out impellers and/or dredge cutterhead, or cutterhead that have lost their efficiency because of wear.

(4) Actual time lost due to inclement weather on an assignment or while en route between assignments.

e. When river conditions are such that dredging operations become impractical or uneconomical, as determined by the Contracting Officer, he may place the dredge in an idle standby status by giving 24 hours oral or written notice to the Contractor. When the dredge plant is placed in an idle standby status, the Contractor will cease dredging operations and shall secure the dredge plant in a location approved by the Contracting officer. During the idle standby period, the Contractor shall retain a crew that will enable the dredge plant to be returned to operation within 24 hours of receiving notice to resume dredging. While in an idle standby status, neither the dredge plant nor any attendant plant shall be moved from the standby location without approval from the contracting officer. Idle standby may be directed on more than one occasion, but will not exceed a cumulative total of 504 hours. All idle standby hours shall be reduced by 65 percent and the reduced cumulative standby hours paid for at the contract hourly unit price for dredging. When the Contractor begins preparations to resume operations at the site as directed by the Contracting Officer, the usual pay provisions of the specifications will be applicable.

f. Payment will not be made for: (1) Lay time on an assignment or when all necessary equipment is not available or in operating condition at the new assignment.

(2) Time lost due to shutdowns for the repair or the replacement of worn out or unserviceable equipment and time lost due to pulling a line together when the joints open up, replacing damaged shore pipe or pontoons, except when shore pipe is damaged by caving bank or pontoons are damaged by drift through no fault or negligence of the Contractor.

(3) Time during which the dredge is engaged in removing misplaced material and dredging time lost due

00800.doc attachment to email from Channell dated Feb 26 08 at 10:39:10 AM

to removal of obstructions as required in paragraph SP4.

(4) Time during which the dredge is engaged in dredging for others, time being computed from time the dredge shuts down until the dredge is back in position and material is being passed through the pipeline.

(5) Time lost due to shutdowns ordered by the Contracting Officer's representative due to nonconformance to Safety and Health Requirements Manual EM 385-1-1 (See Clause entitled "Accident Prevention" of the Contract Clauses) and safety requirements of these specifications.

(6) Time lost due to insufficient crew size and the inability to perform efficiently simultaneous dredging operations and on-shore disposal operations as determined by the Contracting Officer or his representative.

(7) When the dredge is shut down for any reason or purpose that applies under paragraph 4f(1-6), the ensuing time shall remain under that classification until the cause of the shutdown shall have been removed and no claim shall be allowed for other work performed during that time except if it be the case that the Contracting Officer orders the dredge and attendant plant be moved to a new location.

g. Reduction in Payment for Failure to Meet Output Requirements: If the dredging output falls short of that specified in Section 02482, subparagraph 2.1.1, as measured by Section 00800, subparagraph SP6.b, the total dredging hours for that location will be reduced by the percentage that the output falls short of that specified. Payment for dredging operations, which fail to meet the specified minimum output, will be made by multiplying this reduced number of hours by the contract unit price per hour.

**SP.19 ENVIRONMENTAL LITIGATION**

If the performance of all or any part of the work is suspended, delayed, or interrupted due to an order or a court of competent jurisdiction as a result of environmental litigation, as specified below, the Contracting Officer, at the request of the Contractor, shall determine if the order is due in any part to acts or omissions of the Contractor, or a subcontractor at any tier, not required by the terms of this contract. If it is determined that the order is not due in any part to acts or omissions of the Contractor, or a subcontractor at any tier, other than as required by the terms of this contract, the suspension, delay or interruption shall be considered as if ordered by the Contracting Officer in the administration of this contract under the terms of the **CONTRACT CLAUSE** entitled **SUSPENSION OF WORK**. The period of this suspension, delay, or interruption shall be considered unreasonable and an adjustment shall be made for the increase in cost of performance of this contract, excluding profit as provided in that Clause, subject to all the provisions thereof. The term "environmental litigation," as used herein, means a lawsuit alleging that the work will have an adverse effect on the environment or that the Government has not duly considered, either substantively or procedurally, the effect of the work on environment.

