**From:** Channell, Stephen W MVM

**To:** Clayton, Carlos E MVM;

**CC:**

**Subject:** New bid sheet

**Date:** Tuesday, April 01, 2008 10:09:18 AM

**Attachments:** bid.doc

---

Carl,
Please revise the bid and send me a copy.
Thanks,
Wade

Invitation No. W912EQ-08-B-0001
Bid Data Sheet for Lease of One Cutterhead, Hydraulic, Pipeline Dredge, Fully Operated, with Attendant Plant - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor.

U.S. Army Corps of Engineers, Memphis District
167 North Main Street, B202
Memphis TN 38103-1894

In compliance with the above Invitation for Bids, the undersigned hereby proposes to furnish, deliver, and operate the following plant in strict accordance with the attached specifications:

One Cutterhead Hydraulic Pipeline Dredge and Attendant Plant with the following characteristics:

DREDGE NAME or NUMBER:____________________________________

a. Hull length ____________________________________________(feet)
b. Draft _________________________________________________(feet)
c. Length of dredge spuds __________________________________(feet)
d. Maximum and Minimum dredging depth _____________________(feet)
e. Maximum effective dredge swing ___________________________(feet)
f. Ladder length ___________________________________________(feet)
g. Cutter motor, brake horsepower ____________________________(feet)

DISCHARGE SIZE:

a. Discharge line, inside diameter _________(inches)
b. Pump discharge, inside diameter ________(inches)

MAIN ENGINE: Continuous brake horsepower applied to pump impeller ____________(hp)

BOOSTER PUMP IF NEEDED:
Continuous brake horsepower applied to pump impeller ____________(hp)

ATTENDANT PLANT:

Derrick Barge - Type ____________________________________________
Dimensions - length, width, draft __________________________________(feet)
Boom length ____________________________________________(feet)

Crane Barge - Type ______________________________________________
Dimensions - length, width, draft __________________________________(feet)
Boom length ____________________________________________(feet)

Spill Barge Dimensions - length, width, draft ____________________________(feet)

Fuel Barge Dimensions - length, width, draft ____________________________(feet)

bid.doc attachment to email from Channell dated Apr 01 08 10:09:18 AM

Invitation No. W912EQ-08-B-0001

BULLDOZERS(2) DOZER NO.1 DOZER NO.2

Make ____________ ____________

Model ____________ ____________

Bid Data Sheet for Lease of One Cutterhead, Hydraulic, Pipeline Dredge, Fully Operated, with Attendant Plant - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor.

EXCAVATOR(1) EXCAV NO.1

Make ____________

Model ____________

TENDERS (3)

Tender No.1

Name ________________________
Year Built ____________________
HULL:
Length (feet) __________________
Molded Beam (feet) _____________
Draft (feet) ___________________

| PROPELLING ENGINES: | PORT | STBD |
|---|---|---|
| Make | | |
| Model | | |
| Serial No | | |
| Brake HP | | |

Tender No.2

Name ________________________
Year Built ____________________
HULL:
Length (feet) __________________
Molded Beam (feet) _____________
Draft (feet) ___________________

| PROPELLING ENGINES: | PORT | STBD |
|---|---|---|
| Make | | |
| Model | | |
| Serial No | | |
| Brake HP | | |

Tender No.3

Name ________________________
Year Built ____________________
HULL:
Length (feet) __________________
Molded Beam (feet) _____________
Draft (feet) ___________________

| PROPELLING ENGINES: | PORT | STBD |
|---|---|---|
| Make | | |
| Model | | |
| Serial No | | |
| Brake HP | | |

bid.doc attachment to email from Channell dated Apr 01 08 10:09:18 AM

Invitation No. W912EQ-08-B-0001

SURVEY/CREW BOAT (1)

Model ________________________________________

Dimensions - length, width, draft ______________________ (feet)

| OUTBOARD MOTORS (3) | Motor 1 | Motor 2 | Motor 3 |
|---|---|---|---|
| Model | __________ | __________ | __________ |
| Horsepower | __________ | __________ | __________ |

Bid Data Sheet for Lease of One Cutterhead, Hydraulic, Pipeline Dredge, Fully Operated, with Attendant Plant - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor.

The plant was last operated at _____________________(location), in _________(month/year).

The plant may be inspected at ________________________________________(location).

The plant offered is owned by ______________________________________________.

Invitation No. W912EQ-08-B-0001
BIDDING SCHEDULE - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor Dredge
(To be attached to Bid Form)

**LOT ONE**

| Item No. | Lot One Bid Description | Estimated Quantity | Unit | Unit Price | Estimated Amount |
|---|---|---|---|---|---|
| 0001 | Maintenance Dredging: Rental of one fully operated hydraulic dredge with min. 27-inch ID pump discharge and attendant dredge plant including pipeline | | | | |
| 0001AA | First 1,384.5 hours | 1,384.5 | Hours | $__________ | $________________ |
| 0001AB | All over 1,384.5 hours | 692 | Hours | $__________ | $________________ |
| 0002 | Upstream Towing of dredge and attendant plant | | | | |
| 0002AA | First 200 miles | 200 | Miles | $__________ | $________________ |
| 0002AB | All over 200 miles | 200 | Miles | $__________ | $________________ |
| 0003 | Downstream Towing of dredge and attendant plant | | | | |
| 0003AA | First 200 miles | 200 | Miles | $__________ | $________________ |
| 0003AB | All over 200 miles | 200 | Miles | $__________ | $________________ |
| 0004 | Mobilization and demobilization | 1 | Job | Lump Sum | $________________ |

TOTAL LOT ONE BID $__________________________

bid.doc attachment to email from Channell dated Apr 01 08 10:09:18 AM

Invitation No. W912EQ-08-B-0001
BIDDING SCHEDULE - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor Dredge
(To be attached to Bid Form)

**LOT TWO**

| Item No. | Lot Two Bid Description | Estimated Quantity | Unit | Unit Price | Estimated Amount |
|---|---|---|---|---|---|
| 0005 | Maintenance Dredging: Rental of one fully operated hydraulic dredge with 29-inch ID pump discharge and attendant dredge plant including pipeline | | | | |
| 0005AA | First 1,200 hours | 1,200 | Hours | $___________ | $__________________ |
| 0005AB | All over 1,200 hours | 600 | Hours | $___________ | $__________________ |
| 0006 | Upstream Towing of dredge and attendant plant | | | | |
| 0006AA | First 200 miles | 200 | Miles | $___________ | $__________________ |
| 0006AB | All over 200 miles | 200 | Miles | $___________ | $__________________ |
| 0007 | Downstream Towing of dredge and attendant plant | | | | |
| 0007AA | First 200 miles | 200 | Miles | $___________ | $__________________ |
| 0007AB | All over 200 miles | 200 | Miles | $___________ | $__________________ |
| 0008 | Mobilization and demobilization | 1 | Job | Lump Sum | $__________________ |

TOTAL LOT ONE BID $_____________________________

bid.doc attachment to email from Channell dated Apr 01 08 10:09:18 AM



**OPTION A**

| Item No. | Option A Description | Estimated Quantity | Unit | Unit Price | Estimated Amount |
|---|---|---|---|---|---|
| 0009 | New construction dredging of the Northwest Tenn. Harbor at mile LMR 899.0. Yardage contract for one fully operated hydraulic dredge with 27 or 29-inch ID pump discharge, booster pump if needed and attendant dredge plant including pipeline | | | | |
| 0009AA | First 927,650 Yards | 927,650 | Cubic Yards | $______________ | $_______________ |
| 0009AB | Next 127,500 Yards | 127,500 | Cubic Yards | $______________ | $_______________ |
| 0009AC | Next 122,650 Yards | 122,650 | Cubic Yards | $______________ | $_______________ |
| 00010 | Stand by time for dredge and attendant plant. | | | | |
| 00010AA | Stand by time hours | 72 | Hours | $______________ | $_______________ |

TOTAL OPTION A BID $______________________________

Invitation No. W912EQ-08-B-0001
BIDDING SCHEDULE - Mississippi River, Harbors and new construction of Northwest Tenn. Harbor Dredge
(To be attached to Bid Form)

NOTE: Bidders shall furnish unit prices for all items listed on the schedule of bid items which require unit prices. If the bidder fails to insert a unit price in the appropriate blank for required items, but does furnish an extended total or an estimated amount for such items, the Government will deem his unit price to be the quotient obtained by dividing the extended estimated amount for that line item by the quantity. IF THE BIDDER OMITS BOTH THE UNIT PRICE AND THE EXTENDED ESTIMATED AMOUNT FOR ANY ITEM, HIS BID WILL BE DECLARED NONRESPONSIVE.

Award will be made as a whole to one bidder.

All quantities are estimated except where unit is given as "job" or "each."

If a bid or modification to a bid based on unit prices is submitted and provides for a lump sum adjustment to the total estimated cost, the application of the lump sum adjustment to each unit price, including lump sum units, in bid schedule must be stated, or, if it is not stated, the bidder agrees that the lump sum adjustment shall be applied on a pro rata basis to every unit price in the bid schedule.

**From:** Thurman, Stacy D MVK
**To:** Clayton, Carlos E MVM;
**CC:**
**Subject:** Abstract (W912EE-08-B-0001)
**Date:** Wednesday, April 02, 2008 8:54:30 AM
**Attachments:** bidresults.pdf

---

Hope this helps!

Thanks,

Stacy Thurman
Contract Specialist
Vicksburg Contracting Office
601-631-5820
601-631-7263 (fax)

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | | | *LARGE BUSINESS* | | *SMALL , HUBZONE BUSINESS* | |
| | | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. | |
| | IFB NO. W912EE-08-B-0001 | | | | | | | | |
| | BASE YEAR | | | | | | | | |
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| 0001 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| 0001AA | FIRST 2,142 HOURS | 2,142 | HR | | | | | | |
| 0001AB | OVER 2,142 HOURS | 1,071 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0002 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE | | | | | | | | |
| 0002AA | FIRST 1,862 HOURS | 1,862 | HR | | | | | | |
| 0002AB | OVER 1,862 HOURS | 931 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0003 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 700 HORSEPOWER | | | | | | | | |
| 0003AA | FIRST 1,714 HOURS | 1,714 | HR | | | | | | |
| 0003AB | OVER 1,714 HOURS | 857 | HR | | | | | | |
| | CONTINUED ON PAGE 2 | | | | | | | | |

| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. | |
|---|---|---|---|---|---|---|---|---|---|
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| | **OR** | | | | | | | | |
| 0004 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| OOO4AA | FIRST 1,800 HOURS | 1,800 | HR | $ 1,833.00 | $3,299,400.00 | $ 1,525.00 | $2,745,000.00 | $ 2,000.00 | $3,600,000.00 |
| OOO4AB | OVER 1,800 HOURS | 900 | HR | $ 1,833.00 | $1,649,700.00 | $ 1,040.00 | $936,000.00 | $ 2,000.00 | $1,800,000.00 |
| | **OR** | | | | | | | | |
| 0005 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH A TRAVELING SPUD CARRIAGE | | | | | | | | |
| OOO5AA | FIRST 1,566 HOURS | 1,566 | HR | | | | | | |
| OOO5AB | OVER 1,566 HOURS | 783 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0006 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 750 HORSEPOWER | | | | | | | | |
| OOO6AA | FIRST 1,440 HOURS | 1,440 | HR | | | | | | |
| OOO6AB | OVER 1,440 HOURS | 720 | HR | | | | | | |
| | CONTINUED ON PAGE 3 | | | | | | | | |

| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. | |
|---|---|---|---|---|---|---|---|---|---|
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| 0007 | MOBILIZATION | 1 | LS | FOR | $250,275.00 | FOR | $655,000.00 | FOR | $400,000.00 |
| * 0008 | DEMOBILIZATION | 1 | LS | FOR | $218,460.00 | FOR | $1.00 | FOR | $150,000.00 |
| 0009 | REMOBILIZATION | 1 | EA | FOR | $14,000.00 | FOR | $1.00 | FOR | $150,000.00 |
| 0010 | TOWING SERVICE UPSTREAM | 300 | MI | $ 84.00 | $25,200.00 | $ 40.00 | $12,000.00 | $ 125.00 | $37,500.00 |
| 0011 | TOWING SERVICE DOWNSTREAM | 300 | MI | $ 56.00 | $16,800.00 | $ 20.00 | $6,000.00 | $ 125.00 | $37,500.00 |
| 0012 | SHORELINE | 3,000 | LF | $ 1.15 | $3,450.00 | $ 0.50 | $1,500.00 | $ 2.00 | $6,000.00 |
| | BASE PERIOD TOTAL | | | | $5,477,285.00 | | $4,355,502.00 | | $6,181,000.00 |
| | CONTINUED ON PAGE 4 | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. |
| | OPTION YEAR | | | | | | | | |
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| 0013 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| OO13AA | FIRST 2,142 HOURS | 2,142 | HR | | | | | | |
| 00013AB | OVER 2,142 HOURS | 1,071 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0014 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE | | | | | | | | |
| OO14AA | FIRST 1,862 HOURS | 1,862 | HR | | | | | | |
| OO14AB | OVER 1,862 HOURS | 931 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0015 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 700 HORSEPOWER | | | | | | | | |
| OO15AA | FIRST 1,714 HOURS | 1,714 | HR | | | | | | |
| OO15AB | OVER 1,714 HOURS | 857 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0016 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| OO16AA | FIRST 1,800 HOURS | 1,800 | HR | $1,833.00 | $3,299,400.00 | $1,610.00 | 2,898,000.00 | $2,100.00 | $3,780,000.00 |
| OO16AB | OVER 1,800 HOURS | 900 | HR | $1,833.00 | $1,649,700.00 | $1,130.00 | 1,017,000.00 | $2,100.00 | $1,890,000.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **OR** | | | | | | | | |
| 0017 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH A TRAVELING SPUD CARRIAGE | | | | | | | | |
| OO17AA | FIRST 1,566 HOURS | 1,566 | HR | | | | | | |
| OO17AB | OVER 1,566 HOURS | 783 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0018 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 750 HORSEPOWER | | | | | | | | |
| OO18AA | FIRST 1,440 HOURS | 1,440 | HR | | | | | | |
| OO18AB | OVER 1,440 HOURS | 720 | HR | | | | | | |
| * OO19 | DEMOBILIZATION | 1 | LS | FOR | 218,460.00 | FOR | 1.00 | FOR | $150,000.00 |
| OO20 | REMOBILIZATION | 1 | EA | FOR | 14,000.00 | FOR | 1.00 | FOR | $150,000.00 |
| OO21 | TOWING SERVICE UPSTREAM | 300 | MI | $84.00 | 25,200.00 | $40.00 | 12,000.00 | $125.00 | $37,500.00 |
| OO22 | TOWING SERVICE DOWNSTREAM | 300 | MI | $56.00 | 16,800.00 | $20.00 | 6,000.00 | $125.00 | $37,500.00 |
| OO23 | SHORELINE | 3,000 | LF | $1.15 | 3,450.00 | $0.50 | 1,500.00 | $2.00 | $6,000.00 |
| | OPTION PERIOD TOTAL | | | | $5,227,010.00 | | $3,934,502.00 | | $6,051,000.00 |
| | BASE PERIOD + OPTION PERIOD TOTAL | | | | $10,704,295.00 | | $8,290,004.00 | | $12,232,000.00 |
| | HUBZONE 10% PREFERENCE | | | | $0.00 | | $829,000.40 | | $0.00 |
| | TOTAL WITH HUBZONE | | | | $10,704,295.00 | | $9,119,004.40 | | $12,232,000.00 |
| | I CERTIFY THAT I HAVE OPENED, READ AND RECORDED ON THIS ABSTRACT, ALL OFFERS, RECEIVED IN RESPONSE TO THE SOLICITATION. | | | | | | | | |
| | ROBERT R. BROWN    DATE 12/19/2007 | | | | | | | | |

CONTRACT CLAUSE 52.219-4, NOTICE OF PRICE EVALUATION PREFERENCE FOR HUBZONE SMALL BUSINESS CONCERNS, DOES APPLY TO BID(S) RECORDED ON THIS ABSTRACT.