**SP.20 CONTRACTING OFFICER SIGNATURE**

The Contracting Officer signing this contract is the primary Contracting Officer on this contract. However, any Contracting Officer assigned to the Memphis District and Acting within its authority may take formal action on this contract when a contract action needs to be taken and the primary Contracting Officer is away from the office.

**From:** Welch, Jerry R MVM
**To:** Clayton, Carlos E MVM;
**CC:** Norman, Wendell N MVM; Todd, Jean F MVM;
**Subject:** RE: Amendment 0003 to Solicitation W912EQ-08-B-0001 FY08 Harbors Dredging
**Date:** Monday, March 03, 2008 11:14:44 AM
**Attachments:**

---

Thanks Carl, for keeping me informed so well. That really helps a lot. We sure don't want to miss preparation for an OGE.

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Monday, March 03, 2008 8:30 AM
To: Welch, Jerry R MVM
Subject: Amendment 0003 to Solicitation W912EQ-08-B-0001 FY08 Harbors Dredging
Importance: High

Jerry, please find attached Amendment 0003 to the FY08 dredging solicitation that re-establishes this solicitation and extends the bid opening to 11 March 2008 at 2:00 PM. The bid schedule is now just Lot 1 for a 27 inch pump cutterhead dredge. Wanted to give you a heads up for the IGE.

Thanks,

Carl Clayton
Contract Specialist CT-C
USACE Memphis District
901-544-3119

| | |
|---|---|
| **From:** | Clayton, Carlos E MVM |
| **To:** | Briggs, Charles A MVM; Bright, Kenneth M MVM; Morgan, Thomas P MVM; Norman, Wendell N MVM; |
| **CC:** | Channell, Stephen W MVM; Atkins, Christopher L MVM; Sullivan, Richard S MVM; Mayer, Donald V MVM; |
| **Subject:** | W912EQ-08-B-0001 FY08 Harbors Dredging - Weeks Agency Protest |
| **Date:** | Tuesday, March 04, 2008 10:24:00 AM |
| **Attachments:** | Weeks Protest 030408.pdf |

Please see attached Weeks Marine Agency Protest.

Thanks,

Carl Clayton
Contract Specialist CT-C
USACE Memphis District
901-544-3119

WEEKS MARINE, INC.
DREDGING – MARINE CONTRACTORS
STEVEDORING – EQUIPMENT RENTALS
TOWING – HEAVY LIFT – SALVAGE
304 GAILLE DRIVE • COVINGTON, LA 70433 Office (985) 875-2500 Fax (985) 875-2572

March 4, 2008

Department of the Army
Memphis District, Corps of Engineers
167 North Main Street
Memphis, TN 38103

Attn: Contracting Officer

Re: Agency Protest
Dredging of Mississippi River and New
Construction of Northwest Tennessee Harbor
Solicitation No. W912EQ-08-B-0001

Dear Sir/Madam:

Weeks Marine Inc. (WMI) hereby protests the referenced solicitation on the grounds that it unduly restricts competition and provides an unfair competitive advantage relative to the prospective bidder's equipment capacity. The Memphis Dredging project involves the rental of fully found equipment for the purpose of providing dredging services in the Memphis area.

On past Memphis Rental projects, WMI has utilized the dredge *Venture* to provide dredging services, the *Venture* is a 29" class hydraulic cutterhead suction dredge. The referenced solicitation provides only one bidding schedule for a 27" class hydraulic cutterhead suction dredge. Due to the higher productive capacity of the 29" dredge versus the 27" dredge, WMI is at a significant competitive disadvantage.

Ideally, an additional dredging schedule should be included to "level" the competitive playing field for all bidders. Obviously, a larger dredge will be more productive than a smaller dredge and the bid schedule for the large dredge should include less hours than the smaller dredge (i.e. a larger dredge produces the same output as a smaller dredge in less time). Furthermore, there are built-in penalties in the event the dredge underperforms on an output basis.