Sandlyn Dement 12/19/07

CONTRACT SPECIALIST DATE

| | |
|---|---|
| **From:** | Clayton, Carlos E MVM |
| **To:** | Channell, Stephen W MVM; |
| **CC:** | |
| **Subject:** | AMENDMENT 0005 DREDGING BID SCHEDULE |
| **Date:** | Wednesday, April 02, 2008 11:20:00 AM |
| **Attachments:** | AMENDMENT 0005 DREDGING BID SCHEDULE.doc |

**LOT 1 27-INCH DREDGE**
**BID ITEMS 0001 THRU 0005**

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | New construction dredging of the Northwest Tenn. Harbor at mile LMR 899.0. Yardage contract for one fully operated hydraulic dredge with 27-inch ID pump discharge, booster pump if needed and attendant dredge plant including pipeline | | | | |
| 0001AA | First 927,650 Yards | 927,650 | Cubic Yard | ________ | ________ |
| 0001AB OPTION | Next 127,500 Yards | 127,500 | Cubic Yard | ________ | ________ |
| 0001AC OPTION | Next 122,650 Yards | 122,650 | Cubic Yard | ________ | ________ |
| 0001AD | Stand by time for dredge and attendant plant | 75 | Hours | ________ | ________ |
| 0002 | Maintenance Dredging Rental of one fully operated hydraulic dredge with 27-inch ID pump discharge, and attendant dredge plant including pipeline | | | | |
| 0002AA | First 1,384.5 hours | 1,384.50 | Hours | ________ | ________ |
| 0002AB | All over 1384.5 hours | 692 | Hours | ________ | ________ |

| | | | | | |
|---|---|---|---|---|---|
| 0003 | Upstream Towing of Dredge and attendant plant. | | | | |
| 0003AA | First 200 miles | 200 | Miles | ________ | ________ |
| 0003AB | All over 200 miles | 200 | Miles | ________ | ________ |
| 0004 | Downstream Towing of dredge and plant | | | | |
| 0004AA | First 200 miles | 200 | Miles | ________ | ________ |
| 0004AB | All over 200 miles | 200 | Miles | ________ | ________ |
| 0005 | Mobilization and demobilization | 1 | Lump Sum | | ________ |

**LOT 1 27-INCH DREDGE TOTAL BID ITEMS 0001 THRU 0005 ____________________**

**LOT 2 29-INCH DREDGE**
**BID ITEMS 0006 THRU 0010**

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0006 | New Construction dredging of the Northwest Tenn. Harbor at mile LMR 899.0. Yardage contract for one fully operated hydralic dredge with 29-inch ID pump discharge, booster pump if needed and attendant dredge plant including pipeline | | | | |
| 0006AA | First 927,650 Yards | 927,650 | Cubic Yard | ________ | ________ |
| 0006AB OPTION | Next 127,500 Yards | 127,500 | Cubic Yard | ________ | ________ |
| 0006AC OPTION | Next 122,650 Yards | 122,650 | Cubic Yard | ________ | ________ |
| 0006AD | Stand by time for dredge and attendant plant | 75 | Hours | ________ | ________ |
| 0007 | Maintenance Dredging Rental of one fully operated hydraulic dredge with 29-inch ID pump discharge and attendant dredge plant including pipeline. | | | | |
| 0007AA | First 1,200 hours | 1,200 | Hours | ________ | ________ |
| 0007AB | All over 1,200 hours | 600 | Hours | ________ | ________ |

| | | | | | |
|---|---|---|---|---|---|
| 0008 | Upstream Towing of dredge and attendant plant | | | | |
| 0008AA | First 200 Miles | 200 | Miles | ________ | ________ |
| 0008AB | All over 200 miles | 200 | Miles | ________ | ________ |
| 0009 | Downstream Towing of dredge and attendant plant | | | | |
| 0009AA | First 200 miles | 200 | Miles | ________ | ________ |
| 0009AB | All over 200 miles | 200 | Miles | ________ | ________ |
| 0010 | Mobilization and Demobilization | 1 | Lump Sum | | ________ |

**LOT 2 29-INCH DREDGE TOTAL BID ITEMS 0006 THRU 0010** ____________

**From:** Clayton, Carlos E MVM
**To:** Norman, Wendell N MVM;
**CC:**
**Subject:** FW: Abstract (W912EE-08-B-0001)
**Date:** Wednesday, April 02, 2008 8:55:00 AM
**Attachments:** bidresults.pdf

---

Here's the bid abstract from Vicksburg.

Carl

-----Original Message-----
From: Thurman, Stacy D MVK
Sent: Wednesday, April 02, 2008 8:54 AM
To: Clayton, Carlos E MVM
Subject: Abstract (W912EE-08-B-0001)

Hope this helps!

Thanks,

Stacy Thurman
Contract Specialist
Vicksburg Contracting Office
601-631-5820
601-631-7263 (fax)

bidresults.pdf attachment to email from Clayton dated Apr 02 08 8:55:00 AM

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | | | *LARGE BUSINESS* | | *SMALL , HUBZONE BUSINESS* | |
| | | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. | |
| | IFB NO. W912EE-08-B-0001 | | | | | | | | |
| | BASE YEAR | | | | | | | | |
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| 0001 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| 0001AA | FIRST 2,142 HOURS | 2,142 | HR | | | | | | |
| 0001AB | OVER 2,142 HOURS | 1,071 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0002 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE | | | | | | | | |
| 0002AA | FIRST 1,862 HOURS | 1,862 | HR | | | | | | |
| 0002AB | OVER 1,862 HOURS | 931 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0003 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 700 HORSEPOWER | | | | | | | | |
| 0003AA | FIRST 1,714 HOURS | 1,714 | HR | | | | | | |
| 0003AB | OVER 1,714 HOURS | 857 | HR | | | | | | |
| | CONTINUED ON PAGE 2 | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. | |
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| | **OR** | | | | | | | | |
| 0004 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| OOO4AA | FIRST 1,800 HOURS | 1,800 | HR | $ 1,833.00 | $3,299,400.00 | $ 1,525.00 | $2,745,000.00 | $ 2,000.00 | $3,600,000.00 |
| OOO4AB | OVER 1,800 HOURS | 900 | HR | $ 1,833.00 | $1,649,700.00 | $ 1,040.00 | $936,000.00 | $ 2,000.00 | $1,800,000.00 |
| | **OR** | | | | | | | | |
| 0005 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH A TRAVELING SPUD CARRIAGE | | | | | | | | |
| OOO5AA | FIRST 1,566 HOURS | 1,566 | HR | | | | | | |
| OOO5AB | OVER 1,566 HOURS | 783 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0006 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 750 HORSEPOWER | | | | | | | | |
| OOO6AA | FIRST 1,440 HOURS | 1,440 | HR | | | | | | |
| OOO6AB | OVER 1,440 HOURS | 720 | HR | | | | | | |
| | CONTINUED ON PAGE 3 | | | | | | | | |

| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. | |
|---|---|---|---|---|---|---|---|---|---|
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| 0007 | MOBILIZATION | 1 | LS | FOR | $250,275.00 | FOR | $655,000.00 | FOR | $400,000.00 |
| * 0008 | DEMOBILIZATION | 1 | LS | FOR | $218,460.00 | FOR | $1.00 | FOR | $150,000.00 |
| 0009 | REMOBILIZATION | 1 | EA | FOR | $14,000.00 | FOR | $1.00 | FOR | $150,000.00 |
| 0010 | TOWING SERVICE UPSTREAM | 300 | MI | $ 84.00 | $25,200.00 | $ 40.00 | $12,000.00 | $ 125.00 | $37,500.00 |
| 0011 | TOWING SERVICE DOWNSTREAM | 300 | MI | $ 56.00 | $16,800.00 | $ 20.00 | $6,000.00 | $ 125.00 | $37,500.00 |
| 0012 | SHORELINE | 3,000 | LF | $ 1.15 | $3,450.00 | $ 0.50 | $1,500.00 | $ 2.00 | $6,000.00 |
| | BASE PERIOD TOTAL | | | | $5,477,285.00 | | $4,355,502.00 | | $6,181,000.00 |
| | CONTINUED ON PAGE 4 | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), FULLY OPERATED WITH ATTENDANT PLANT AND PERSONNEL, WITH A DRAFT NOT TO EXCEED 9 FEET, FOR CONSTRUCTION AND MAINTENANCE DREDGING WITHIN THE VICKSBURG & ADJACENT DISTRICTS | | | | GOVERNEMENT ESTIMATE | | PINE BLUFF SAND & GRAVEL COMPANY | | INLAND DREDGING COMPANY, INC. |
| | OPTION YEAR | | | | | | | | |
| | | QTY. | U/M | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT | UNIT PRICE | AMOUNT |
| 0013 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| OO13AA | FIRST 2,142 HOURS | 2,142 | HR | | | | | | |
| 00013AB | OVER 2,142 HOURS | 1,071 | HR | | | | | | |
| | OR | | | | | | | | |
| 0014 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE | | | | | | | | |
| OO14AA | FIRST 1,862 HOURS | 1,862 | HR | | | | | | |
| OO14AB | OVER 1,862 HOURS | 931 | HR | | | | | | |
| | OR | | | | | | | | |
| 0015 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 22-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 700 HORSEPOWER | | | | | | | | |
| OO15AA | FIRST 1,714 HOURS | 1,714 | HR | | | | | | |
| OO15AB | OVER 1,714 HOURS | 857 | HR | | | | | | |
| | OR | | | | | | | | |
| 0016 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET | | | | | | | | |
| OO16AA | FIRST 1,800 HOURS | 1,800 | HR | $1,833.00 | $3,299,400.00 | $1,610.00 | 2,898,000.00 | $2,100.00 | $3,780,000.00 |
| OO16AB | OVER 1,800 HOURS | 900 | HR | $1,833.00 | $1,649,700.00 | $1,130.00 | 1,017,000.00 | $2,100.00 | $1,890,000.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **OR** | | | | | | | | |
| 0017 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH A TRAVELING SPUD CARRIAGE | | | | | | | | |
| OO17AA | FIRST 1,566 HOURS | 1,566 | HR | | | | | | |
| OO17AB | OVER 1,566 HOURS | 783 | HR | | | | | | |
| | **OR** | | | | | | | | |
| 0018 | LEASE OF ONE CUTTERHEAD, HYDRAULIC PIPELINE DREDGE (NOT LESS THAN 24-INCH DIAMETER), WITH ATTENDANT PLANT, AND WITH A DRAFT NOT TO EXCEED 9 FEET, AND WITH TRAVELING SPUD CARRIAGE, PLUS UNDERWATER PUMP OVER 750 HORSEPOWER | | | | | | | | |
| OO18AA | FIRST 1,440 HOURS | 1,440 | HR | | | | | | |
| OO18AB | OVER 1,440 HOURS | 720 | HR | | | | | | |
| * OO19 | DEMOBILIZATION | 1 | LS | FOR | 218,460.00 | FOR | 1.00 | FOR | $150,000.00 |
| OO20 | REMOBILIZATION | 1 | EA | FOR | 14,000.00 | FOR | 1.00 | FOR | $150,000.00 |
| OO21 | TOWING SERVICE UPSTREAM | 300 | MI | $84.00 | 25,200.00 | $40.00 | 12,000.00 | $125.00 | $37,500.00 |
| OO22 | TOWING SERVICE DOWNSTREAM | 300 | MI | $56.00 | 16,800.00 | $20.00 | 6,000.00 | $125.00 | $37,500.00 |
| OO23 | SHORELINE | 3,000 | LF | $1.15 | 3,450.00 | $0.50 | 1,500.00 | $2.00 | $6,000.00 |
| | OPTION PERIOD TOTAL | | | | $5,227,010.00 | | $3,934,502.00 | | $6,051,000.00 |
| | BASE PERIOD + OPTION PERIOD TOTAL | | | | $10,704,295.00 | | $8,290,004.00 | | $12,232,000.00 |
| | HUBZONE 10% PREFERENCE | | | | $0.00 | | $829,000.40 | | $0.00 |
| | TOTAL WITH HUBZONE | | | | $10,704,295.00 | | $9,119,004.40 | | $12,232,000.00 |

I CERTIFY THAT I HAVE OPENED, READ AND RECORDED ON THIS ABSTRACT, ALL OFFERS, RECEIVED IN RESPONSE TO THE SOLICITATION.

ROBERT R. BROWN    DATE 12/19/2007

bidresults.pdf attachment to email from Clayton dated Apr 02 08 8:55:00 AM



CONTRACT CLAUSE 52.219-4, NOTICE OF PRICE EVALUATION PREFERENCE FOR HUBZONE SMALL BUSINESS CONCERNS, DOES APPLY TO BID(S) RECORDED ON THIS ABSTRACT.

12/19/07

CONTRACT SPECIALIST DATE

**From:** Channell, Stephen W MVM
**To:** Clayton, Carlos E MVM; Norman, Wendell N MVM;
**CC:**
**Subject:** Revised Specs for Dredge Contract
**Date:** Wednesday, April 02, 2008 1:21:20 PM
**Attachments:** 02482A.doc
00800B.doc
00800A.doc
02482B.doc

---

Team,
Maintenance is A and New Construction is B. Please read the New Construction. I give my best.

Thanks
Wade

DIVISION 2 - SITE WORK

SECTION 02482A

MAINTENANCE DREDGING (HOURLY)

TABLE OF CONTENTS

PART 1 GENERAL
1.1 SCOPE OF DREDGING

PART 2 PRODUCTS
2.1 DREDGE
2.1.1 Size of Dredge
2.1.2 Spare Cutters and Impellers
2.2 ATTENDANT PLANT
2.2.1 General
2.2.2 Anchor Barge
2.2.3 Barge Mounted Crane
2.2.4 Fuel Barge
2.2.5 Landing Barge
2.2.6 Pipelines
2.2.7 Spill Barge
2.2.8 Tenders
2.2.9 Survey/Crew Boat
2.2.10 Dozers
2.3 TECHNICAL EQUIPMENT
2.3.1 Production Recording Equipment
2.3.2 Differential Global Positioning System (DGPS)
2.3.3 Depth Sounding Devices
2.3.4 Hydrographic Survey Equipment
2.3.5 Gyro Compass

PART 3 EXECUTION (Not Applicable)

-End of Section Table of Contents-

SECTION 02482A

MAINTENANCE DREDGING (HOURLY)

PART 1 GENERAL

1.1 SCOPE OF DREDGING

The work consists of the maintenance dredging of the following harbors: Hickman, KY; New Madrid, MO; Caruthersville, MO; Osceola, AR; Memphis, TN; Wolf River, TN; Helena, AR; Phillips County, AR; or at any point on the Mississippi River between Cape Girardeau MO (Mile 48 UMR) and Greenville, Mississippi (Mile 537 AHP). Material dredged from the maintenance harbors shall be discharged into the river or be retained in disposal areas by retaining dikes and box-type spillways as directed.