Interestingly, the solicitation was initially advertised with two bid schedules that essentially compensated for varying equipment output as alluded to above. Unfortunately in our case, Amendment No. 0003 dated February 29, 2008 eliminated the additional equipment schedule and reverted back to the historically uncompetitive method of procuring these services.

Memphis Rental
March 4, 2008
Page 2

WMI urges you to reconsider your decision to eliminate the multiple equipment bidding schedule approach and in doing so level the competitive playing field and we request that the bid opening be postponed until such time as the protest is resolved. If you have any questions or require additional information regarding this matter please contact me.

Sincerely,

WEEKS MARINE, INC.

J. Stephen Chatry
Vice President

Weeks Marine, Inc.
985-875-2500 – phone 985-875-2570 – fax

# Fax

| | | | |
|---|---|---|---|
| To: | CONTRACTING OFFICER | From: | STEVE CHATRY |
| Fax: | 901 544 3142 | Date: | 3/4/08 |
| Phone: | | Total Pages: | 3 |
| Re: | MEMPHIS RENTAL W912EQ-08-B-0001 | CC: | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

•Comments:

SEE ATTACHED AGENCY PROTEST

-----Original Message-----
From: Bright, Kenneth M MVM
Sent: Tuesday, March 04, 2008 1:03 PM
To: Smith, Thomas P COL MVM; Belk, Edward E MVM; Ross, Linda Storey MVM
Cc: Bodron, James A MVM
Subject: RE: W912EQ-08-B-0001 FY08 Harbors Dredging - Weeks Agency Protest

This is a protest from a different contractor. Based on information at that time we felt that the amendment provided us with the least potential for a protest. After our coordination tomorrow it is hopeful that we can a strategy that is acceptable to all potential bidders. More to come.

Ken Bright
Chief, Project Operations Branch
Memphis Disrict, USACE

kenneth.m.bright@usace.army.mil
Phone: 901-544-4016

-----Original Message-----
From: Smith, Thomas P COL MVM
Sent: Tuesday, March 04, 2008 12:51 PM
To: Bright, Kenneth M MVM; Belk, Edward E MVM; Ross, Linda Storey MVM
Cc: Bodron, James A MVM
Subject: RE: W912EQ-08-B-0001 FY08 Harbors Dredging - Weeks Agency Protest

I'm confused ... his protest indicates we were OK until after we posted the amendment on 29 FEB which I thought was intended to preclude protests.

TS

------------
Thomas P. Smith
Colonel, US Army Corps of Engineers
Commander, Memphis District
(901)544-3221

http://www.mvm.usace.army.mil/

-----Original Message-----
From: Bright, Kenneth M MVM
Sent: Tuesday, March 04, 2008 11:41 AM
To: Smith, Thomas P COL MVM; Belk, Edward E MVM; Ross, Linda Storey MVM
Cc: Bodron, James A MVM
Subject: FW: W912EQ-08-B-0001 FY08 Harbors Dredging - Weeks Agency Protest
Importance: High

FYSA -- I am scheduling a meeting within Contracting, Navigation, & River Engineering for 1st thing in the morning. Following that meeting Contracting will discuss protest with Weeks Marine to see if we can negotiate an acceptable alternative.

Impacts, if any, will not be known until after this coordination.

Ken Bright
Chief, Project Operations Branch
Memphis Disrict, USACE

kenneth.m.bright@usace.army.mil
Phone: 901-544-4016

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Tuesday, March 04, 2008 10:25 AM
To: Briggs, Charles A MVM; Bright, Kenneth M MVM; Morgan, Thomas P MVM; Norman, Wendell N MVM
Cc: Channell, Stephen W MVM; Atkins, Christopher L MVM; Sullivan, Richard S MVM; Mayer, Donald V MVM
Subject: W912EQ-08-B-0001 FY08 Harbors Dredging - Weeks Agency Protest
Importance: High

Please see attached Weeks Marine Agency Protest.