PART 2 PRODUCTS

2.1 DREDGE

2.1.1 Size of Dredge

The dredge shall be not less than 27 inch I.D. discharge. The dredge shall have a minimum manufacturer's horsepower rating for continuous operation as specified in the table below. The dredge inspectors will monitor the actual dredge output, as determined by before and after dredging surveys performed by the Government, against the applicable quantity shown. Failure to maintain that quantity will result in a reduction in payments in accordance with paragraph 00800-SP.18.g, unless the Contracting Officer determines that circumstances beyond the control and without the fault or negligence of the Contractor caused the reduction in output. Dredging performed at some locations will require approximately 15,000 ft. of discharge line with a 50 ft. lift; during this time the dredge shall not be required to meet the specified minimum output. The discharge size will be considered to be the minimum diameter of either the pump discharge or discharge line, which-ever is less. Dredges larger than 29 inches will be considered but, the estimate output will be based on quantity shown for 29 inch dredge.

| Size of Dredge Pump Discharge (I.D.) | Minimum Continuous BHP Connected to Dredge Pump | Estimated Minimum Output Per Pumping Hour Cubic Yards |
|---|---|---|
| 27 inches | 3,900 | 1145 |
| 29 inches | 6,000 | 1321 |

The dredge ladder and spuds shall be of such construction and configuration that the dredge will dig material to a depth of 50 ft below the water surface without exceeding a ladder angle of 45 degrees from horizontal, and will make a 250-ft bottom width cut at a depth of 50 ft without exceeding a swing angle of 45 degrees to either side of the cut centerline. Spuds shall be capable

of holding the dredge in place under the dredging conditions above in currents up to 12 ft per second. The dredge shall be capable of starting work and working efficiently at a depth of 12 ft.

The draft of the dredge shall not exceed 9 ft. The dredge shall be of such design as to work efficiently and permit passage of other vessels while working in a 250-ft wide channel. A check (flap) valve will be located on the dredge near the discharge side of the pump. A flow meter and density meter shall be located on the dredge on the discharge side of the pump for the purpose of determining velocity and cubic yardage. The suction pipe shall have a device that will degas the dredged material. The sound level in the lever room shall not exceed 90 dB.

2.1.2 Spare Cutters and Impellers

The Contractor shall have available for use at all times, a minimum of three interchangeable pump impellers in the sizes that can be accommodated by the pump to permit the dredge to work under varying conditions of length of discharge line and lift. The Contractor shall have available at all times a minimum of two extra cutter heads compatible to dredging conditions.

2.2 ATTENDANT PLANT

2.2.1 General

Attendant plant shall include the following as minimum requirements and shall be composed of such fuel barges, tenders, floating discharge pipe, shore pipe, spill barge, derrick or anchor barges, landing barge, water barges, and other attendant or auxiliary plant as may be required for operations under these specifications, whether or not items are specifically mentioned. The auxiliary and attendant plant shall be in good condition and of sufficient size and capacity to efficiently serve the dredge. The dredge tenders and other attendant plant requiring internal combustion engines for propulsion or auxiliary power requirements, except outboard motors, shall not be equipped with a type of engine requiring gasoline or other highly volatile fuels for operations. No division in pay will be made for attendant plant. It will be considered as part of the dredging plant and shall be kept in operating condition at all times regardless of pay status of the dredge.

2.2.2 Anchor Barge

One derrick barge with not less than 30-ft boom length for moving and shifting anchors.

2.2.3 Barge Mounted Crane

One (1) barge mounted crane having a lifting capacity of at least 50 tons, with not less than 80-ft boom length.

2.2.4 Fuel Barge

One (1) fuel barge capable of servicing the dredge for 7 days.

02482A.doc attachment to email from Channell dated Apr 02 08 1:21:20 PM



2.2.5 Landing Barge

One (1) shallow draft barge with sufficient walkway and handrails shall be required for use as a landing barge.

2.2.6 Pipelines

The work involved will require pipelines ranging from 600 ft to 15,000 ft in length. The following minimum pipeline equipment shall be furnished: 8,500 ft of pontoon discharge line of not less than 27 in ID (1,000 ft of the line shall be in lengths of not more than 50 ft), two (2) stiff pontoon elbows and two (2) swivels, equipped with winches or skidder barge with power winch and adequate fairleads or chocks; and 6,500 ft of shore pipe with two sets of valves including wye branches. The pontoon line shall be equipped with satisfactory pontoons, winches, and anchors to operate the pontoon line in 12 ft per second current. The contractor may be required to submerge short lengths of the pontoon line in harbors to allow for passage of small vessels.

2.2.7 Spill Barge

One (1) shallow draft spill barge (2 ft. maximum draft) designed to discharge 75 ft. from waters edge, equipped with power winches to be available if needed.

2.2.8 Tenders

Two (2) tenders for 24 hours operation per day of such size and design that either can adequately serve the dredge and attendant plant under any conditions to be encountered. The tenders shall be not less than 500 intermittent shaft horsepower and shall work in as little as 5 ft of water. In addition to the two tenders required above, one (1) additional tender of not less than 1,000 intermittent shaft horsepower is required for 24 Hr. operation. Each of the tenders shall be of steel construction, twin screw, with conventional shallow draft river workboat design and equipped with depth finder with transducer installed in hull. The minimum crew for each tender shall consist of one operator and one deckhand per shift.

2.2.9 Survey/Crew Boat

One (1) workboat, similar or equal to a 21-ft SeaArk Marine Utility Series Little Giant Model, with front and rear door, shall be required for crew transport, layout work, sounding, general inspection, and quality control surveying. Workboat shall be equipped with the following: three outboard motors, not less than 100 horsepower each (one will be used as a spare); complete hydraulic steering system including wheel; cables, throttle controls, and electric starter for dual motors; and single-beam DGPS hydrographic surveying equipment.

2.2.10 Dozers

Two (2) wide track bulldozers, one D-5 and one D-6 Caterpillar or equivalent, shall be furnished for work in and around upland disposal areas.

## 2.3 TECHNICAL EQUIPMENT

### 2.3.1 Production Recording Equipment

The dredge shall be equipped with automated production recording equipment, to continually record slurry density, slurry velocity, pipeline pressure, pump vacuum, pump RPM, and engine RPM. Data must be recorded electronically. Data shall be furnished to the Government upon request, and at completion of the contract.

### 2.3.2 Differential Global Positioning System (DGPS)

The contractor shall furnish, operate and maintain a complete Differential Global Positioning System (DGPS) to provide dredge positioning and alignment in the various dredging assignments of this contract. The system shall utilize DGPS equipment in conjunction with Hypack Surveying Software and the U.S. Coast Guard Radio Beacon DGPS Network, to provide real time positioning using UTM Zone 15 or 16 coordinates. The contractor will be provided a diskette containing a Hypack file of the dredging cut layout for each individual assignment containing stationing, baseline information, and coordinates. The complete positioning system shall provide at a minimum the following features: (1) Complete real time display of the dredge in relation to the dredging cut, centerline ranges, and current 100-ft stationing shall be displayed on a VGA monitor located in the lever room of the dredge, so that the inspector can determine the current and previous location of the dredge as it advances. (2) Data logging and recording to diskette of positioning information during the dredging assignment, to be turned in to the Corps inspector at the end of each assignment. (3) Printouts of screen data for any time interval, reflecting the advance of the dredge and the arc of the swing within the channel, shall be available upon request.

### 2.3.3 Depth Sounding Devices

The Contractor shall provide a depth-sounding device capable of obtaining continuous depth-sounding measurements in the area of the forward hull of the dredge. The depth shall be displayed in the lever room of the dredge.

### 2.3.4 Hydrographic Survey Equipment

The survey/crew boat shall be equipped with single-beam DGPS hydrographic survey equipment. Contractor must be able to print small-scale cross-sections but not full surveys (large scale plotter not required); printer may be located on survey boat or dredge.

### 2.3.5 Gyro Compass

As a back-up for the DGPS system, the dredge shall be equipped with a gyro compass of such precision that dredging can be conducted using compass bearings if necessary.

PART 3 EXECUTION (Not Used)

-- End of Section --

SECTION 00800B

NORTH WEST TENNESSEE HARBOR

NEW CONSTRUCTION (YARDAGE)

SPECIAL CONTRACT REQUIREMENTS

TABLE OF CONTENTS


| Paragraph No. | Paragraph Title |
|---|---|
| SP.1 | Scope of Work |
| SP.2 | Delivery, Prosecution and Completion of Work |
| SP.3 | Work for Others |
| SP.4 | Physical Data |
| SP.5 | Misplaced Material |
| SP.6 | Signal Lights |
| SP.7 | Plant (Dredge and Attendant Plant) |
| SP.8 | Crew |
| SP.9 | Inspection |
| SP.10 | Office Accommodations |
| SP.11 | Meals for Inspectors |
| SP.12 | Layout of Work |
| SP.13 | General Safety Requirements |
| SP.14 | Equipment Ownership and Operating Expense Schedule |
| SP.15 | Outboard Boats |
| SP.16 | Fuel Consumption Reporting Requirements |
| SP.17 | Performance Evaluation of the Contractor |
| SP.18 | Basis for Settlement of Proposals |
| SP.19 | Obstruction of Navigable Waterways |
| SP.20 | Rights of Way |
| SP.21 | Control of Operations |
| SP.22 | Obstruction of Channel |
| SP.23 | Cooperation with Others |
| SP.24 | Seaworthiness Certification |
| SP.25 | Project and Daily Production Reports |
| SP.26 | Continuity of Work |
| SP.27 | Quantity Surveys |
| SP.28 | Payments – Designated Billing Office |
| SP.29 | Contracting Officer Signature |
| SP.30 | Working in the Vicinity of Structures And Utility Crossings |

SECTION 00800B

NORTH WEST TENNESSEE HARBOR

NEW CONSTRUCTION (YARDAGE)

NON-REGULATED SPECIAL CONTRACT REQUIREMENTS

**SP.1 SCOPE OF WORK**

a. The work to be performed under the contract consists of furnishing all plant, materials, equipment, supplies, labor, per diem, and transportation, including fuel, power, water (except any materials, equipment, transportation, utility or service, if any specified herein to be furnished by the Government), and performing all work in strict accordance with the specifications and schedules. All work, materials, and services not expressly called for in these specifications which may be necessary for complete and proper operations to carry out the contract shall be performed, furnished, and installed by the Contractor at no increase in cost to the Government.

b. The Contractor's dredge and attendant plant shall be used to perform the new construction dredging of North West Tennessee Harbor at LMR mile 899.0.

c. The work shall consist of removing material from the proposed new channel as show on attached plans and satisfactorily disposing of the dredged material in disposal area A and/or disposal area B as directed by the Contracting Officer. The Contractor shall use normal caution in pipeline operations when discharging in dike areas to prevent washing and failure of retaining dikes, and shall maintain a watch on the spillways and keep the spill boxes free of debris. Polyethylene may be required on dike slopes during dredging operations to protect the retaining dikes. If so, the polyethylene will be furnished by others. The Contractor shall place the polyethylene on the dikes, when needed. The materials to be dredged may consist of concrete, riprap, boulders, gravel, sand, silt, mud, or clay. Debris and obstructions may also be encountered in the course of dredging operations and could include trash, roots, logs, stumps, rope, chain, various sized metal objects, cable and other miscellaneous items. The dredge must be equipped with suitable pump impellers and cutters to efficiently handle these varying materials.

d. The Contractor shall be responsible for detecting and reporting to the Government's Quality Assurance Representative (QAR) all materials or obstructions that might cause damage, or have the potential to cause damage to the dredge and attendant plant. The Government's QAR will evaluate the evidence of the obstruction(s) and based on this data may notify the Contracting Officer for additional instructions concerning the obstruction. The Government will not be responsible for damage to the Contractor's dredge or attendant plant due to its contact with materials or obstruction(s) that could cause such damage, or have the potential to cause such damage.

e. The Contractor shall mobilize the dredge and attendant plant only once to Mckellar Lake ( Mile 725 AHP). Mileage item (0003, 0004 or 0008, 0009) of Lot One or Lot Two will be paid to move dredge and attendant plant to North West Tennessee Harbor. The Government will not pay a separate mobilization and demobilization cost to move the dredge and attendant plant

to North West Tennessee Harbor. The work at NWTH might not be continuous. The contractor could be sent to other harbors before NWTH is completed.

f. The dredging operations contemplated are not all in or near cities. Camps or floating plant may be necessary for the housing or boarding of the labor employed by the Contractor.

g. The floating plant can reach the sites of work via the Mississippi River. Obtaining access through private lands to landings near the sites of work for land transportation is the responsibility of the Contractor.

h. The Contractor will be directed to perform dredging assignments by issuance of verbal orders from the Contracting Officer's Representative.

## SP.2 DELIVERY, PROSECUTION AND COMPLETION OF WORK

a. If this contract is awarded, the Contract Officer's representative will give **5** calendar days of notice to when the new construction will begin. The contract work period is expected to run from August through October.

b. After completing a maintenance harbor, the contractor shall deliver the dredge and attendant plant ready for operation in the vicinity of North West Tennessee Harbor (Mile 899 LMR).

c. A pre-work conference will be held prior to commencement of work. The time and place of conference will be determined by mutual agreement between the Contracting Officer or his designated representative and the Contractor.

d. The Contractor shall prosecute the work assigned him to meet the schedule of dredging operations as determined by the Contracting Officer. The work will be conducted on a 7 days per week, 24 hours per day basis.

e. Upon completion of the yardage contract, the dredge and attendant plant will be placed back on the maintenance contract.

## SP.3 WORK FOR OTHERS

a. During the contract period, the Contractor may receive requests for dredging from private interests and local governments. Provided the work can be accomplished without detriment to the work for which the dredge is being leased, and subject to the prior approval of the Contracting Officer in each instance, the Contractor, upon request, may be temporarily released from this contract to perform dredging for others. In temporarily releasing the Contractor to perform work for others, the Government does not assume any responsibility for the work performed, or for the collection of any amounts earned by the Contractor.

**SP.4 PHYSICAL DATA**

Data and information furnished or referred to below is for the Contractor's information. The Government shall not be responsible for any interpretation of or conclusion drawn from the data or information by the Contractor.

a. WEATHER CONDITIONS. Data on weather conditions may be obtained from the National Weather Service.

b. CHANNEL TRAFFIC. Mississippi River traffic, in general, consists of ships, tow boats and barges, passenger vessels, and small boats.

c. CHANNEL CONDITIONS. Data on current channel conditions may be obtained from the U.S. Coast Guard.

d. STAGE HYDROGRAPHS. River stage hydrographs may be obtained from the Map Files Section of the Memphis District of the U.S. Army Corps of Engineers.

**SP.5 MISPLACED MATERIAL**

Should the Contractor, during the progress of the work, lose, dump, throw overboard, sink, or misplace any material, plant, machinery, or appliance, which in the opinion of the Contracting Officer may be dangerous to or obstruct navigation, the Contractor shall recover and remove the same with the utmost dispatch. The Contractor shall give immediate notice, with description and location of such obstructions, to the Contracting Officer or inspector, and when required shall mark or buoy such obstructions until the same are removed. Should the Contractor refuse, neglect, or delay compliance with the above requirements, such obstructions may be removed by the Contracting Officer, and the cost of such removal may be deducted from any money due or to become due the Contractor, or may be recovered under his bond. The liability of the Contractor for the removal of a vessel wrecked or sunk without fault or negligence shall be that provided in Sections 15, 19 and 20 of the River and Harbor Act of March 3, 1899. (33 U.S.C. 410 et seq.).