Thanks,

Carl Clayton
Contract Specialist CT-C
USACE Memphis District
901-544-3119

**From:** Norman, Wendell N MVM
**To:** KDJohnson@gldd.com;
**CC:** Clayton, Carlos E MVM;
**Subject:** Protest of W912EQ-08-B-0001 Cutterhead Dredging on the MS River & Harbors
**Date:** Wednesday, March 05, 2008 2:12:44 PM
**Attachments:** Weeks Protest 030408.pdf

---

Mr. Johnson,

Attached is a copy of the protest submitted by Weeks Marine on the subject solicitation.

There should be an amendment out on the internet that postpones the bid opening indefinitely.

Also, I forwarded the information for your FOIA request (i.e. bid schedule, data sheets, etc. for last years dredging contract) to our legal office.

Thanks,
Wendell Norman

WEEKS MARINE, INC.
DREDGING – MARINE CONTRACTORS
STEVEDORING – EQUIPMENT RENTALS
TOWING – HEAVY LIFT – SALVAGE
304 GAILLE DRIVE • COVINGTON, LA 70433 Office (985) 875-2500 Fax (985) 875-2572

March 4, 2008

Department of the Army
Memphis District, Corps of Engineers
167 North Main Street
Memphis, TN 38103

Attn: Contracting Officer

Re: Agency Protest
Dredging of Mississippi River and New
Construction of Northwest Tennessee Harbor
Solicitation No. W912EQ-08-B-0001

Dear Sir/Madam:

Weeks Marine Inc. (WMI) hereby protests the referenced solicitation on the grounds that it unduly restricts competition and provides an unfair competitive advantage relative to the prospective bidder's equipment capacity. The Memphis Dredging project involves the rental of fully found equipment for the purpose of providing dredging services in the Memphis area.

On past Memphis Rental projects, WMI has utilized the dredge *Venture* to provide dredging services, the *Venture* is a 29" class hydraulic cutterhead suction dredge. The referenced solicitation provides only one bidding schedule for a 27" class hydraulic cutterhead suction dredge. Due to the higher productive capacity of the 29" dredge versus the 27" dredge, WMI is at a significant competitive disadvantage.

Ideally, an additional dredging schedule should be included to "level" the competitive playing field for all bidders. Obviously, a larger dredge will be more productive than a smaller dredge and the bid schedule for the large dredge should include less hours than the smaller dredge (i.e. a larger dredge produces the same output as a smaller dredge in less time). Furthermore, there are built-in penalties in the event the dredge underperforms on an output basis.

Interestingly, the solicitation was initially advertised with two bid schedules that essentially compensated for varying equipment output as alluded to above. Unfortunately in our case, Amendment No. 0003 dated February 29, 2008 eliminated the additional equipment schedule and reverted back to the historically uncompetitive method of procuring these services.

Memphis Rental
March 4, 2008
Page 2

WMI urges you to reconsider your decision to eliminate the multiple equipment bidding schedule approach and in doing so level the competitive playing field and we request that the bid opening be postponed until such time as the protest is resolved. If you have any questions or require additional information regarding this matter please contact me.

Sincerely,

WEEKS MARINE, INC.

J. Stephen Chatry
Vice President

Weeks Marine, Inc.
985-875-2500 – phone 985-875-2570 – fax

# Fax

| | | | |
|---|---|---|---|
| To: | CONTRACTING OFFICER | From: | STEVE CHATRY |
| Fax: | 901 544 3142 | Date: | 3/4/08 |
| Phone: | | Total Pages: | 3 |
| Re: | MEMPHIS RENTAL W912EQ-08-B-0001 | CC: | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

•Comments:

SEE ATTACHED AGENCY PROTEST

**From:** Welch, Jerry R MVM
**To:** Clayton, Carlos E MVM;
**CC:** Hurst, Richard H MVM;
**Subject:** RE: Solicitation W912EQ-08-B-0001 Harbors Dredging Amendment 0004
**Date:** Monday, March 10, 2008 1:55:09 PM
**Attachments:**

---

Thanks Carlos for the "heads up".