**SP.6 SIGNAL LIGHTS**

The Contractor shall display signal lights and conduct his operations in accordance with the General Regulations of the Department of the Army and of the Coast Guard governing lights and day signals as approved by the Secretary of the Army (33 C.F.R. 201.1 - 201.16 and the Commandant, U.S. Coast Guard per Instruction M16672.2, Navigation Rules: International - Inland (COMDTINST M16672.2), or 33 CFR 81 Appendix A (International) and 33 CFR 84 through 33 CFR 89 (Inland) as applicable.

00800B.doc attachment to email from Chandell dated Apr 02 08 1:21:20 PM

**SP.7 PLANT**

a. General. The Contractor agrees to place plant on the job meeting the requirements herein specified. The plant shall be in satisfactory operating condition and capable of safely and efficiently performing the work specified. The plant shall be subject to inspection of the Contracting Officer at all times. Award of this contract shall not be construed as an agreement on the part of the Government that plant listed by the Contractor in his bid is adequate for the performance of the work. The measure of the "capacity of the plant" shall be its actual performance on the work to which these specifications apply.

b. Performance of Plant. By submitting a bid, the Contractor is giving assurance that the dredging plant furnished shall perform efficiently under the conditions described in these specifications. Government inspectors shall verify that the specified minimum requirements are met during performance of the contract by the contractor's before and after surveys and automated production reports.

c. Unserviceable Plant. If, at any time during the life of the contract, the Contracting Officer determines that any item of plant, or part thereof, is inadequate for the service required, is not being operated at full capacity, has become unserviceable or unsafe, is incapable of efficient work, or is not being efficiently operated because of reduced or incompetent crew; he will notify the Contractor in writing of his decision. The Contracting Officer will either suspend operations or direct that the item of plant, or part thereof, be removed from the work until the defects are corrected. However, the Contractor may substitute plant of similar capacity and power for any item of plant, or part there of ordered removed from the work upon approval from the Contracting Officer. After the receipt of the Contracting Officer's notice, the Contractor shall expeditiously correct such defects, replace incompetent crew, or increase the size of the crew to the satisfaction of the Contracting Officer.

d. Control. (1) The plant and its crew will work under the actual direct supervision of the Contractor. The Contracting Officer or his representative shall direct the time and location of the work to be accomplished under the contract.

(2) The Contractor, or a representative with full authority to act for him with reference to care and operation of the plant, shall be on the site of the work at all times.

e. Movement of Plant. All moving and towing of the dredge and attendant plant will be done by the Contractor. The Contractor will be notified as early as possible in advance of movement of the dredge plant to permit assembly of the tow.

f. Operation and Repair. The Contractor shall furnish all labor, fuel, equipment for transportation of fuel to dredge, appliances, appurtenances, equipment, materials, subsistence, and supplies, and bear all expenses incident to the efficient operation of his plant in connection with the work of dredging under the contract. The Contractor shall also bear all direct overhead and collateral expenses incident to the operation, upkeep, and repair of all items of plant. He shall maintain the plant in a good state of repair; shall arrange for a supply of renewal parts to be on hand when needed for the dredge and each item of attendant plant; and shall provide and maintain the crews for each item of plant employed in connection with the work. All pipelines must be kept in good condition at all times, and any pipeline leaks, broken pipeline, and/or broken connections must be promptly and properly repaired.

**SP.8 <u>Crew</u>**

a. The Contractor shall furnish and pay all necessary crew and supervisory personnel required for safe and efficient 24 hour operation of the dredge and attendant plant and to handle floating and shore pipeline. If the Contracting Officer determines that staffing levels are such that there is a breach of the contract or a danger, all remedies under the contract are available, including, but not limited to suspension of work and termination for default.

b. Crew on the dredge shall be able to perform operations such as clearing pump and suction and adding or removing floating line simultaneously. Each crewmember shall be relieved by qualified personnel on his days off. The Contractor will remove from work under this contract any employee who, in the opinion of the Contracting Officer, is objectionable or incompetent. This requirement shall not be the basis of any claim for compensation or damages against the United States or any of its officers or agents.

c. <u>Boat Operators.</u> When operating in a towing status, all boat operators of boats 26 feet or longer shall possess a current operator's license issued by the U.S. Coast Guard. Vessels used at the jobsite for handling pontoon line, moving spill barges, etc., do not require a licensed operator.

d. <u>Civil Engineering Technician.</u> The Contractor's Civil Engineering Technician shall be capable of performing all survey work related to this dredging contract, which includes making reconnaissance surveys, preparing dredge layouts, setting gauges, computing yardage, and operating all electronic survey equipment, including the Differential Global Positioning System (DGPS) on the dredge and survey boat.

**SP.9 <u>INSPECTION</u>**

The presence of inspectors shall not relieve Contractor of responsibility for the proper execution of the work in accordance with the specifications. The Contractor shall furnish the use of boats, crew, and material forming a part of the ordinary and usual equipment and crew of the dredge plant, as may be reasonably necessary in inspecting and supervising the work. The Contractor shall furnish suitable transportation to and from the various pieces of plant, and to and from the disposal areas from all points on shore in the vicinity of the work. If the Contractor refuses, neglects, or delays compliance with these requirements, the specific facilities may be furnished by the Government, and the cost thereof will be deducted from the Contractor's earnings.

**SP.10 OFFICE ACCOMMODATIONS**

The Contractor shall provide an office for the dredge inspectors. The office shall be not less than 150 sq ft and shall be properly lighted, ventilated, heated, and cooled. The office shall be sound insulated such that the maximum sound level inside the office will not exceed 85 dB. All costs for office accommodations shall be included in the contract yardage rate. The office shall contain the following:

| | |
|---|---|
| 1 lockable desk | 1 3-drawer file cabinet |
| 2 chairs | 1 lockable equipment cabinet |

A photocopier, capable of making an 8-1/2" X 14" duplex copy on plain paper, and a plain paper fax machine shall be provided on the dredge or floating plant and shall be available for official use by Government inspectors.

**SP.11 MEALS FOR INSPECTORS**

If the Contractor maintains facilities on the dredge or attendant plant for the subsistence of his own employees, he shall furnish meals to Government inspectors assigned to the dredge, and to all Government agents who may visit the dredge on official business. All costs for meals shall be included in the contract yardage rate; no separate payment will be made.

**SP.12 LAYOUT OF WORK**

The Contractor shall furnish, operate and maintain a complete Differential Global Positioning System (DGPS) to provide dredge positioning and alignment in the various dredging assignments of this contract. The system shall utilize DGPS equipment in conjunction with the U.S. Coast Guard Radio Beacon DGPS Network, to provide real time positioning using UTM Zone 15 or 16 coordinates. The Contractor will be provided a diskette containing a Hypack file of the dredging cut layout for each individual assignment, containing stationing, baseline information, and coordinates.

**SP.13 GENERAL SAFETY REQUIREMENTS**

ALL WORK UNDER THIS CONTRACT SHALL COMPLY WITH THE LATEST VERSION OF U.S. ARMY CORPS OF ENGINEERS SAFETY AND HEALTH REQUIREMENTS MANUAL, EM 385-1-1 AND OCCUPATIONAL SAFETY AND HEALTH ACT (OSHA) STANDARDS, IN EFFECT ON THE DATE OF THE SOLICITATION. NO SEPARATE PAYMENT WILL BE MADE FOR COMPLIANCE WITH EM 385-1-1, NOR FOR COMPLIANCE WITH ANY OF THE OTHER SAFETY-RELATED SPECIAL REQUIREMENTS.

a. Accident Investigations and Reporting. Refer to EM 385-1-1, Section 1. Accidents shall be investigated and reports completed by the immediate supervisor of the employee(s) involved and reported to the Contracting Officer or his representative immediately after the accident occurs. A report of all mishaps occurring on the project shall be submitted to the Contracting

00800B.doc attachment to email from Chandell dated Apr 02 08 1:21:20 PM

Officer on ENG Form 3394 within 2 working days following the incident. All data reported must be complete, timely and accurate. A follow-up report shall be submitted when the estimated lost time days differ from actual lost time days. When a job related injury occurs which requires medical treatment, a supervisor of the injured employee shall accompany the injured employee to the treatment facility and explain the employees regular duties and the availability of "Light Duty" so the injured employee can return to work as soon as possible.

b. Accident Prevention Program. Refer to the Contract Clause entitled "Accident Prevention (Alt.I)." Within 21 calendar days after receipt of Notice of Award of the contract, four copies of the Accident Prevention Program shall be submitted to the Contracting Officer for review and approval. The accident prevention program is to conform to Appendix A (Minimum Basic Outline for Accident Prevention Plan) of the U.S. Army, Corps of Engineers, Safety And Health Requirements Manual, EM 385-1-1. The program shall be prepared in the following format:

(1) An executed LMV Form 358R, Accident Prevention Program - Administrative Plan (available upon request).

(2) An executed LMV Form 359R, Activity Hazard Analysis (available upon request).

(3) A copy of company policy statement regarding accident prevention.

(4) When marine plant and equipment are in use under a contract, the method of fuel oil transfer shall be submitted on LMV Form 414R, Fuel Oil Transfer (available upon request). (Refer to 33 CFR 156).

The Contractor shall not commence physical work at the site until the program has been approved by the Contracting Officer, or his authorized representative. At the Contracting Officer's discretion, the Contractor may submit his Activity Hazard Analysis for only the first phase of construction provided that it is accompanied by an outline of the remaining phases of construction. All remaining phases shall be submitted and accepted prior to the beginning of work in each phase. Also, refer to Section 1 of EM 385-1-1.

c. Daily Inspections. The Contractor shall perform daily safety inspections and record them on the forms approved by the Contracting Officer. Reports of daily inspections shall be maintained at the jobsite. The reports shall be records of the daily inspections and resulting actions. Each report will include, as a minimum, the following:

(1) Phase(s) of construction underway during the inspection.

(2) Locations or areas inspections were made.

(3) Results of inspection, including nature of deficiencies observed and corrective actions taken, or to be taken, date, and signature of the person responsible for its contents.

d. Machinery and Mechanized Equipment. All equipment shall be inspected prior to use on this contract. All equipment shall be re-inspected prior to use any time it is removed and subsequently returned to the contract site for use. Documentation of equipment inspections shall

be made available to the Contracting Officer upon request. Tractors, in addition to trucks, shall be equipped with a first aid kit. Machinery and mechanized equipment used under this contract shall comply with the following:

(1) All equipment shall be properly guarded.

(2) When mechanized equipment is operated on floating plant, the Contractor shall provide positive and acceptable means of preventing this equipment from moving or falling in to the water. The type of equipment addressed by this clause includes front-end loaders, bulldozers, trucks (both on- and off-road), backhoes, track hoes, and similar equipment. If the Contractor plans to use such equipment on floating plant, an activity hazard analysis must be developed for this feature of work. The plan must include a detailed explanation of the type or types of physical barriers, curbs, structures, etc., which will be incorporated to protect the operator and prevent the equipment from entering the water. Nonstructural warning devices may be considered for situations where the use of structural barriers is determined to be impractical. The activity hazard analysis must thoroughly address the procedure and be submitted to the Corps for review and acceptance prior to start of this feature of work.

(3) The stability of crawler, truck, and wheel-mounted cranes shall be assured.

(i) The manufacturer's load-rating chart may be used to determine the maximum allowable working load for each particular crane's boom angle provided a test load, with a boom angle of 20 degrees, confirms the manufacturer's load-rating table.

(ii) Stability tests are required if: (a) there is no manufacturer's load-rating chart securely fixed to the operator's cab; (b) there has been a change in the boom or other structural members; or (c) there has been a change in the counterweight. The test shall consist of lifting a load with the boom in the least stable undercarriage position and at an angle of 20 degrees above the horizontal. The test shall be conducted under close supervision on a firm, level surface. The load that tilts the machine shall be identified as the test load. The test load moment (in ft.-lbs.) shall then be calculated by multiplying the horizontal distance (in ft.) from the center of rotation of the machine to the test load, times test load (in lbs.). Three-fourths of this test-load moment shall then be used to compute the maximum allowable operating loads for the boom at 20, 40, 60, and 80 degrees above horizontal. From these maximum allowable operating loads, a curve shall be plotted and posted in the cab of the machine in sight of the operator. These values shall not be exceeded except in the performance test described below. The test load shall never exceed 110 percent of the manufacturer's maximum rated capacity.

(iii) In lieu of the test and computations above, the crane may be load tested for stability at each of the four boom positions listed above.

(4) Performance tests shall be performed in accordance with Section 16 of EM 385-1-1. Performance tests shall be conducted after each stability test, when the crane is placed in service on a project, and at least every 12 months.

(5) Inspections shall be made which will ensure a safe and economical operation of both cranes and draglines. Specific inspections and their frequencies are listed on the appropriate checklists noted below. Results of inspections and tests for cranes shall be recorded on the Safety Inspection Check List,

LMV Form 326R (available upon request) and inspection results for draglines shall be recorded on LMV Form 373R (available upon request). Copies of the inspections and tests shall be available at the jobsite for review. All stability and performance tests on cranes and all complete dragline inspections shall be witnessed by the Contracting Officer or his authorized representative.

(6) A complete dragline inspection shall be made: (a) at least annually; (b) prior to the dragline being placed in operation; and (c) after the dragline has been out of service for more than six months.

e. Crane Documentation and Equipment.

(1) Crane Documentation. Every crane shall have the following documentation at the time of operation:

(i) a copy of the operating manual developed by the manufacturer for the specific make and model of the crane;

(ii) a copy of the operating manual for any crane operator aids with which the crane is equipped;

(iii) the load rating chart for the crane which include: (a) the crane make and model, serial number, and year of manufacture, (b) load ratings for all crane operating configurations including optional equipment, (c) recommended reeving for the hoist line, and (d) operating limits in windy or cold weather conditions;

(iv) the crane's log book which shall be used to record operating hours and all crane inspections, tests, maintenance and repair.

(2) Crane Equipment. Every crane shall have the following equipment at the time of operation:

(i) a boom angle indicator and a load indicating device, or a load moment indicator/rated capacity indicator (exempt are articulating boom cranes and those cranes used for duty cycle operations);

(ii) a means for the crane operator visually to determine the levelness of the crane;

(iii) drum rotation indicators to afford sensing by the operator (exempt articulating boom cranes);

(iv) a boom angle or radius indicator located within the operator's view (exempt articulating boom cranes);

(v) anti-two block devices (exempt articulating boom cranes and those cranes used for duty cycle operations).

f. First Aid/CPR Requirements. Two employees per shift/per site shall be certified in first aid and CPR.

g. Safety Sign. The Contractor shall furnish, erect, and maintain a safety sign at the site, as located by the Contracting Officer. The sign shall conform to the requirements of this paragraph and the drawing entitled "Safety Sign," included at the end of these Special Contract Requirements. The lettering shall be black, the castle red, and the background white. When placed on floating plant, the sign may be half size. Upon request, the Government will furnish a decal of the engineer castle. The sign shall be erected as soon as practicable, but not later than fifteen calendar days after the date established for commencement of work. The data required shall be current.

h. Means of Escape for Personnel Quartered or Working on Floating Plant. Two means of escape shall be provided for assembly, sleeping, and messing areas on floating plants. For areas involving 10 or more persons, both means of egress shall be through standard size doors opening to different exit routes. Where nine or fewer persons are involved, one of the means of escape may be a window (minimum dimensions 24" x 36") which leads to a different exit route. Refer to Section 19 of EM 385-1-1.

i. Emergency Alarms and Signals.