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Monday, March 10, 2008 12:51 PM
To: Welch, Jerry R MVM
Subject: Solicitation W912EQ-08-B-0001 Harbors Dredging Amendment 0004
Importance: High

Jerry, I'm not sure if you were included, but the FY08 Harbor Dredging solicitation has been postponed indefinitely as of 05 March 2008.

Thanks,

Carl Clayton
Contract Specialist CT-C
USACE Memphis District
901-544-3119

**From:** Norman, Wendell N MVM
**To:** Bright, Kenneth M MVM;
**CC:** Clayton, Carlos E MVM; Todd, Jean F MVM;
**Subject:** RE: FY 08 Harbor Dredging Milestones & Proposed Dredging Schedule
**Date:** Friday, March 14, 2008 2:39:34 PM
**Attachments:**

---

Ken,

In discussions with the potential bidders, they are indicating they may need 14 days (calendar) instead of the 10 days we discussed.

They are afraid we will get several inquiries and end up extending the bid opening date a few days.

Therefore, we probably need to plan on 14 days for the bidders to evaluate the amendment prior to bid opening.

If your guys will get the technical portion to us a couple of days earlier, we should be able to meet the existing schedule.

Please push them to get it to us by 2 Apr 08.

Thanks,
Wendell

-----Original Message-----
From: Bright, Kenneth M MVM
Sent: Friday, March 14, 2008 12:14 PM
To: Smith, Thomas P COL MVM; Bodron, James A MVM; Belk, Edward E MVM; Todd, Jean F MVM
Cc: Wilbanks, Curtis D MVM; Sullivan, Richard S MVM; Channell, Stephen W MVM; Mayer, Donald V MVM; Morgan, Thomas P MVM; Funderburk, Rodger M MVM; Briggs, Charles A MVM; Lloyd, James W MVM; Chasteen, Darian S MVM; Ross, Linda Storey MVM; Norman, Wendell N MVM
Subject: FY 08 Harbor Dredging Milestones & Proposed Dredging Schedule

Attached files: Harbor Dredging Milestones & Proposed Dredging Schedule. As stated

in the milestone document, Weeks Marine has stated they would provide a response early next week concerning their review of the maintenance dredging schedule -- their decision could impact contract award.

Due to server problems the dredging schedule is provide as a handwritten PDF -- as soon as problems are rectified a more readable copy will be forwarded.

Ken Bright
Chief, Project Operations Branch
Memphis Disrict, USACE

kenneth.m.bright@usace.army.mil
Phone: 901-544-4016

**From:** Donlon, William E MVM
**To:** Clayton, Carlos E MVM;
**CC:** Norman, Wendell N MVM; Channell, Stephen W MVM;
**Subject:** Sol. # W912EQ-08-B-001
**Date:** Tuesday, March 18, 2008 10:57:17 AM
**Attachments:**

---

Clayton,

In the solicitation clarification 02 there is a statement that is a response to a question: "No clearing has been done in the harbor footprint. Water stages have not been conductive for this work." Do you know who provided this information? I do not know if it is important, but we have actually cleared about 25 acres under 2 different contracts within the harbor footprint, and have plans to clear 4 more acres in the harbor footprint when river levels allow access.

Bill Donlon

**From:** Norman, Wendell N MVM
**To:** Clayton, Carlos E MVM;
**CC:**
**Subject:** FW: Venture
**Date:** Wednesday, March 26, 2008 8:09:33 AM
**Attachments:** Venture Production Breakdown.pdf

---

-----Original Message-----
From: Chuck Broussard [mailto:CRBroussard@WeeksMarine.Com]
Sent: Monday, March 24, 2008 3:21 PM
To: Norman, Wendell N MVM
Cc: Steve Chatry
Subject: Venture

Please see attached

Thanks

Chuck Broussard

Weeks Marine, Inc.