(1) Alarms. Emergency alarms shall be installed and maintained on all floating plant requiring a crew where it is possible for either a passenger or crewman to be out of sight or hearing from any other person. The alarm system shall be operated from the primary electrical system with standby batteries on trickle charge that will automatically furnish the required energy during an electrical-system failure. A sufficient number of signaling devices shall be placed on each deck so that the sound can be heard distinctly at any point above the usual background noise. All signaling devices shall be so interconnected that actuation can occur from at least one strategic point on each deck.

(2) Signals.

(i) Fire Alarm Signals. The general fire alarm signal shall be in accordance with paragraph 97.13-15b of the Coast Guard Rules and Regulations for Cargo and Miscellaneous Vessels, Subchapter I,Part 97,1 OCT 92 (CG 257).

(ii) Abandon Ship Signals. The signal for abandon ship shall be in accordance with paragraph 97.13-15(c through e) of the reference cited in (a) above.

(iii) Man-Overboard Signal. Hail and pass the word to the bridge. All personnel and vessels capable of rendering assistance shall respond.

## SP.14 EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE

a. This clause does not apply to terminations. See Basis for Settlement of Proposals of this section, and FAR Part 49.

b. Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a Contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the Contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the Contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region III or V. Working conditions shall be considered to be average for determining equipment rates using the schedule unless specified otherwise by the Contracting Officer. For equipment not included in the schedule, rates for comparable pieces of equipment may be used or a rate may be developed using the formula provided in the schedule. For forward pricing, the schedule in effect at the time of negotiations shall apply. For retroactive pricing, the schedule in effect at the time the work was performed shall apply.

c. Equipment rental costs are allowable, subject to the provisions of FAR 31.105(d)(ii) and FAR 31.205-36. Rates for equipment rented from an organization under common control, lease-purchase arrangements, and sale-leaseback arrangements, will be determined using the schedule, except that actual rates will be used for equipment leased from an organization under common control that has an established practice of leasing the same or similar equipment to unaffiliated lessees.

d. When actual equipment costs are proposed and the total amount of the pricing action exceeds the small purchase threshold, the Contracting Officer shall request the Contractor to submit either certified cost or pricing data, or partial/limited data, as appropriate.

NOTE: A copy of the manual can be obtained from the Government Printing Office (GPO) by calling telephone number (202) 512-1800. Collect calls will not be accepted.

**SP.15 <u>OUTBOARD BOATS</u>**

All boats less than 26 feet in length shall meet either BIA Standards for minimum flotation and capacity, or the certification requirements of the U.S. Coast Guard. The Contractor shall be required to provide satisfactory evidence of compliance. Such evidence shall be a certification by the boat manufacturer, combined with an inspection, to insure that the boat had not been altered in a manner that reduced the safety features; or sufficient tests that indicate compliance with the BIA Standards.

**SP.16 <u>FUEL CONSUMPTION REPORTING REQUIREMENTS</u>**

The Contractor shall furnish to the Government a monthly report of the quantities of fuel consumed in execution of the work of the contract. The quantities reported shall include fuel consumed by the Contractor and all of his subcontractors, for the main plant and all support plant during the preceding month.

**SP.17 PERFORMANCE EVALUATION OF THE CONTRACTOR**

At a minimum, the Contractor's performance will be evaluated upon final acceptance of the work. However, interim evaluations may be prepared at any time during contract performance when determined to be in the best interest of the Government. The format for the evaluation will be SF 1420, and the Contractor will be rated outstanding, satisfactory, or unsatisfactory in the areas of Contractor Quality Control, Timely Performance, Effectiveness of Management, Compliance with Labor Standards, and Compliance with Safety Standards. The Contractor will be advised of any unsatisfactory rating, either in an individual element or in the overall rating, prior to completing the evaluation, and all Contractor comments will be made a part of the official record. Performance Evaluation Reports will be available to all DOD Contracting offices for their use in determining Contractor responsibility.

**SP.18 BASIS FOR SETTLEMENT OF PROPOSALS**

Actual costs will be used to determine equipment costs for a settlement proposal submitted on the total cost basis under FAR 49.206-2(b). In evaluating a termination settlement proposal using the total cost basis, the following principles will be applied to determine allowable equipment costs:

a. Actual costs for each piece of equipment, or groups of similar serial or series equipment, need not be available in the contractor's accounting records to determine total actual equipment costs.

b. If equipment costs have been allocated to a contract using predetermined rates, those charges will be adjusted to actual costs.

c. Recorded job costs adjusted for unallowable expenses will be used to determine equipment operating expenses.

d. Ownership costs (depreciation) will be determined using the contractor's depreciation schedule (subject to the provisions of FAR 31.205-11).

e. License, taxes, storage, and insurance costs are normally recovered as an indirect expense and unless the contractor charges these costs directly to contracts, they will be recovered through the indirect expense rate. EFARS 52.249-5000

**SP.19 OBSTRUCTION OF NAVIGABLE WATERWAYS**

a. The Contractor shall:

(1) Promptly recover and remove any material, plant, machinery, or appliance which the Contractor loses, dumps, throws overboard, sinks, or misplaces, and which, in the opinion of the Contracting Officer, may be dangerous to or obstruct navigation;

(2) Give immediate notice, with description and locations of any such obstructions, to the Contracting Officer; and

(3) When required by the Contracting Officer, mark or buoy such obstructions until the same are removed.

b. The Contracting Officer may:

(1) Remove the obstruction(s) by contract or otherwise should the Contractor refuse, neglect, or delay compliance with Paragraph (a) of this Clause; and

(2) Deduct the cost of removal from any monies due or to become due the Contractor, or

(3) Recover the cost of removal under the Contractor's bond.

c. The Contractor's liability for the removal of a vessel wrecked or sunk without fault or negligence is limited to that provided in Sections 15, 19, and 20 of the River and Harbor Act of March 3, 1899 (33 U.S.C. 410 et.seq.).

**SP.20 <u>RIGHTS OF WAYS</u>**

a. The dredging assignments identified in these specifications are all within the navigable waters of the United States, and no additional right-of-way areas are required to perform the work.

b. The Contractor shall procure, at no cost to the Government, all additional lands, access roads, or rights-of-way desired for its convenience in the performance of the work. Any agreements or permits with levee boards, parishes, counties, or political subdivisions for moving material and equipment will also be the responsibility of the Contractor. Any delays to the Contractor resulting from procuring such additional lands, access roads, rights-of-way, or permits for moving material and equipment for the Contractor’s own use will not be made the basis of any claim for increase in the contract cost. The Contractor shall determine the conditions, restrictions, and difficulties that may be encountered in the transportation of material and equipment to the work site.

**SP.21 <u>CONTROL OF OPERATIONS</u>**

The Contracting Officer will assign the location and scheduling of work to be performed under this contract. A Quality Assurance Representative will be present at all times during operations. The Contractor is responsible for the management and control of the dredge and attendant plant and supervision of all Contractor personnel.

**SP.22 OBSTRUCTION OF CHANNEL**

The Government will not undertake to keep the channel free from vessels or other obstructions, except to the extent of such regulations as may be prescribed by the Secretary of the Army, in accordance with the provision of Section 7 of the River and Harbor Act of 8 August 1917. The Contractor will be required to conduct the work in such a manner as to obstruct navigation as little as possible. If the Contractor's dredge and attendant plant obstructs the channel or endangers the passage of vessels, the dredge and attendant plant shall be promptly moved, on the approach of any vessel, to afford a practicable passage. Upon the completion of the work, the Contractor shall promptly remove it's dredge and attendant plant and equipment, including ranges, buoys, piles, and other markers placed under this contract in navigable waters or on shore.

**SP.23 COOPERATION WITH OTHERS**

a. The Government may award other contracts for additional work in the area, or undertake work with its own personnel and equipment. The Contractor shall fully cooperate with such other Contractors or Government forces, and shall neither commit nor permit any act which may interfere with the performance of work by any other Contractor or Government forces.

b. If at any time during the terms of this contract, the navigation channel deteriorates to the extent:

(1) That navigation is obstructed and/or stopped due to natural causes; or

(2) That navigation is obstructed and/or stopped due to man-made causes; or

(3) That Government channel condition projections indicate navigation will be obstructed and/or stopped based on National Weather Service river stage data and /or U.S. Coast Guard and/or Corps of Engineers channel reconnaissance; and the Contracting Officer determines that the Contractor does not have the capability to restore the channel within a reasonable period of time; the Government reserves the right to restore the channel with Government or other plant. When Government or other plant is used to restore the channel, the Contractor's plant may be reassigned in accordance with the provisions of the paragraph of the General Requirements Section entitled "Inspection, Delivery, Prosecution, and Completion". The Contractor will not be paid for the work performed by Government or other plant and will not be charged for costs incurred by the Government in the use of such plant. The decision of the Contracting Officer to employ Government or other plant will be final and will not be subject to the Disputes Clause of this contract. The rights of the Government under this provision are not exclusive, but are in addition to all other rights reserved to the Government by the terms of this contract.

**SP.24 SEAWORTHINESS CERTIFICATION**

The dredge and attendant plant used on this contract and not subject to U.S. Coast Guard inspection and certification must be inspected and certified seaworthy by a reputable marine surveyor who is recognized in the trade. The certificate must be applicable for the intended use,

must be less than one year old, and must be submitted to the Contracting Officer before the start of work. Reference the latest version of the U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1, for additional regulations concerning Floating Plant and Marine Activities.

**SP.25 PROJECT AND DAILY PRODUCTION REPORTS**

The Contractor shall furnish computer-generated LMM-316a (electronic) July 91 daily reports complete. The Contractor shall also furnish a summary report for the total contract, broken down by project, monthly and fiscal year in spreadsheet form.

**SP.26 CONTINUITY OF WORK**

No payment will be made for work done in an area until the required depth is secured in the whole area, unless prevented by ledge rock. No payment will be made for dredging performed outside the directed dredging cut layout, except by decision of the Contracting Officer or his representative.

**SP.27 QUANITITY SURVEYS.**

a. Quantity surveys shall be conducted, and the data derived from these surveys shall be used in computing the quantities of work performed and the actual construction completed and in place.

b. The Contractor shall conduct the original and final surveys for any periods for which progress payments are requested. All these surveys shall be conducted under the direction of a representative of the Contracting Officer, unless the Contracting Officer waives this requirement in a specific instance. The Government shall make such computations as are necessary to determine the quantities of work performed or finally in place. The Contractor shall make the computations based on the surveys for any periods for which progress payments are requested.

c. Promptly upon completing a survey, the Contractor shall furnish the originals of all field notes and all other records relating to the survey or to the layout of the work to the Contracting Officer, who shall use them as necessary to determine the amount of progress payments. The Contractor shall retain copies of all such material furnished to the Contracting Officer. (FAR 52.236-16)

**SP.28 PAYMENTS - DESIGNATED BILLING OFFICE.**

Payment ( PAYMENT ITEMS 0001AA, 0001AB, and 0001AC or 0006AA, 0006AB and 0006AC as applicable.)

a. Payments will be made based on before and after surveys done by the contractor. The government has the right to do these before and after surveys to verify the quantity of yardage is correct. Line item (0001AA or 0006AA) is the estimated quantity of dredge material to be removed from the new harbor channel from station 00+00 to station 80+00. Line item (0001AB

or 0006AB) is estimated quantity to be removed from station 80+00 to 85+00. Line item (0001AC or 0006AC) is estimated quantity to be removed from station 85+00 to end of Harbor. All estimated quantities include the 2 foot over depth to be allowed. All costs involved in the new construction of the North West Tenn. Harbor shall be included in items (0001AA, 0001AB and 0001AC or 0006AA, 0006AB and 0006AC) unless otherwise noted.

b. Mobilization and Demobilization The Government will pay the mobilization and demobilization for both the Maintenance dredging (Lot One) or (Lot Two) and the New Construction dredging Line item 0001 or 0006 in line item 0005 or 00010 of Lot One or Lot Two. There will be no additional payment for the new construction of North West Tenn. Harbor. When the dredge and attendant plant is delivered to North West Tenn. Harbor the Contractor will be paid unit price for towing item (0003 or 0004) or (0008 or 0009) of Lot One or Lot Two for the distance from last work site to (Mile 899.0 LMR).

c. Preparation for Dredging The cost of assembly and disassembly of all shore pipe, floating pontoon pipe, booster pump, making or breaking tow, etc. will be included in the yardage price items (0001AA, 0001AB, and 0001AC or 0006AA, 0006AB, and 0006AC). There will be no additional payment for assembly and disassembly of pipeline, making or breaking tow, etc. unless the contractor is directed to move to another location before the new harbor is complete. See SP.28 e.

d. Stand by Time If any time during the dredging of the new harbor a delay caused by the Government's levees, spillways or water quality of discharge prevents the contractor from dredging the contractor will be paid an hourly rate of line item (0001AD) or (0006AD) of Lot 1 or Lot 2. The contractor will be paid this until problem is resolved or directed to move to another location. See SP.28 e. Note: This time would only be paid if both Disposal Area A and Disposal Area B were non functional.

e. Moving to Another Location If any time during the dredging of the new harbor, the government COR directs the contractor to move to another location before the new harbor is complete. The following applies: The Contractor will be paid up to 24 hrs. of non effective time 70% of line item (0002 or 0007) of Lot One or Lot Two for preparing to move. The government has the right to direct the contractor to return to the North West Tenn. Harbor to complete the construction. If the decision is made to return to the new harbor to complete the construction the contractor will be paid mileage from existing location back to North West Tenn. Harbor line item (0003, 0004 or 0008, 0009) of Lot One or Lot Two and up to 24 hrs. of non effective time 70% of line item (0002 or 0007) of Lot One or Lot Two for preparing to dredge.

f. Delays caused by Natural Elements When river conditions are such that dredging operations become impractical or uneconomical, as determined by the Contracting Officer, he may place the dredge in an idle standby status by giving 24 hours oral or written notice to the Contractor. When the dredge plant is placed in an idle standby status, the Contractor will cease dredging operations and shall secure the dredge plant in a location approved by the Contracting officer. During the idle standby period, the Contractor shall retain a crew that will enable the dredge plant to be returned to operation within 24 hours of receiving notice to resume dredging. While in an idle standby status, neither the dredge plant nor any attendant plant shall be moved from the standby location without approval from the contracting officer. Idle standby may be directed on more than one occasion, but will not exceed a cumulative total of 504 hours. The contractor will be paid 35% of line item (0002 or 0007) of Lot One or Lot Two if these condi

tions occur. When the Contractor begins preparations to resume operations at the site as directed by the Contracting Officer, the usual pay provisions of the specifications will be applicable.

g. Rate of Progress and Performance: Due to the importance of meeting schedule and constructing a new channel at North West Tenn. Harbor, it is essential that the Contractor maintain a satisfactory rate of progress. A minimum of 22,900 cubic yards of material shall be removed per 24 hour day. If the contractor falls short of these requirements, the contractor will be subject to liquidated damages.