304 Gaille Dr.

Covington, La. 70433

985-875-2500 Phone

985-875-2570 Fax

985-237-5016 Cell

www.weeksmarine.com

| VENTURE PRODUCTION BREAKDOWN | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | TIME [HRS] | | | | | | | | |
| LOCATION | DATE | TOTAL | OPER | LOST | PAY CYS | AVG PAY CYS/DAY | AVG PAY CYS/HR | GROSS CYS | GROSS CYS/HR |
| DAVIS POND | 18-Apr-01 | 1,342.17 | 531.25 | 810.93 | 657,068 | 11,749 | 1,237 | 702,002 | 1,321 |
| MOTIVA DOCK | 15-Mar-02 | 68.50 | 28.58 | 37.17 | 36,750 | 12,876 | 1,286 | 39,700 | 1,389 |
| ATOFINA DOCK | 11-Mar-02 | 22.58 | 14.00 | 8.58 | 37,809 | 40,181 | 2,701 | 40,553 | 2,897 |
| HOUSTON SHIP CHANNEL | 23-Apr-02 | 973.42 | 594.66 | 378.76 | 1,036,433 | 25,554 | 1,743 | 1,178,052 | 1,981 |
| HOUSTON SHIP CHANNEL | 13-Feb-02 | 714.01 | 519.83 | 194.18 | 718,880 | 24,164 | 1,383 | 792,247 | 1,524 |
| BAPTISTE COLLETTE | 9-Jan-03 | 1,774.59 | 1,107.76 | 666.84 | 1,228,808 | 16,619 | 1,109 | 1,580,093 | 1,426 |
| SABINE PASS LNG | 31-Dec-05 | 1,130.30 | 599.17 | 454.83 | 1,031,921 | 21,911 | 1,722 | 1,031,921 | 1,722 |
| HOUMA NAVAGATION CANAL | 24-Jul-05 | 1,082.74 | 642.64 | 332.52 | 1,105,797 | 24,511 | 1,721 | 1,821,833 | 2,835 |
| FOURCHON, BELLE PASS | 25-Apr-07 | 1,231.22 | 382.80 | 848.25 | 472,862 | 9,217 | 1,235 | 537,717 | 1,405 |
| FRESH WATER BAYOU | 17-Jan-07 | 1,683.60 | 669.70 | 351.31 | 710,970 | 10,135 | 1,062 | 1,174,311 | 1,753 |
| MERMENTAU RIVER | 13-Mar-07 | 863.57 | 539.86 | 323.65 | 894,499 | 24,861 | 1,657 | 1,185,869 | 2,197 |
| **AVERAGES/TOTALS** | | | | | 721,072 | 20,162 | 1,532 | 916,754 | 1,859 |

**From:** Waller, Kandi H MVM
**To:** Bright, Kenneth M MVM; Norman, Wendell N MVM; Clayton, Carlos E MVM; Lloyd, James W MVM; Donlon, William E MVM; Channell, Stephen W MVM;
**CC:** Chasteen, Darian S MVM; Berretta, David P MVM;
**Subject:** NWTH Dredging
**Date:** Wednesday, March 26, 2008 2:39:02 PM
**Attachments:**

---

All, I have completed the quantity take off as requested for the dredging contract. This morning prior to getting into this good, it was requested that I take a look at the tangents that we placed for the centerline. I have redone that with help from Wade Channel and Larry Tillman. I am going to send them the new proposed centerline to see if they think that it is feasible to build as laid out. Thus, these number may change slightly if they foresee that the centerline coordinates need to change. Until then, here are the quantities as I understand them to have been requested:

Base Option 1 to Centerline Station 80+00 = 927,650 cy
Base Option 2 to Centerline Station 85+00 = 127,500 cy
Base Option 3 to end of harbor with Turning basing = 122,650 cy

If you have any questions or comments, please do not hesitate to call.

Kandi