The designated billing office for this contract is as follows:

Wade Channell
U.S. Army Corps of Engineers, Memphis District
Ensley Engineer Yard
2915 Riverport Rd
Memphis TN 38125-5026

**SP.29 CONTRACTING OFFICER SIGNATURE**

The Contracting Officer signing this contract is the primary Contracting Officer on this contract. However, any Contracting Officer assigned to the Memphis District and Acting within its authority may take formal action on this contract when a contract action needs to be taken and the primary Contracting Officer is away from the office.

**SP.30 WORKING IN THE VICINITY OF STRUCTURES AND UTILITY CROSSINGS**

Where dredging to the required dimensions might endanger any Structure, the Contracting Officer may reduce the required excavation in the vicinity of such structure. The Contractor shall submit for approval by the Contracting Officer, a detailed plan of operation at each pipeline or utility crossing where construction surveys indicate project channel does not exist. The plan shall contain emergency measures to be taken in the event of an accident. The Contractor shall notify the owners of pipelines or utilities at least 3 days prior to operating within l50 feet of a pipeline or utility. The Government will not be responsible for any damage to structures or utilities due to the Contractor's deviation from the approved plan.

SECTION 00800A

MAINTENANCE (HOURLY)

SPECIAL CONTRACT REQUIREMENTS

TABLE OF CONTENTS


| Paragraph No. | Paragraph Title |
|---|---|
| SP.1 | Delivery, Prosecution and Completion of Work |
| SP.2 | Physical Data |
| SP.3 | Inspection |
| SP.4 | Misplaced Material |
| SP.5 | Signal Lights |
| SP.6 | Plant |
| SP.7 | Crew |
| SP.8 | Office Accommodations |
| SP.9 | Meals for Inspectors |
| SP.10 | Layout of Work |
| SP.11 | General Safety Requirements |
| SP.12 | Working in the Vicinity of Structures And Utility Crossings |
| SP.13 | Outboard Boats |
| SP.14 | Fuel Consumption Reporting Requirements |
| SP.15 | Performance Evaluation of the Contractor |
| SP.16 | Project and Daily Production Reports |
| SP.17 | Continuity of Work |
| SP.18 | Payments – Designated Billing Office |
| SP.19 | Contracting Officer Signature |

SECTION 00800A
MAINTENANCE (HOURLY)

NON-REGULATED SPECIAL CONTRACT REQUIREMENTS

**SP.1 DELIVERY, PROSECUTION AND COMPLETION OF WORK**

a. The Contractor is required to commence work under this contract within **10** calendar days after receipt of Notice to Proceed, to prosecute the work diligently, and to complete all work not later than 31 December 2008. The contract work period is expected to run from April through December. At the option of the Government, this contract, with all its terms and provisions, may be extended for such period and as often as the Government may elect, to permit continuous use of said plant or equipment, not extending beyond 31 December 2008. After that date the contract may be extended only by mutual agreement of the Contractor and the Government, not extending beyond May 31, 2009.

b. The Contractor shall deliver the dredge and attendant plant ready for operation in the vicinity of McKellar Lake Harbor, Memphis, TN (Mile 725 AHP), or to any other work site as may be directed. If delivery is required to a point that requires further towing from the location of the dredge just prior to beginning work under this contract, the Contractor will be paid for the distance between the first work site and Mile 725 AHP at the applicable contract unit price for towing. If delivery is required to a point that requires less towing, the distance between the first work site and Mile 725 AHP will be multiplied by the applicable contract unit price for towing and this amount will be deducted from the Contractor's earnings. The plant will be inspected and the Contractor notified of acceptance or rejection of the plant within 24 hours after delivery of plant to the Contracting Officer.

c. A pre-work conference will be held prior to commencement of work. The time and place of conference will be determined by mutual agreement between the Contracting Officer or his designated representative and the Contractor.

d. The Contractor shall prosecute the work assigned him to meet the schedule of dredging operations as determined by the Contracting Officer. The work will be conducted on a 7 days per week, 24 hours per day basis.

e. Upon completion of the contract, the dredge and attendant plant will be released to the Contractor at McKellar Lake Harbor, Memphis, TN.

**SP.2 PHYSICAL DATA**

a. Floating plant can reach the sites of work via the Mississippi River. Obtaining access through private lands to landings near the sites of work for land transportation is the responsibility of the Contractor.

b. The material to be dredged will consist of sand, gravel, silt, mud and clay; and in certain locations, stumps, roots, logs, riprap and/or pile or stone dikes and miscellaneous debris may be encountered. The dredge must be equipped with suitable pump impellers and cutters to efficiently handle these varying materials.

c. The work required consists of making or enlarging dredge cuts, construction of fills, construction of new harbor channels and dredging in various channels and harbors. The currents may vary from zero to fifteen feet per second.

d. The dredging operations contemplated are not all in or near cities. Floating plant may be necessary for the housing or boarding of the labor employed by the Contractor.

e. During the contract period, the Contractor may receive requests for dredging from private interests and local governments. Provided the work can be accomplished without detriment to the work for which the dredge is being leased, and subject to the prior approval of the Contracting Officer in each instance, the Contractor, upon request, may be temporarily released from this contract to perform dredging for others. In temporarily releasing the Contractor to perform work for others, the Government does not assume any responsibility for the work performed, or for the collection of any amounts earned by the Contractor.

d. Disposal areas will be furnished by the Government. Material shall be discharged into the river or be retained in disposal areas by retaining dikes and box-type spillways as directed. The Contractor shall use normal caution in pipeline operations when discharging in dike areas to prevent washing and failure of retaining dikes, and shall maintain a watch on the spillways and keep the spill boxes free of debris. Polyethylene may be required on dike slopes during dredging operations to protect the retaining dikes. If so, the polyethylene will be furnished by others. The Contractor shall place the polyethylene on the dikes, when needed.

**SP.3 INSPECTION**

The presence of inspectors shall not relieve Contractor of responsibility for the proper execution of the work in accordance with the specifications. The Contractor shall furnish the use of boats, crew, and material forming a part of the ordinary and usual equipment and crew of the dredge plant, as may be reasonably necessary in inspecting and supervising the work. The Contractor shall furnish suitable transportation to and from the various pieces of plant, and to and from the disposal areas from all points on shore in the vicinity of the work. If the Contractor refuses, neglects, or delays compliance with these requirements, the specific facilities may be furnished by the Government, and the cost thereof will be deducted from the Contractor's earnings.

**SP.4 MISPLACED MATERIAL**

Should the Contractor, during the progress of the work, lose, dump, throw overboard, sink, or misplace any material, plant, machinery, or appliance, which in the opinion of the Contracting Officer may be dangerous to or obstruct navigation, the Contractor shall recover and remove the same with the utmost dispatch. The Contractor shall give immediate notice, with description and location of such obstructions, to the Contracting Officer or inspector, and when required shall mark or buoy such obstructions until the same are removed. Should the Contractor refuse, neglect, or delay compliance with the above requirements, such obstructions may be removed by the Contracting Officer, and the cost of such removal may be deducted from any money due or to become due the Contractor, or may be recovered under his bond. The liability of the Contractor for the removal of a vessel wrecked or sunk without fault or negligence shall be that provided in Sections 15, 19 and 20 of the River and Harbor Act of March 3, 1899. (33 U.S.C. 410 et seq.).

00800A.doc attachment to email from Channell dated Apr 02 08 1:21:20 PM

**SP.5 SIGNAL LIGHTS**

The Contractor shall display signal lights and conduct his operations in accordance with the General Regulations of the Department of the Army and of the Coast Guard governing lights and day signals as approved by the Secretary of the Army (33 C.F.R. 201.1 - 201.16 and the Commandant, U.S. Coast Guard per Instruction M16672.2, Navigation Rules: International - Inland (COMDTINST M16672.2), or 33 CFR 81 Appendix A (International) and 33 CFR 84 through 33 CFR 89 (Inland) as applicable.

**SP.6 PLANT**

a. General. The Contractor agrees to place plant on the job meeting the requirements herein specified. The plant shall be in satisfactory operating condition and capable of safely and efficiently performing the work specified. The plant shall be subject to inspection of the Contracting Officer at all times. Award of this contract shall not be construed as an agreement on the part of the Government that plant listed by the Contractor in his bid is adequate for the performance of the work. The measure of the "capacity of the plant" shall be its actual performance on the work to which these specifications apply.

b. Performance of Plant. By submitting a bid, the Contractor is giving assurance that the dredging plant furnished shall perform efficiently under the conditions described in these specifications. Government inspectors shall verify that the specified minimum requirements are met during performance of the contract by the contractor's before and after surveys and automated production reports.

c. Unserviceable Plant. If, at any time during the life of the contract, the Contracting Officer determines that any item of plant, or part thereof, is inadequate for the service required, is not being operated at full capacity, has become unserviceable or unsafe, is incapable of efficient work, or is not being efficiently operated because of reduced or incompetent crew; he will notify the Contractor in writing of his decision. The Contracting Officer will either suspend operations or direct that the item of plant, or part thereof, be removed from the work until the defects are corrected; and after giving such notice, the rate of payment for the entire plant will be reduced in the ratio that the output falls short of that specified in the Technical Specifications, with allowances for changes in dredging conditions, until the defects are corrected or incompetent crew is replaced, or crew is increased to the satisfaction of the Contracting Officer. The Contractor may substitute plant of similar capacity and power, satisfactory to the Contracting Officer, for any item of plant, or part thereof, condemned or ordered removed from the work.

d. Control. (1) The plant and its crew will work under the actual direct supervision of the Contractor. The Contracting Officer or his representative shall direct the time and location of the work to be accomplished under the contract.

(2) The Contractor, or a representative with full authority to act for him with reference to care and operation of the plant, shall be on the site of the work at all times.

e. Movement of Plant. All moving and towing of the dredge and attendant plant will be done by the Contractor. The Contractor will be notified as early as possible in advance of movement of the dredge plant to permit assembly of the tow.

f. Operation and Repair. The Contractor shall furnish all labor, fuel, equipment for transportation of fuel to dredge, appliances, appurtenances, equipment, materials, subsistence, and supplies, and bear all expenses incident to the efficient operation of his plant in connection with the work of dredging under the contract. The Contractor shall also bear all direct overhead and collateral expenses incident to the operation, upkeep, and repair of all items of plant. He shall maintain the plant in a good state of repair; shall arrange for a supply of renewal parts to be on hand when needed for the dredge and each item of attendant plant; and shall provide and maintain the crews for each item of plant employed in connection with the work. All pipelines must be kept in good condition at all times, and any pipeline leaks, broken pipeline, and/or broken connections must be promptly and properly repaired.

**SP.7 Crew**

a. The Contractor shall furnish and pay all necessary crew and supervisory personnel required for safe and efficient 24 hour operation of the dredge and attendant plant and to handle floating and shore pipeline. If the Contracting Officer determines that staffing levels are such that there is a breach of the contract or a danger, all remedies under the contract are available, including, but not limited to suspension of work and termination for default.

b. Crew on the dredge shall be able to perform operations such as clearing pump and suction and adding or removing floating line simultaneously. Each crewmember shall be relieved by qualified personnel on his days off. The Contractor will remove from work under this contract any employee who, in the opinion of the Contracting Officer, is objectionable or incompetent. This requirement shall not be the basis of any claim for compensation or damages against the United States or any of its officers or agents.

c. Boat Operators. When operating in a towing status, all boat operators of boats 26 feet or longer shall possess a current operator's license issued by the U.S. Coast Guard. Vessels used at the jobsite for handling pontoon line, moving spill barges, etc., do not require a licensed operator.

d. Civil Engineering Technician. The Contractor's Civil Engineering Technician shall be capable of performing all survey work related to this dredging contract, which includes making reconnaissance surveys, preparing dredge layouts, setting gauges, computing yardage, and operating all electronic survey equipment, including the Differential Global Positioning System (DGPS) on the dredge and survey boat.

**SP.8 OFFICE ACCOMMODATIONS**

The Contractor shall provide an office for the dredge inspectors. The office shall be not less than 150 sq ft and shall be properly lighted, ventilated, heated, and cooled. The office shall be sound insulated such that the maximum sound level inside the office will not exceed 85 dB. All costs for office accommodations shall be included in the contract hourly rate. The office shall contain the following:

| | |
|---|---|
| 1 lockable desk | 1 3-drawer file cabinet |
| 2 chairs | 1 lockable equipment cabinet |

A photocopier, capable of making an 8-1/2" X 14" duplex copy on plain paper, and a plain paper fax machine shall be provided on the dredge or floating plant and shall be available

for official use by Government inspectors.

**SP.9 MEALS FOR INSPECTORS**

If the Contractor maintains facilities on the dredge or attendant plant for the subsistence of his own employees, he shall furnish meals to Government inspectors assigned to the dredge, and to all Government agents who may visit the dredge on official business. All costs for meals shall be included in the contract hourly rate; no separate payment will be made.

**SP.10 LAYOUT OF WORK**

The Contractor shall furnish, operate and maintain a complete Differential Global Positioning System (DGPS) to provide dredge positioning and alignment in the various dredging assignments of this contract. The system shall utilize DGPS equipment in conjunction with the U.S. Coast Guard Radio Beacon DGPS Network, to provide real time positioning using UTM Zone 15 or 16 coordinates. The Contractor will be provided a diskette containing a Hypack file of the dredging cut layout for each individual assignment, containing stationing, baseline information, and coordinates.

**SP.11 GENERAL SAFETY REQUIREMENTS**

a. Accident Prevention Program. Refer to Contract Clause entitled "Accident Prevention (Nov 1991)--Alternate I (Nov 1991)". Prior to the prework conference, the Contractor shall prepare an accident prevention plan and submit four copies to the Contracting Officer for review and approval. The program shall include as a minimum the following:

(1) An executed LMV Form 358R, Administrative Plan.

(2) Executed LMV Form(s) 359R, Activity Hazard Analysis.

(3) A job specific safety plan per paragraph 01.A.07 and Appendix A of EM 385-1-1.

b. DCA/USACE Dredging Safety Management Plan. If the Contractor is a currently accepted participant in the Dredging Contractors of America (DCA)/United States Army Corps of Engineers (USACE) Dredging Safety Management Program (DSMP), as determined by the DA/USACE Joint Committee, and holds a valid Certificate of Compliance for both the Contractor Program and the Dredge to be used to perform the work under this contract, the Contractor may, in lieu of the submission of an Accident Prevention Plan (APP):

(1) Make available for review, upon request, the Contractor's current Safety Management System (SMS) documentation,

(2) Submit to the Contracting Officer the current valid Company Certificate of Compliance for its SMS.

(3) Submit the current dredge Certificate of Compliance based on third party audit.

(4) Submit for review and acceptance, site-specific addenda to the SMS as specified in the solicitation.

c. Daily Inspections. The Contractor shall institute a daily inspection program to assure all safety requirements are being met. Daily safety inspections shall be reported on the Contractor's daily Quality Control report. Each report will include, as a minimum, the following:

(1) Phase(s) of construction underway during inspection.

(2) Locations or areas inspections were made.

(3) Results of inspection, including nature of deficiencies observed and corrective actions taken, or to be taken, date, and signature of the person responsible for the report's contents.

d. Floating Plant. Floating plant and its operation shall comply with Section 19 of EM385-1-1.

e. Emergency Alarms and Signals. General alarm systems shall be installed and maintained in accordance with EM 385-1-1, 19.A.05.

f. Machinery and Mechanized Equipment. Machinery and mechanized equipment used under this contract shall comply with Section 16 of EM 385-1-1. When a rubber-tired front-end loader, bulldozer, etc., is operated on floating plant, either a bumper or curb with minimum height of one-third of the outside diameter of the largest tire on the equipment, a barge tied alongside, or other means approved in writing by the Contracting Officer shall be used to prevent equipment from moving or falling into the water.

g. Payment. No separate payment will be made for compliance with the safety requirements and all costs thereof shall be considered incidental to the various bid items of the contract.

h. Accident Investigations and Reporting. Refer to EM 385-1-1, paragraph 01.D. Accidents shall be investigated by the immediate supervisor of the employee(s) involved and reported to the Contracting Officer or his representative within one working day after the accident occurs.

**SP.12 WORKING IN THE VICINITY OF STRUCTURES AND UTILITY CROSSINGS**

Where dredging to the required dimensions might endanger any Structure, the Contracting Officer may reduce the required excavation in the vicinity of such structure. The Contractor shall submit for approval by the Contracting Officer, a detailed plan of operation at each pipeline or utility crossing where construction surveys indicate project channel does not exist. The plan shall contain emergency measures to be taken in the event of an accident. The Contractor shall notify the owners of pipelines or utilities at least 3 days prior to operating within l50 feet of a pipeline or utility. The Government will not be responsible for any damage to structures or utilities due to the Contractor's deviation from the approved plan.

**SP.13 OUTBOARD BOATS**

All boats less than 26 feet in length shall meet either BIA Standards for minimum flotation and capacity, or the certification requirements of the U.S. Coast Guard. The Contractor shall be required to provide satisfactory evidence of compliance. Such evidence shall be a certification by the boat manufacturer, combined with an inspection, to insure that the boat had not been altered in a manner that reduced the safety features; or sufficient tests that indicate

compliance with the BIA Standards.

**SP.14 FUEL CONSUMPTION REPORTING REQUIREMENTS**

The Contractor shall furnish to the Government a monthly report of the quantities of fuel consumed in execution of the work of the contract. The quantities reported shall include fuel consumed by the Contractor and all of his subcontractors, for the main plant and all support plant during the preceding month.

**SP.15 PERFORMANCE EVALUATION OF THE CONTRACTOR**

At a minimum, the Contractor's performance will be evaluated upon final acceptance of the work. However, interim evaluations may be prepared at any time during contract performance when determined to be in the best interest of the Government. The format for the evaluation will be SF 1420, and the Contractor will be rated outstanding, satisfactory, or unsatisfactory in the areas of Contractor Quality Control, Timely Performance, Effectiveness of Management, Compliance with Labor Standards, and Compliance with Safety Standards. The Contractor will be advised of any unsatisfactory rating, either in an individual element or in the overall rating, prior to completing the evaluation, and all Contractor comments will be made a part of the official record. Performance Evaluation Reports will be available to all DOD Contracting offices for their use in determining Contractor responsibility.

**SP.16 PROJECT AND DAILY PRODUCTION REPORTS**

The Contractor shall furnish computer-generated LMM-316a (electronic) July 91 daily reports complete. The Contractor shall also furnish a summary report for the total contract, broken down by project, monthly and fiscal year in spreadsheet form.

**SP.17 CONTINUITY OF WORK**

No payment will be made for work done in an area until the required depth is secured in the whole area, unless prevented by ledge rock. No payment will be made for dredging performed outside the directed dredging cut layout, except by decision of the Contracting Officer or his representative.

**SP.18 PAYMENTS - DESIGNATED BILLING OFFICE.**

a. The unit price or lump sum price or prices stated in the contract will be used in determining the amounts to be paid for work performed by the Contractor. The designated billing office for this contract is as follows:

Wade Channell
U.S. Army Corps of Engineers, Memphis District
Ensley Engineer Yard
2915 Riverport Rd
Memphis TN 38125-5026

b. Pay time shall begin on the date and hour of acceptance of the dredge and attendant plant by the Contracting Officer as provided in paragraph SP1. and shall end when the dredge and attendant plant are returned to the Contractor, as provided in paragraph SP1e. Pay time will

be calculated to the nearest one-sixtieth (1/60) hour for payment.

c. The following will be considered effective time and will be paid for at the applicable contract unit price per hour:

(1) Actual time dredging when the dredge is under operation, with the cutterhead moving material, and such material is being passed through the pipeline.

(2) Time lost in making such openings in floating discharge pipelines or in swinging to one side of channel and slacking off of the swinging wires as may be necessary for the passage of vessels. The Contractor will be responsible for making such opening upon signal of any vessel or craft desiring to pass.

d. All cumulative non-effective hours will be reduced by 30 percent and the reduced cumulative hours paid for at the applicable contract unit price per hour. The following will be considered non-effective time:

(1) Actual time lost, but not in excess of eight hours, for each of the following; preparing to move from one job to another, preparing the dredge for pumping upon arrival at a new job.

(2) Actual time lost due to moving swing anchors; changing swinging wires to previously prepared pendants; making changes in discharge lines, such as adding pontoons or shore pipe, as may be necessary due to the progress of the work; and actual lost time due to failure of retaining dikes, spillboxes, or outfalls through no fault of the Contractor. In the latter case, the Contractor will be required to furnish all available equipment and personnel to assist in making repairs.

(3) Actual time lost due to removal of logs, driftwood, etc., from the pump, pipeline and cutterhead; removal of drift from the pontoon line; washing out pipeline before handling. Actual time lost, but not in excess of eight hours, due to dredge shutdowns authorized by the Contracting Officer for the purpose of replacing the pump impeller with either different diameter impeller or an impeller of different number of vanes than that of the impeller being used. Actual time lost, but not in excess of one hour, due to dredge shutdowns authorized by the Contracting Officer for the purpose of changing dredge cutterhead to cutter-head of a different type. The intent of payment for delays authorized by the Contracting Officer to permit the Contractor to change pump impellers and dredge cutterhead is to obtain the greatest efficiency of operations under changing conditions, such as varying material, length of line, etc. Payment will not be made under this subparagraph for replacing worn-out impellers and/or dredge cutterhead, or cutterhead that have lost their efficiency because of wear.

(4) Actual time lost due to inclement weather on an assignment or while en route between assignments.

e. When river conditions are such that dredging operations become impractical or uneconomical, as determined by the Contracting Officer, he may place the dredge in an idle standby status by giving 24 hours oral or written notice to the Contractor. When the dredge plant is placed in an idle standby status, the Contractor will cease dredging operations and shall secure the dredge plant in a location approved by the Contracting officer. During the idle standby period, the Contractor shall retain a crew that will enable the dredge plant to be returned to operation within 24 hours of receiving notice to resume dredging. While in an idle standby

status, neither the dredge plant nor any attendant plant shall be moved from the standby location without approval from the contracting officer. Idle standby may be directed on more than one occasion, but will not exceed a cumulative total of 504 hours. All idle standby hours shall be reduced by 65 percent and the reduced cumulative standby hours paid for at the contract hourly unit price for dredging. When the Contractor begins preparations to resume operations at the site as directed by the Contracting Officer, the usual pay provisions of the specifications will be applicable.

f. Payment will not be made for: (1) Lay time on an assignment or when all necessary equipment is not available or in operating condition at the new assignment.

(2) Time lost due to shutdowns for the repair or the replacement of worn out or unserviceable equipment and time lost due to pulling a line together when the joints open up, replacing damaged shore pipe or pontoons, except when shore pipe is damaged by caving bank or pontoons are damaged by drift through no fault or negligence of the Contractor.

(3) Time during which the dredge is engaged in removing misplaced material and dredging time lost due to removal of obstructions as required in paragraph SP4.

(4) Time during which the dredge is engaged in dredging for others, time being computed from time the dredge shuts down until the dredge is back in position and material is being passed through the pipeline.

(5) Time lost due to shutdowns ordered by the Contracting Officer's representative due to nonconformance to Safety and Health Requirements Manual EM 385-1-1 (See Clause entitled "Accident Prevention" of the Contract Clauses) and safety requirements of these specifications.

(6) Time lost due to insufficient crew size and the inability to perform efficiently simultaneous dredging operations and on-shore disposal operations as determined by the Contracting Officer or his representative.

(7) When the dredge is shut down for any reason or purpose that applies under paragraph 4f(1-6), the ensuing time shall remain under that classification until the cause of the shutdown shall have been removed and no claim shall be allowed for other work performed during that time except if it be the case that the Contracting Officer orders the dredge and attendant plant be moved to a new location.

g. Reduction in Payment for Failure to Meet Output Requirements: If the dredging output falls short of that specified in Section 02482, subparagraph 2.1.1, as measured by Section 00800, subparagraph SP6.b, the total dredging hours for that location will be reduced by the percentage that the output falls short of that specified. Payment for dredging operations, which fail to meet the specified minimum output, will be made by multiplying this reduced number of hours by the contract unit price per hour.

## SP.20 CONTRACTING OFFICER SIGNATURE

The Contracting Officer signing this contract is the primary Contracting Officer on this contract. However, any Contracting Officer assigned to the Memphis District and Acting within its authority may take formal action on this contract when a contract action needs to be taken and the primary Contracting Officer is away from the office.

DIVISION 2 - SITE WORK

SECTION 02482B

NORTH WEST TENNESSEE HARBOR

NEW CONSTRUCTION DREDGING (YARDAGE)

TABLE OF CONTENTS

PART 1 GENERAL
1.1 SCOPE OF DREDGING

PART 2 PRODUCTS
2.1 DREDGE
2.1.1 Size of Dredge
2.1.2 Spare Cutters and Impellers
2.2 ATTENDANT PLANT
2.2.1 General
2.2.2 Anchor Barge
2.2.3 Barge Mounted Crane
2.2.4 Fuel Barge
2.2.5 Landing Barge
2.2.6 Pipelines
2.2.7 Spill Barge
2.2.8 Tenders
2.2.9 Survey/Crew Boat
2.2.10 Dozers
2.2.11 Excavator
2.2.12 All Terrain Vehicle
2.3 TECHNICAL EQUIPMENT
2.3.1 Production Recording Equipment
2.3.2 Differential Global Positioning System (DGPS)
2.3.3 Depth Sounding Devices
2.3.4 Hydrographic Survey Equipment
2.4 SURVEY REQUIREMENTS
2.4.1 Scope
2.4.2 Survey Equipment
2.4.3 Surveying
2.5 OVER DEPTH DREDGING
2.6 DREDGING DATA PROVIDED

PART 3 EXECUTION (Not Applicable)

-End of Section Table of Contents-

02482B.doc attachment to email from Chandler dated Apr 02 08 1:21:20 PM



SECTION 02482B

NEW CONSTRUCTION DREDGING (YARDAGE)

PART 1 GENERAL

1.1 SCOPE OF DREDGING

The work consists of the new construction dredging of North West Tennessee Harbor at LMR mile 899. The details of the North West Tennessee Harbor can be seen on the attached plans. Material dredged from the North West Tennessee Harbor shall be discharged in Disposal A and/or Disposal B shown on the plans. At any time during the dredging of this harbor the contractor may be required to discharge in either of the disposal areas A or B. The assembly and disassembly of shore lines, pontoon lines, booster pump, etc. to both disposal areas and all attendant plant should be included in yardage price item (0001AA, 0001AB and 0001AC or 0006AA, 0006AB and 0006AC) of Lot 1 or Lot 2.

PART 2 PRODUCTS

2.1 DREDGE

2.1.1 Size of Dredge

The dredge shall be not less than 27 inch I.D. discharge. The dredge shall be adequately powered and geared and properly equipped for the pump size and horsepower. The dredge shall be required to maintain a minimum production rate of 1,145 cubic yards per pumping hour. Dredging performed at Northwest Tenn. Harbor will require approximately 8000 ft of discharge line with 53 ft. of static head. The suction head, head from friction of pipe, elbows and any other factors that effect pump production is not included in the 53 ft. of static head. Plans with sections showing all elevations, borings and right of ways are provided. It will be the responsibility of the contractor to provide extra horsepower such as booster pump, larger horsepower dredge etc. if needed. If any of the above are needed the price should be included in bid item 0001's or 0006's cost per yard. The discharge size will be considered to be the minimum diameter of either the pump discharge or discharge line, which-ever is less. Dredges larger than 29 inches will be considered but, must meet size constraints of the new harbor dimensions.

The dredge ladder and spuds shall be of such construction and configuration that the dredge will dig material to a depth of 50 ft below the water surface without exceeding a ladder angle of 45 degrees from horizontal, and will make a 250-ft bottom width cut at a depth of 50 ft without exceeding a swing angle of 45 degrees to either side of the cut centerline. Spuds shall be capable of holding the dredge in place under the dredging conditions above in currents up to 12 ft per second. The dredge shall be capable of starting work and working efficiently at a depth of 12 ft.

The draft of the dredge shall not exceed 9 ft. The dredge shall be of such design as to work efficiently and permit passage of other vessels while working in a 250-ft wide channel. Note: The North West Tenn. Harbor has a 130 ft. bottom width. See Plans. A check (flap) valve will be located on the dredge near the discharge side of the pump. A flow meter and density meter shall be located on the dredge on the discharge side of the pump for the purpose of determining

02482B.doc attachment to email from Chansell dated Apr 02 08 1:21:20 PM



velocity and cubic yardage. The suction pipe shall have a device that will degas the dredged material. The sound level in the lever room shall not exceed 90 dB.

2.1.2 Spare Cutters and Impellers

The Contractor shall have available for use at all times, a minimum of three interchangeable pump impellers in the sizes that can be accommodated by the pump to permit the dredge to work under varying conditions of length of discharge line and lift. The Contractor shall have available at all times a minimum of two extra cutter heads compatible to dredging conditions.

2.2 ATTENDANT PLANT

2.2.1 General

Attendant plant shall include the following as minimum requirements and shall be composed of such fuel barges, tenders, floating discharge pipe, shore pipe, spill barge, derrick or anchor barges, landing barge, water barges, and other attendant or auxiliary plant as may be required for operations under these specifications, whether or not items are specifically mentioned. The auxiliary and attendant plant shall be in good condition and of sufficient size and capacity to efficiently serve the dredge. The dredge tenders and other attendant plant requiring internal combustion engines for propulsion or auxiliary power requirements, except outboard motors, shall not be equipped with a type of engine requiring gasoline or other highly volatile fuels for operations. No division in pay will be made for attendant plant. It will be considered as part of the dredging plant and shall be kept in operating condition at all times regardless of pay status of the dredge.

2.2.2 Anchor Barge

One derrick barge with not less than 30-ft boom length for moving and shifting anchors.

2.2.3 Barge Mounted Crane

One (1) barge mounted crane having a lifting capacity of at least 50 tons, with not less than 80-ft boom length.

2.2.4 Fuel Barge

One (1) fuel barge capable of servicing the dredge for 7 days.

2.2.5 Landing Barge

One (1) shallow draft barge with sufficient walkway and handrails shall be required for use as a landing barge.

2.2.6 Pipelines

The work involved will require pipelines ranging from 600 ft to 15,500 ft in length. The following minimum pipeline equipment shall be furnished: 8,500 ft of pontoon discharge line of not

less than 27 in ID (1,000 ft of the line shall be in lengths of not more than 50 ft), two (2) stiff pontoon elbows and two (2) swivels, equipped with winches or skidder barge with power winch and adequate fairleads or chocks; and 7,000 ft of shore pipe with two sets of valves including wye branches. If needed 1500ft. of polyethylene pipe will be required to cross disposal area A to reach disposal area B. The pontoon line shall be equipped with satisfactory pontoons, winches, and anchors to operate the pontoon line in 12 ft per second current.

2.2.7 Spill Barge

One (1) shallow draft spill barge (2 ft. maximum draft) designed to discharge 75 ft. from waters edge, equipped with power winches to be available if needed.

2.2.8 Tenders

Two (2) tenders for 24 hours operation per day of such size and design that either can adequately serve the dredge and attendant plant under any conditions to be encountered. The tenders shall be not less than 500 intermittent shaft horsepower and shall work in as little as 5 ft of water. In addition to the two tenders required above, one (1) additional tender of not less than 1,000 intermittent shaft horsepower is required for 24 Hr. operation. Each of the tenders shall be of steel construction, twin screw, with conventional shallow draft river workboat design and equipped with depth finder with transducer installed in hull. The minimum crew for each tender shall consist of one operator and one deckhand per shift.

2.2.9 Survey/Crew Boat

See 2.4.2 Survey Equipment

2.2.10 Dozers

Two (2) wide track bulldozers, one D-5 and one D-6 Caterpillar or equivalent, shall be furnished for work in and around upland disposal areas.

2.2.11 Excavator

One (1) excavator with amphibious under carriage equivalent to a 325 Caterpillar.

2.2.12 All Terrain Vehicle

One (1) ATV with two passenger capacity.

2.3 TECHNICAL EQUIPMENT

2.3.1 Production Recording Equipment

The dredge shall be equipped with automated production recording equipment, to continually record slurry density, slurry velocity, pipeline pressure, pump vacuum, pump RPM, and engine RPM. Data must be recorded electronically. Data shall be furnished to the Government upon request, and at completion of the contract.

02482B.doc attachment to email from Chansell dated Apr 02 08 1:21:20 PM



2.3.2 Differential Global Positioning System (DGPS)

The contractor shall furnish, operate and maintain a complete Differential Global Positioning System (DGPS) to provide dredge positioning and alignment in the various dredging assignments of this contract. The system shall utilize DGPS equipment in conjunction with Hypack Surveying Software and the U.S. Coast Guard Radio Beacon DGPS Network, to provide real time positioning using UTM Zone 15 or 16 coordinates. The contractor will be provided a diskette containing a Hypack file of the dredging cut layout for each individual assignment containing stationing, baseline information, and coordinates. The complete positioning system shall provide at a minimum the following features: (1) Complete real time display of the dredge in relation to the dredging cut, centerline ranges, and current 100-ft stationing shall be displayed on a VGA monitor located in the lever room of the dredge, so that the inspector can determine the current and previous location of the dredge as it advances. (2) Data logging and recording to diskette of positioning information during the dredging assignment, to be turned in to the Corps inspector at the end of each assignment. (3) Printouts of screen data for any time interval, reflecting the advance of the dredge and the arc of the swing within the channel, shall be available upon request.

2.3.3 Depth Sounding Devices

The Contractor shall provide a depth-sounding device capable of obtaining continuous depth-sounding measurements in the area of the forward hull of the dredge. The depth shall be displayed in the lever room of the dredge.

2.3.4 Hydrographic Survey Equipment

The survey/crew boat shall be equipped with single-beam DGPS hydrographic survey equipment. Contractor must be able to print small-scale cross-sections but not full surveys (large scale plotter not required); printer may be located on survey boat or dredge.

2.4 SURVEY REQUIREMENTS

2.4.1 Scope
Surveying requirements consist of furnishing all plant, labor, equipment, materials, and supplies, and performing all operations necessary for the required surveys as specified herein.

2.4.2 Survey Equipment

(1) SURVEY BOAT. One (1) workboat, similar or equal to a 21-ft SeaArk Marine Utility Series Little Giant Model, with front and rear door, shall be required for crew transport, layout work, sounding, general inspection, and quality control surveying. Workboat shall be equipped with the following: three outboard motors, not less than 100 horsepower each (one will be used as a spare); complete hydraulic steering system including wheel; cables, throttle controls, and electric starter for dual motors; and single-beam DGPS hydrographic surveying equipment. Survey boat shall have sufficient enclosed space for the survey crew and shall meet all applicable US Coast Guard Regulations. The minimum full-time crew for the survey boat shall be one

operator for the day shift, plus any survey personnel required to operate the equipment. Refer to

the latest version of the Safety and Health Requirements Manual, EM 385-1-1, paragraph 19.c., for additional crew and equipment requirements. The survey boat shall bear a plate of certifica tion for minimum boat flotation by the Boating Industry Association (BIA). The survey boat shall be equipped with:

(i) A DGPS electronic positioning system, as described in the paragraph entitled, DGPS Electronic Positioning Equipment, of this Section;

(ii) Air conditioning for the enclosed cabin;

(iii) VHF radio for ship-to-ship communications, as described in the paragraph entitled, Communications Equipment, of this Section;

(iv) A recording depthsounder as described in this Section.

(2) DEPTHSOUNDERS.

(i) SYSTEM CHARACTERISTICS. The survey vessel shall be equipped with a depthsounder. It shall be capable of recording depths from a minimum depth of 4 feet. below the transducer to a maximum depth of at least 100 ft. The depthsounder shall be accurate to + 0.1ft. The transducer shall be mounted within the vessel so as to insure optimal depthsounder performance. The transducer transmit frequency shall be within the range of 200 kHz and the unit shall be capable of a pulse power output of up to 500 watts. The depthsounder shall have a sounding rate of at least 15 soundings/sec. It shall be capable of automatic time varied gain (TVG) adjustments. The unit shall also have manual controls that allow vessel draft, water level (+) and speed of sound adjustments. Analog depthsounder recordings shall be made on a dry thermal or electrostatic paper medium. Chart paper operational speeds shall be within a range of 1-8 in./min. The vertical scaling shall be at minimum 1 in. per 10 ft. of water depth. Draft, tide and speed of sound settings must be automatically annotated on the chart. The depthsounder must be capable of manual event marking. A remote digital depth display shall be provided to the dredge helmsman or survey boat operator. If the depthsounder is electronically interfaced with a positioning survey system, all recorded digitized depth soundings must be annotated on the analog paper chart with an event mark and its event designation. The operational chart paper speed utilized shall not cause any event mark/event designation overwrites.

(ii) CALIBRATION. The QAR will be present at all depthsounder calibrations. The speed of sound calibration method will be approved by the COR. A calibration shall be performed at the start of each day, when the vessel moves to another survey locale and after any maintenance is performed on the depthsounder (to include chart paper replacement). Once the calibration is complete, no speed of sound adjustment shall be made until the next calibration. The depthsounder shall be calibrated at a depth equal to 80% of the maximum expected survey depth or at a depth of 40-ft. (whichever is less). The analog chart paper recording of the calibration shall be provided to the COR.

(3) DGPS ELECTRONIC POSITIONING EQUIPMENT. The Contractor shall furnish and maintain DGPS electronic positioning systems, capable of providing 24-hour real-time latitude,

longitude, and horizontal positioning, within a tolerance of + or - 5 feet, for the dredge and survey boat. Each system shall each be equipped with a track indicator, magnetic media recorder (Floppy or CD-ROM disk, IBM-compatible ASCII format), and a 750-C Hewlett Packard Ink-Jet plotter or equal. The systems must be capable of accepting programmed waypoints, and giving a course between waypoints. The track indicators must show deviations from programmed course. The magnetic media recorders shall record position fixes in Universal Transverse Mercator (UTM) X and Y coordinates and associated depths from the depth sounders. The plotter shall show courses steered, in real time, and must also be capable of plotting digitized depth data from the depth sounders. The position-indicating instrument consoles and track indicators shall be installed in the pilothouse of the dredge in plain view of the helmsman. This same equipment shall also be installed on the Survey Boat in plain sight of the survey boat operator.

(i) CALIBRATION OF DGPS EQUIPMENT. Prior to initiating positioning surveys using DGPS electronic survey equipment, a calibration test of the electronic measuring device shall be performed verifying that channel center line as indicated by center line ranges and DGPS electronic positioning coincide. This shall be done in the presence of the Contracting Officer's Representative. Calibration checks shall be run at the beginning of each survey or portion thereof. Should the electronic measuring device fail to indicate the channel centerline within the factory-defined error range for the device, the device shall not be used for determining survey positions.

2.4.3 Surveying

(1) GENERAL. All record surveys shall be performed in the presence of the Government's QAR. All surveys will be performed under the direction of a qualified survey technician.

(2) GOVERNMENT FURNISHED SURVEY DATA. The Government may or may not perform a survey of the dredging assignment depending upon availability of survey personnel and equipment. If a survey is performed, the Government will provide a plotted hydro survey sheet and/or a diskette containing a Hypack file for the dredging assignment. The Government survey is for reference only, and does not relieve the Contractor of performing before, interim, and after dredging surveys as specified below. Bench Mark/Elevation within the dredging assignment area will be provided if requested.

(3) FIELD SURVEYS. Before commencing dredging operations, the Contractor shall make a DGPS before construction survey within the immediate specified dredging assignment. The data from this survey shall be plotted by the Contractor on a layout sheet. This survey shall be made available to the QAR prior to start of dredging operations. The before and final after dredging surveys will be used as the basis for all pay yardage computations, unless otherwise authorized by the QAR. This information shall be recorded in Universal Transverse Mercator (UTM), X and Y coordinates with corresponding depths. These depths shall be made to the nearest 0.1-foot. The depths from these surveys shall be converted to the applicable Vertical Datum, or recorded as actual depths as referenced to the nearest benchmark, and contoured to the desired project depth. These surveys shall be labeled with the applicable date, time, water surface, and scale to which the survey is plotted and the name of the surveyor performing the survey. These surveys shall be made on intervals of 100 feet (cross sectional areas). These intervals shall cover the entire channel dredging assignment area, unless otherwise authorized by the QAR. All soundings shall be made at no more than 20-foot intervals. During the progress of the work, interim surveys shall be made of the completed dredge cut(s) to ensure they have been made to

the specified grades/elevations and material is not moving back into the previously made cut(s). This interim survey data shall be made a matter of daily records to be utilized if additional dredging is required. If additional dredging is required, due to filling, these interim surveys will be the basis for additional dredging payment purposes. In addition to channel surveys some land surveys in disposal areas will be required as directed by the QAR.

(4) SURVEY DATA. Plotted surveys and other applicable data shall be kept at each dredging location at all times and made available to the QAR upon request.

2.5 OVERDEPTH DREDGING

Two foot over-dredging will be allowed, and the quantities within this two-foot over depth tolerance will be measured and paid for at the contract unit price per cubic yard. Dredging in excess of this two-foot over depth tolerance will not be paid for.

If shoaling occurs in any reach previously accepted, re-dredging at the contract price shall be performed by the Contractor, if so directed by the Contracting Officer.

2.6 DREDGING DATA PROVIDED

All dredging cross sections, borings, limits of dredging, etc. for North West Tennessee Regional Harbor are provided in attached plans.

PART 3 EXECUTION (Not Used)

-- End of Section --

**From:** Waller, Kandi H MVM
**To:** Clayton, Carlos E MVM;
**CC:** Chasteen, Darian S MVM; Berretta, David P MVM; Bright, Kenneth M MVM; Norman, Wendell N MVM;
**Subject:** FW: Harbor dredging Solicitation
**Date:** Friday, April 04, 2008 1:55:06 PM
**Attachments:**

---

Those numbers were for the 2' overdredge that would have the harbor at elevation 250 which is what is in the report. However, the other numbers would be for elevation 252. Those are:

To station 80+00 669,551 cy
80+00 to 85+00 146,140 cy
85+00 to end 131,529 cy

-----Original Message-----
From: Waller, Kandi H MVM
Sent: Friday, April 04, 2008 1:47 PM
To: Clayton, Carlos E MVM
Cc: Chasteen, Darian S MVM; Berretta, David P MVM; Bright, Kenneth M MVM; Norman, Wendell N MVM
Subject: RE: Harbor dredging Solicitation

Here are the quantities as I adjusted the design yesterday to fit better.

To station 80+00 813,355 cy
80+00 to 85+00 167,121 cy
85+00 to end 149,519 cy

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Friday, April 04, 2008 1:37 PM
To: Waller, Kandi H MVM
Subject: FW: Harbor dredging Solicitation

0001AA or 0006AA = 771,050

0001AB or 0006AB = 214,534
0001AC or 0006AC = 204,403

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Friday, April 04, 2008 1:08 PM
To: Waller, Kandi H MVM
Subject: Harbor dredging Solicitation

Kandi, can you tell me which drawing file and or drawing number is being replaced/ modified.

Thanks,

Carl Clayton
Contract Specialist CT-C
USACE Memphis District
901-544-3119

**From:** Waller, Kandi H MVM
**To:** Clayton, Carlos E MVM;
**CC:** Chasteen, Darian S MVM; Berretta, David P MVM; Bright, Kenneth M MVM; Norman, Wendell N MVM;
**Subject:** RE: Harbor dredging Solicitation
**Date:** Friday, April 04, 2008 1:47:19 PM
**Attachments:**

---

Here are the quantities as I adjusted the design yesterday to fit better.

To station 80+00 813,355 cy
80+00 to 85+00 167,121 cy
85+00 to end 149,519 cy

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Friday, April 04, 2008 1:37 PM
To: Waller, Kandi H MVM
Subject: FW: Harbor dredging Solicitation

0001AA or 0006AA = 771,050
0001AB or 0006AB = 214,534
0001AC or 0006AC = 204,403

-----Original Message-----
From: Clayton, Carlos E MVM
Sent: Friday, April 04, 2008 1:08 PM
To: Waller, Kandi H MVM
Subject: Harbor dredging Solicitation

Kandi, can you tell me which drawing file and or drawing number is being replaced/ modified.

Thanks,

Carl Clayton

Contract Specialist CT-C
USACE Memphis District
901-544-3119

Contract Specialist CT-C
USACE Memphis District
901-544-3119

**From:** Norman, Wendell N MVM
**To:** Channell, Stephen W MVM; Clayton, Carlos E MVM; Waller, Kandi H MVM;
**CC:**
**Subject:** RE: Revised Specs for Dredge Contract
**Date:** Friday, April 04, 2008 1:37:16 PM
**Attachments:**

---

Wade/Kandi,

The estimated quantities on the bidding schedule for the construction dredging should not include the 2' for over dredging.

-----Original Message-----
From: Channell, Stephen W MVM
Sent: Wednesday, April 02, 2008 1:21 PM
To: Clayton, Carlos E MVM; Norman, Wendell N MVM
Subject: Revised Specs for Dredge Contract

Team,
Maintenance is A and New Construction is B. Please read the New Construction. I give my best.

Thanks
Wade

| | |
|---|---|
| **From:** | Clayton, Carlos E MVM |
| **To:** | Norman, Wendell N MVM; |
| **CC:** | |
| **Subject:** | Amendment 0005 Harbor Dredging |
| **Date:** | Monday, April 07, 2008 1:09:00 PM |
| **Attachments:** | Amendment 0005.pdf |

---

Wendell please review changes.

Thanks,

Carl Clayton
Contract Specialist CT-C
USACE Memphis District
901-544-3119